ACCEPTED
08-24-00024-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
10/30/2024 3:34 PM
ELIZABETH G. FLORES
CLERK

08-24-00024-CV

No. 08-24-00024-CV

IN THE COURT OF APPEALS
FOR THE EIGHTH DISTRICT OF TEXAS

RECEIVED IN
8th COURT OF APPEALS
EL PASO, TEXAS
10/30/2024 3:34:35 PM
ELIZABETH G. FLORES
Clerk

ELDON RODRIGUEZ AND MARIA RODRIGUEZ

v.

HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC, GC RENTALS AND MANAGEMENT LLC D/B/A REALTY ONE GROUP MENDEZ BURK, GABRIEL MENDEZ, AND MIGUEL CHACON

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
11/1/2024 12:51:00 PM
ELIZABETH G. FLORES
Clerk

**APPELLANTS' REPLY BRIEF TO BRIEF OF APPELLEE GC RENTALS AND MANAGEMENT, LLC D/B/A REALTY ONE GROUP MENDEZ BURK**

———————————————————————————

Appeal From The 171st District Court
Of El Paso County, Texas
Trial Court Cause No. 2021-DCV-2346

Eldon Rodriguez and Maria Rodriguez
APPELLANTS

Michael R. Nevarez, Esq.

The Nevarez Law Firm, PC
7362 Remcon Circle
El Paso, Texas 79912
State Bar No. 14933400
Telephone: (915) 225-2255
Facsimiles: (915) 845-3405
E-Mail: MNevarez@LawOfficesMRN.com

Attorney for Appellants

**ORAL ARGUMENT NOT REQUESTED**

# RECORD REFERENCES.

o      Appellants cite to the materials included in the Clerk's Record, filed with this Court by the County Clerk of El Paso County, Texas on April 2, 2024, using the convention "CR-[Volume No.]:[Page No.]".

o      Appellants cite to the materials included in the Supplemental Clerk's Record, filed with this Court by the County Clerk of El Paso County, Texas on August 23, 2024, using the convention "SCR-[Volume No.]:[Page No.]".

o      Appellants do not cite to a Reporter's Record, as there is none.

o      Appellants cite to the materials included in the Appendix To Appellants' Principal Brief, filed by Appellants with this Court simultaneously herewith, using the convention "AAPB-[Volume No.]:[Page No.]".

o      Appellants cite to the materials included in the attached Appendix To Appellants' Reply Brief, filed by Appellants with this Court simultaneously herewith, using the convention "AARB-[Volume No.]:[Page No.]".

# TABLE OF CONTENTS

RECORD REFERENCES. ............................................................................................2

INDEX OF AUTHORITIES..........................................................................................4

    I.    REPLY...............................................................................................................5

    II.   SUMMARY OF THE ARGUMENT. .......**Error! Bookmark not defined.**4

    III. PRAYER ........................................................................................................36

CERTIFICATION ......................................................................................................38

CERTIFICATE OF COMPLIANCE..........................................................................39

CERTIFICATE OF SERVICE ...................................................................................40

# INDEX OF AUTHORITIES

**Statutes**

Deceptive Trade Practices-Consumer Protection Act, under Texas Business & Commerce Code section 17.41 ...............................................................7

**Rules**

exas Rule of Civil Procedure 193.5, and 196.2(b)(4) ............................................16

Rule 191.2 of the Texas Rules of Civil Procedure............................................ 19, 26

Rule 3.11(I) of the Local Rules of the El Paso County ................................... 19, 26

Rule 38.6(a) of the Texas Rules of Appellate Procedure .......................................5

Tex. R. App. P. 9.4(i) (3) .......................................................................................39

Tex. R. App. P. 9.4(i)(2)(C)....................................................................................39

Texas Rule of Civil Procedure 193.5, and 196.2(b)(4)............................................17

Texas Rule of Civil Procedure 215.2(5) ..................................................................30

Texas Rule of Civil Procedure 2l5.2(2) ..................................................................30

TRAP 9.4....................................................................................................................39

TRCP 194.2(b)(7) ......................................................................................................28

TRCP 199.2(b)(1) ......................................................................................................28

TRCP Rule 192.3(f) ...................................................................................................28

**TO THE HONORABLE EIGHTH COURT OF APPEALS:**

Appellants Eldon Rodriguez and Maria Rodriguez (hereinafter jointly referred to as "RODRIGUEZ") file this Appellants' Reply Brief ("Reply"), in accordance with Rule 38.6(a) of the Texas Rules of Appellate Procedure, in response to "Brief of Appellee GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk" ("Response") filed by Appellee GC RENTALS AND MANAGEMENT, LLC d/b/a REALTY ONE GROUP MENDEZ BURK ("GC RENTALS"), and in support thereof would respectfully show onto the Court as follows:

## I. REPLY.

**A. The "Real" Reason For The Filing Of The Motion For Sanctions.**

1. In actuality, the following three (3) Motions that were filed on November 10, 2023 at 1:37 PM (MST), are at issue herein:

    a. "Defendants, GC Rentals And Management LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's Joint Motion For Sanctions Against Plaintiffs" ("Motion For Sanctions");

    b. "Motion To Show Cause ("Show Cause");

    c. "Motion For Emergency Hearing." ("Motion For Emergency Hearing")

(AARB-1:020-072).

2. To begin to ascertain the real and actual reason for the filing of the Motion For Sanctions and the Motion For Emergency Hearing, the Court should

understand the true identity, involvement and interrelationship of:

     a.     GC RENTALS;

     b.     GABRIEL MENDEZ, Owner and manager of GC RENTALS;

     c.     Former Defendant Megan Tara Harris ("HARRIS");

     d.     Counsel James A. Martinez ("MARTINEZ")';

     e.     Counsel Reid P. Rendon ("RENDON"); and

     f.     Counsel, Hala A. Abdel-Jaber ("ABDEL-JABER").

3.     The Court should also understand the timing of the filing of the Motion For Sanctions and the Motion For Emergency Hearing. We tediously but necessarily proceed in detailed chronological order, to expose to the Court the true reason for the filing of the Motion For Sanctions.

4.     **The Original Petition And Request For Disclosure.** On July 7, 2021, RODRIGUEZ filed their "Original Petition And Request For Disclosure" ("Petition"), against Appellees HEATHER HARMSTON ("HARMSTON"), JAIME GARDEA ("GARDEA"), and SYNERGY CONSTRUCT LLC ("SYNERGY"). (CR-1:24-40).

5.     Attached to the Petition were the following exhibits:

     a.     Exhibit A - The TREC Contract at issue;

     b.     Exhibit B – The Property Inspection Report;

     c.     Exhibit C - The May 7, 2020 Demand Letter, therein seeking payment to satisfy damages in the amount of **$304,612.00**, broken down as follows:

i. **$275,344.00**, including closing costs, as reimbursement to my Clients for the entire CASH purchase price of the Premises;

ii. **$11,391.00**, as reimbursement for the cost of RODRIGUEZ' move to Texas;

iii. **$12,726.00**, as reimbursement for the cost of the structural repairs and improvements incurred by RODRIGUEZ, and

iv. **$5,151.00**, as reimbursement for the cost RODRIGUEZ moving back to California.

v. The Demand Letter also duly noted Defendants that if payment of the foregoing was not made to RODRIGUEZ, within sixty (60) days from the date of Defendants' receipt of the Demand Letter, the lawsuit filed against Defendants would be amended to include an additional count for Defendants' violation of the Deceptive Trade Practices-Consumer Protection Act, under Texas Business & Commerce Code section 17.41 e*t. seq*, therein seeking **treble damages** under the Deceptive Trade Practices-Consumer Protection Act ("DTPA").

d. Exhibit D – The Executive Summary Report by Jaime Gallo, PE, CCM.

(CR-1:41-70).

6. On June 23, 2022, RODRIGUEZ served "Plaintiffs' Rule 194.2 Initial Disclosures" on GARDEA.

7. On same date, June 23, 2022, Appellants filed "Plaintiffs' Certificate of Written Discovery" certifying that "Plaintiffs' Rule 194.2 Initial Disclosures" were served on HARMSTON, GARDEA, and SYNERGY, which included

7

relevant and material documents (Rodriguez-000001- Rodriguez-000145). (***Total 145 pages of exhibits***) (CR-2:4290-4493).

8.      The Petition did not name GC RENTALS or HARRIS, as RODRIGUEZ at the time had insufficient information about same.  (CR-1:24-40).[1]

9.      **Plaintiffs' First Amended Petition.**  On May 13, 2022, RODRIGUEZ filed their ""Plaintiffs' First Amended Petition" ("FAP"), therein adding Appellees GC RENTALS and HARRIS, and attaching the Petition Exhibits A-D.  (CR-1:71-119).

10.     **HARRIS.**  HARRIS filed "Defendant Megan Tara Harris' Original Answer" ("ANSWER"), on July 1, 2022, by and through Counsel MARTINEZ and RENDON, of the law firm Mounce, Green, Myers, Safi, Paxson & Galatzan ("MOUNCE"), purportedly as "Attorneys for Defendant Megan Tara Harris." (CR-1:127-129).

11.     Therefore, pursuant to Rule 194.2 of the Texas Rules of Civil Procedure ("TRCP"), MARTINEZ and RENDON were required to file the "Initial Disclosures" on behalf of GC RENTALS, by August 1, 2023, and did so, in timely manner, except for the "indemnity and insuring agreements described in Rule 192.3(f)", which MARTINEZ and RENDON Response, on behalf of GC

---

[1] Appellees MENDEZ and CHACON were only added later, as Defendants, in "Plaintiffs' Third Amended Petition", due to the failure and refusal of Appellees GC RENTALS, HARMSTON, GARDEA, and SYNERGY to properly disclose (a) the involvement of CHACON in the defective repair and construction of the PREMISES, and (b) the approval by MENDEZ of the sale contrary to the requirements of his INSURER's POLICY.

8

RENTALS, was: "Defendant will supplement."[2]  (CR-1:4455-4493).

12.    MARTINEZ and ABDEL-JABER represented themselves as "Attorneys for Defendant Megan Tara Harris", in filing "Defendant Megan Tara Harris' Motion For Summary Judgment."  (CR-1:403-412).

13.    Conflicted RENDON purportedly represented HARRIS, and GC RENTALS, at the "Zoom Video Deposition Of Megan Tara Harris", conducted on January 12, 2023.  (CR-2:4524-4693).

14.    Apparently, HARRIS had been the victim of a fraud perpetuated by co-Defendant Heather Harmston ("HARMSTON").  (CR-2:4524-4693).

15.    Significantly, for purposes herein, the undersigned, Michael R. Nevarez ("NEVAREZ"), first became aware of HARMSTON's fraud, when HARRIS directly contacted NEVAREZ, on August 16, 2022, via telephone, and volunteered that:

     a.    HARMSTON had forged and falsified the signature of HARRIS, on the TREC Contract at issue herein, and

     b.    HARRIS was not the "Licensed Supervisor" of HARMSTON, as HARMSTON had fraudulently represented on the TREC Contract.

(CR-2:4682).

---

[2] TRCP Rule 192.3(f) states: **Indemnity and insuring agreements.** Except as otherwise provided by law, a party may obtain discovery of the existence and contents of any indemnity or insurance agreement under which any person may be liable to satisfy part or all of a judgment rendered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the indemnity or insurance agreement is not by reason of disclosure admissible in evidence at trial.

16. Perhaps more significantly, in said telephone call on August 16, 2022, HARRIS further explained to NEVAREZ that HARRIS had never authorized MARTINEZ to represent her in this matter. MARTINEZ had thus filed numerous pleadings purportedly on behalf of HARRIS, without the approval of HARRIS. (CR-2:4524-4693).

17. On September 8, 2022, HARRIS again contacted the undersigned "seeking to resolve her case", and explained to the undersigned that MARTINEZ was not returning her calls. (CR-2:4685).

18. On January 12, 2023, the undersigned took the deposition of HARRIS, wherein Reid P. Rendon ("RENDON") appeared purportedly on behalf HARRIS, and GC RENTALS. (CR-2:4526-4528, Transcript Page 28, Lines 21-25 and Transcript Page 29, Lines 1-2).

19. At the HARRIS deposition, HARRIS confirmed that (a) she and GABRIEL MENDEZ discussed payment by HARRIS of half the price of the deductible for the insurance company covering errors and omissions in subject matter, and (b) she did not approve the filing of the ANSWER by MARTINEZ, RENDON and MOUNCE. (CR-2:4553-4454).

20. Therefore, for purposes of the MOTION FOR SANCTIONS herein, the Court should note that MARTINEZ and RENDON filed the ANSWER on

behalf of HARRIS, without the approval of HARRIS.[3]

21. **<u>GC RENTALS.</u>** Appellee GC RENTALS is represented herein by MARTINEZ, ABDEL-JABER and MOUNCE.

22. On August 4, 2023, RODRIGUEZ served "Plaintiffs' First Supplementary TRCP Rule 194 Required Disclosures" to Defendants Heather Harmston, Jaime Gardea, Synergy Construct LLC, and GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, with "Exhibit A" attached, and provided a Dropbox link with all documents listed on Exhibit A via email. (***Total 408 pages***). (CR-1:1737-1748) (CR-1:1751-1753) (CR-2:2168-2170) (SCR-1:503-517).

23. On August 4, 2023, RODRIGUEZ served "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers To Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests for Production To Plaintiffs", with "Exhibit A" attached, and provided a Dropbox link with all documents listed on Exhibit A via email. (***Total 408 pages***). (CR-1:1687-1736) (CR-2:2168-2170) (SCR-1:499-501).

24. **<u>GABRIEL MENDEZ.</u>** As noted in Appellant's Principal Brief ("Brief"), Page 13, Footnote 1, Appellee GC RENTALS is represented herein by

---

[3] Any discussion of the possible violations of the cannons of ethics and/or the rules and regulations regarding the conduct of counsel is beyond the scope of this Appeal, and will therefore not be addressed at this time in this Reply.

Hala A. Abdel-Jaber ("ABDEL-JABER"), who also represents GABRIEL MENDEZ, the sole owner and manager of Broker GC RENTALS, which employed HEATHER HARMSTON as the Broker's Agent. (AARB-1:158-166).

25. As the Licensed Broker in the sale to RODRIGUEZ of the real property at issue herein, located at 9328 McFall Drive, El Paso, Texas ("Premises") GABRIEL MENDEZ is thus legally responsible herein for his breach of his legal, contractual and fiduciary duties and obligations owed to RODRIGUEZ, failure to comply with his legal, contractual and fiduciary duties by commission, omission, or willful omission, to ensure that subject sale or PREMISES was in accordance with (i) the rules and laws of the State of Texas pertaining to the sale of real property, and (ii) Broker GC RENTALS's internal quality control and compliance policy, procedures and requirements. (AARB-1: 158-166).

26. However, the involvement of GABRIEL MENDEZ and his failure to properly exercise his duties under the rules and laws of the State of Texas was only *first* discovered during the deposition of Defendants HARMSTON and MENDEZ, on or about November 13-14, 2023, which was more than two (2) years and four (4) months AFTER the "Plaintiffs' Original Petition And Request For Disclosure" was filed by RODRIGUEZ. (AARB-1: 158-166).

27. As such, despite the "Plaintiffs' Original Petition And Request For Disclosure", ABDEL-JABER failed to comply with her duty to duly disclose the existence and involvement of GABRIEL MENDEZ and his failure to properly

12

exercise his duties under the rules and laws of the State of Texas.

28. On July 5, 2022, GC RENTALS filed its "Defendant GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk's Original Answer." (CR-1:130-132).

29. On April 5, 2023, RODRIGUEZ were served with "Defendant GC Rentals And Management LLC's First Set Of Interrogatories And Requests For Production To Plaintiffs" ("Discovery Requests"). Significantly, the only interrogatories or requests for production in GC RENTALS' Discovery Requests pertinent herein are requests for production Nos. 33 and 36, which request the following:

> 33. Please produce records that reflect all repairs you performed on the Property from January 1, 2018 to the present.
>
> 36. If you had to have any of the work any Defendant performed repaired or corrected, please produce records that reflect the nature and cost of the repair or corrective work.

(CR-1:1481-1482).

30. Importantly, GC RENTALS' Discovery Requests directly at issue in the ORDER appealed herein did not at all request any records related to (a) the claimed **$11,391.00**, as reimbursement for the cost of RODRIGUEZ' move from California to Texas to reside in the structurally defective PREMISES, or (b) the claimed **$5,151.00**, as reimbursement for the cost of RODRIGUEZ moving back to California, from the structurally defective PREMISES.

13

31.     As such, GC RENTALS' Discovery Requests subject of the appealed ORDER *only* requested records related to the claimed **$12,726.00**, as reimbursement for the cost of the structural repairs and improvements incurred by RODRIGUEZ.

32.     On May 5, 2023, RODRIGUEZ served "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers To Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs" on GC RENTALS.  ("First Discovery Responses").  (CR-1:1483-1507).

33.     On same date, May 5, 2023, RODRIGUEZ filed "Plaintiffs' Certificate of Written Discovery" certifying the "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers To Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs" was served on GC RENTALS.  (CR-1:1508-1510).

34.     On May 18, 2023, Appellee GC RENTALS filed a Motion to Compel Plaintiffs' Responses to Defendant's First Set of Interrogatories and Requests for Production ("Motion to Compel").  (CR-1:302-330).

35.     On June 19, 2023, the oral deposition of Appellant Eldon Rodriguez ("ELDON") commenced, and ELDON was examined regarding RODRIGUEZ' repair and moving expenses.  (CR-1:1540-1643, Transcript page 29, lines 13-25; Transcript page 30, lines 1-6; Transcript page 32, lines 11-19; and Transcript page 125, lines 1-25).

36.     On June 20, 2023, the oral deposition of ELDON continued, including the continuing examination of ELDON regarding RODRIGUEZ' repair and moving expenses.  (CR-1:1644-1683, Transcript page 7, lines 13-22; Transcript page 10, lines 22-25; Transcript page 11, lines 1-25; Transcript page 12, lines 1-10; Transcript page 15, lines 13-25; Transcript page 16, lines 1-25; Transcript page 17, lines 1-25; Transcript page 18, lines 1-25; Transcript page 19, lines 1-25; Transcript page 21, lines 20-25; Transcript page 22, lines 1-25; Transcript page 24, lines 20-25; and Transcript page 25, lines 1-12).

37.     On or about July 21, 2023, the Trial Court heard Appellee GC RENTALS' MOTION TO COMPEL, wherein the undersigned counsel for RODRIGUEZ voluntarily agreed to amend their responses and produce all non-privileged documents responsive to Appellee GC RENTALS' Requests for Production on or before August 4, 2023.

38.     On July 26, 2023, the Trial Court signed an "Order On Defendant's Motion To Compel Discovery Against Plaintiffs" ("ORDER ON GC RENTALS' MOTION TO COMPEL") ruling in accordance with the above-mentioned voluntary agreement of undersigned counsel for RODRIGUEZ.  (CR-1:726-728).

39.     On August 4, 2023, RODRIGUEZ timely complied with subject ORDER ON GC RENTALS' MOTION TO COMPEL, by providing GC RENTALS with "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers to Defendant GC Rentals and Management

15

LLC's First Set Interrogatories and Requests For Production To Plaintiffs"

("Second Discovery Responses"), on Appellee GC RENTAL. Significantly, in

response to GC RENTALS' Discovery Requests, RODRIGUEZ responded to

Requests For Production ("RFP") Nos. 33 and 36 pertinent herein, concerning the

claimed **$12,726.00** for repair costs, as follows:

33.     Please produce records that reflect all repairs you performed on the Property from January 1, 2018 to the present.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

As a Supplementary Response, and without waiving the foregoing objection, Plaintiffs respond as follows: No change to the foregoing response, except to add:

1.     In accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4), Plaintiffs will produce for inspection and copying all documents responsive to this request on August 4, 2023, at 9 AM MST, at 7362 Remcon Circle, El Paso, Texas 79912.
2.     **None available at this time.**
3.     See deposition of Eldon Rodriguez.

(emphasis added)(CR-1:1723, Supplementary Response Page 37).

16

36.   If you had to have any of the work any Defendant performed repaired or corrected, please produce records that reflect the nature and cost of the repair or corrective work.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

As a Supplementary Response, and without waiving the foregoing objection, Plaintiffs respond as follows: No change to the foregoing response, except to add:

4.   In accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4), Plaintiffs will produce for inspection and copying all documents responsive to this request on August 4, 2023, at 9 AM MST, at 7362 Remcon Circle, El Paso, Texas 79912.
5.   **None available at this time.**
6.   See deposition of Eldon Rodriguez.

(emphasis added)(CR-1:1724-1725, Supplementary Response Pages 38-39).

40.   On August 4, 2023, RODRIGUEZ filed "Plaintiffs' Certificate of Written Discovery" certifying that "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers to Defendant GC Rentals

17

and Management LLC's First Set Interrogatories and Requests For Production To Plaintiffs" was served on GC RENTALS. (CR-1:1734-1736).

41. On same date, August 4, 2023, RODRIGUEZ served "Plaintiffs' First Supplementary TRCP Rule 194 Required Disclosures" on HARMSTON, GARDEA, SYNERGY and GC RENTALS, and filed "Plaintiffs' Certificate of Written Discovery." (CR-1:1737-1753).

42. On August 4, 2023, GC RENTALS' counsel appeared at the undersigned's office in order to inspect and collect documents responsive to GC RENTALS' request for production. The documents responsive to said production thus were made available to Counsel for GC RENTALS for inspection and copying, in accordance with RODRIGUEZ' Second Discovery Responses. At the time, GC RENTALS' counsel was informed the documents could not be taken from undersigned's office for copying, as GC RENTALS' counsel had requested, but was advised that copies could be made by the building receptionist at a cost. GC RENTALS' counsel did not agree with paying for copies, so undersigned's office offered to provide the documents via a Dropbox link, to which GC RENTALS' Counsel agreed. Counsel for GARDEA and SYNERGY also appeared and requested copies of the complete file made available to Counsel for GC RENTALS for inspection and copying, and also agreed to receive documents via the Dropbox link.

43. On August 4, 2023, the undersigned counsel produced to Counsel for

GC RENTALS, HARMSTON, GARDEA and SYNERGY, via Dropbox, all documents responsive to GC RENTALS' requests for production. (CR-1:2168-2170).

44.    On August 10, 2023, at 10:30 AM, undersigned counsel received a letter from Ms. Hala A. Abdel-Jaber ("ABDEL-JABER"), counsel for GC RENTALS, regarding the purported failure of RODRIGUEZ to fully respond to "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers to Defendant GC Rentals and Management LLC's First Set Interrogatories and Requests For Production To Plaintiffs." (CR-1:1749-1750).

45.    Significantly, said ABDEL-JABER letter did not at all raise or address the purported failure of RODRIGUEZ to (a) fully respond to RFP Nos. 33 and 36 pertinent herein, or (b) produce copies of documents reflecting the moving expenses claimed by RODRIGUEZ at issue herein.  (CR-1:1749-1750).[4]

46.    On August 10, 2023, GC RENTALS served on Appellants RODRIGUEZ "Amended Notice Of Deposition", therein scheduling ELDON's deposition for October 17, 2023 at 10:00 a.m. (CR-1:2092-2093).

47.    **Plaintiffs' Second Amended Petition.**  On August 11, 2023,

---

[4] Therefore, there was no meet and confer even attempted by ABDEL-JABER, regarding (a) subject responses to RFP Nos. 33 and 36, and/or (b) production of documents related to subject moving expenses, in violation of Rule 191.2 of the Texas Rules of Civil Procedure, entitled "Conference", and Rule 3.11(I) of the Local Rules of the El Paso County, entitled "Hearings On Pre-Trial Motions, Exceptions, And Pleas— Pretrial Procedures (Civil Cases)."

RODRIGUEZ filed their "Plaintiffs' Second Amended Petition" ("SAP"), therein (a) adding an Action for Texas Deceptive Trade Practices ("DTPA"), (b) claiming DTPA treble damages in the total amount of **$1,094,388.48** (which is three (3) times the **$364,796.16** amount of damages due Plaintiffs), and (c) thereby raising the total amount of the claim herein ("TOTAL CLAIM") to **$1,459,184.64**, not including interest, attorney's fees and costs, or other damages.  (CR-1:741-795).

48.    Attached to the SAP as Exhibit C was RODRIGUEZ' May 7, 2020 Demand Letter, therein seeking *inter alia* damages in the following amounts:

      a.      **$275,344.00**, including closing costs, as reimbursement to my Clients for the entire purchase price of the Premises;

      b.      **$11,391.00**, as reimbursement for the cost of RODRIGUEZ' move to Texas;

      c.      **$12,726.00**, as reimbursement for the cost of the structural repairs and improvements incurred by RODRIGUEZ, and

      d.      **$5,151.00**, as reimbursement for the cost RODRIGUEZ moving back to California.

(CR-1:788-792).

49.    Therefore, contrary to GC RENTALS' representations, the SAP provides the necessary documentation for the TOTAL CLAIM amount of **$1,459,184.64**.  Moreover, the "Settlement Statement" produced by NEVAREZ, and obtained via Subpoena *duces tecum* from WestStar Title, LLC, provides all the written evidence of the **$273,366.10** "Cash from Borrower" RODRIGUEZ, as the CASH payment for the purchase price of the Premises.  (See AARB-1:212).

50.     On November 8, 2023, the undersigned met with ELDON, in preparation for ELDON's deposition scheduled for November 9, 2023.[5]  At the meeting, the question of RODRIGUEZ' repair and moving expenses arose again, to which ELDON informed the undersigned that an email previously had been sent to the undersigned by an unknown employee of ELDON's former company, "American Windows."

51.     Consequently, that same day, November 8, 2023, the undersigned proceeded to search the contents of his Microsoft Outlook client email folder for RODRIGUEZ, since the undersigned's Outlook Rules automatically forwards, to the undersigned's Outlook folder created especially for ELDON, all of the emails sent from ELDON's personal email addresses: eldondr@att.net, or EldonDR9@gmail.com.

52.     However, at first, the undersigned was unable to locate subject email from "American Windows", as subject email was NOT in the undersigned's Outlook folder for ELDON.  Instead, after running a full search of all of the undersigned's Outlook folders, the undersigned discovered that subject email was in the undersigned's Outlook "SPAM" folder, because subject email had an unrecognizable email address of "Eldon Rodriguez <outlook_BAB554B1D5DBB81D@outlook.com>", instead of ELDON's

_____

[5]  Upon information and belief, GC RENTALS did not serve on Plaintiffs a second amended notice of deposition scheduling ELDON's deposition for November 9, 2023.

recognized previous personal email addresses: eldondr@att.net, or

EldonDR9@gmail.com. (CR-1:2040-2053).[6]

53.     On November 9, 2023, ELDON's deposition resumed for a third day. During said deposition, as had occurred during ELDON's previous depositions of June 19 and 20, 2023, Defendants' counsel examined ELDON as to the existence of written evidence of the repair damages and moving expenses alleged by RODRIGUEZ.  ELDON was persistent during said examination that he had incurred the alleged repairs and moving expenses. (CR-1:1947-2112, Transcript page 5, lines 12-22; Transcript page 9, lines 23-25; Transcript page 11, lines 20-25; Transcript page 12, lines 1-14; Transcript page 14, lines 23-25; Transcript page 15, lines 1-11; Transcript page 24, lines 13-25; Transcript page 25, lines 1-20; Transcript page 26, lines 17-25; Transcript page 33, lines 21-25; Transcript page 53, lines 10-25; Transcript page 94, lines 19-25; Transcript page 95, lines 1-25; Transcript page 96, lines 1-25; and Transcript page 143, lines 13-25).

54.     On same date of November 9, 2023, *after* the conclusion of Appellees' counsel examination of ELDON, the undersigned counsel commenced his examination of ELDON, and entered "Plaintiffs' Exhibit 1", Bates-Stamped pages

---

[6]  Subject GC RENTALS' MOTION FOR SANCTIONS, at page 2, twice admits that the undersigned's reasoning for not producing said Exhibit was an "oversight." (AAPB-1:691, Transcript Page 197, Lines 10-19).  As now confirmed by the November 9, 2023, deposition transcript of ELDON, the failure to produce subject email was thus not intentional or for purposes of concealment or disregard of the Court's ORDER ON GC RENTALS' MOTION TO COMPEL, but rather was an accidental "oversight", due to the unintended forwarding of said unrecognizable email address for ELDON, to the undersigned's Outlook SPAM folder.

"001-0014" into evidence, because said Exhibit No. 1 contained errors and omissions, and the undersigned sought to first clarify those deficiencies during Appellees' counsel's presence at the deposition, before having Appellees' counsel's examine ELDON re same. (CR-1:1996-2002, Transcript Pages 196-218) (CR-1:2040).

55.    During the undersigned counsel's examination of ELDON, on November 9, 2023, ELDON testified at length regarding the alleged repairs and moving expenses. (CR-1:1996-1998, Transcript page 197, lines 10-25; Transcript page 198, lines 1-25; Transcript page 199, lines 1-18; and Transcript page 204, lines 3-19).

56.    On same date, November 9, 2023, undersigned counsel received an email from counsel for GARDEA and SYNERGY, requesting RODRIGUEZ produce all emails between undersigned counsel and RODRIGUEZ, which had been sent by RODRIGUEZ' children.

57.    Perhaps more importantly, the next day, November 10, 2023, after completion of the undersigned counsel's line of questioning the previous day, November 9, 2023, Counsel for Appellees GC RENTALS, HARMSTON, GARDEA, and SYNERGY, each had ample opportunity to thoroughly examine ELDON under oath as to the contents of Exhibit No. 1. (CR-1:2113-2147, Transcript page 5, lines 22-25; Transcript page 6, lines 1-10; Transcript page 17, lines 2-25; Transcript page 18, lines 1-25; Transcript page 19, lines 1-25;

23

Transcript page 25, lines 21-25; Transcript page 26, lines 1-25; Transcript page 27, lines 1-25; Transcript page 28, lines 1-25; Transcript page 29, lines 1-25; Transcript page 30, lines 1-25; Transcript page 31, lines 1-25; Transcript page 32, lines 1-25; Transcript page 33, lines 1-2; Transcript page 34, lines 19-25; Transcript page 35, line 25; Transcript page 36, lines 4-7; Transcript page 38, lines 24-25; Transcript page 39, lines 1-9; and Transcript page 44, lines 11-19).

58.     Hence, on November 10, 2023, Counsel for Appellees GC RENTALS, HARMSTON, GARDEA, and SYNERGY thoroughly examined ELDON to their full satisfaction, and thereby waived any grounds for objection and sanctions, as to the following:

      a.    The records requested by RFP Nos. 33 and 36 at issue herein, and depicted on subject Exhibit No. 1, therein reflecting all repairs performed, repaired or corrected by RODRIGUEZ, in the total amount of **$12,726.00**; and

      b.    Moving expenses in the amounts of **$11,391.38**, **$5,151.50** and **$1,000.00**, as depicted on subject Exhibit No. 1, for a total amount of **$17,542.88** for moving expenses, but which were NOT AT ALL subject of GC RENTALS' RFP Nos. 33 and 36, or any other discovery request.

(CR-1:2113-2147).

59.     On same date, November 10, 2023, Maria Rodriguez' ("MARIA") deposition was taken, with MARIA also deposed as to RODRIGUEZ' moving expenses.  (CR-1:2120, Transcript page 29, lines 8-24).

60.     **<u>GC RENTALS' MOTION FOR SANCTIONS.</u>**  On November 10,

24

2023 at 1:37 PM (MST), Appellees GC RENTALS, HARMSTON, GARDEA, and SYNERGY filed their "Defendants, GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's, Joint Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing" ("GC RENTALS' MOTION FOR SANCTIONS"). (CR-1:2113-2147).

61. As of the date November 10, 2023, RODRIGUEZ had already produced a total of (408) pages compiled of (120) documents, which included the documents (Rodriguez-000001 - Rodriguez-000145) provided in "Plaintiffs' Rule 194.2 Initial Disclosures."

62. However, the GC RENTALS' MOTION FOR SANCTIONS was not accepted by the El Paso County District Clerk until November 13, 2023, and was file-stamped with a time of 12:00 AM. (AARB-1: 073-074).

63. Significantly, Appellees HARMSTON, GARDEA, and SYNERGY joined GC RENTALS' MOTION FOR SANCTIONS, even though HARMSTON, GARDEA and SYNERGY had no standing, regarding (a) GC RENTALS' Second Discovery Responses, and (b) GC RENTALS' MOTION TO COMPEL.

64. On November 10, 2023 at 8:33 PM (MST), RODRIGUEZ filed their "Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts." (AARB-1:075-155).

65. However, RODRIGUEZ' Third Amended List of Expert Witnesses

25

and Designation of Testifying Experts was not accepted by the El Paso County District Clerk until November 13, 2023 at 10:04 AM (MST). (AARB-1:073-074).

66. **<u>GC RENTALS' Motion For Emergency Hearing.</u>** On November 13, 2023, ABDEL-JABER, counsel for Appellee GC RENTALS and the INSURER, sent an email to Court Coordinator Loretta Mata ("MATA"), requesting the emergency hearing be scheduled for the GC RENTALS' MOTION FOR SANCTIONS, and thereby completely failing and disregarding her obligation to meet and confer with the undersigned counsel. (CR-1:1412-1413).[7]

67. Also on November 13, 2023, GC RENTALS filed its "Objections To Plaintiffs' Third Amended Notice of Deposition of Corporate Representative of GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk." (AARB-1:158-166).

68. On same date, November 13, 2023, the deposition of MENDEZ, as the Corporate Representative, was held. (CR-3:4810-5140).

69. On November 14, 2023, Ms. Terry Silva ("SILVA"), on behalf of ABDEL-JABER, sent an email to MATA and all counsel confirming that the GC RENTALS' MOTION FOR SANCTIONS, was set for Emergency Hearing, on November 28, 2023, at 2:00 PM, without any indication or suggestion as to what

---

[7] ABDEL-JABER was then once again in blatant violation of (a) Rule 191.2 of the Texas Rules of Civil Procedure, entitled "Conference", and (b) Rule 3.11(I) of the Local Rules of the El Paso County, entitled "Hearings On Pre-Trial Motions, Exceptions, And Pleas— Pretrial Procedures (Civil Cases)."

the "Emergency" was about. Again, neither SILVA nor ABDEL-JABER even attempted a meet and confer with the undersigned counsel, prior to requesting an Emergency Hearing.

70. On same date, November 14, 2023, the 171st Judicial District Court Judge Bonnie Rangel ("JUDGE RANGEL"), filed an "Order of Court Setting" scheduling GC RENTALS' MOTION FOR SANCTIONS for Emergency Hearing on November 28, 2023, at 1:00 PM., without any regard for the possible scheduling conflict of the undersigned.

71. Also on November 14, 2023, the deposition of MENDEZ resumed. (CR-3:5141-5203).

72. On November 15, 2023, undersigned counsel's paralegal Denise D. Macias ("MACIAS") sent an email to Mr. Justiss Rasberry ordering the transcripts of the deposition of ELDON and MARIA that were taken on November 9th and November 10th, requesting confirmation that preparation of the transcripts would take approximately two to three weeks. No confirmation or response was ever received from Mr. Rasberry, the court reporter for GC RENTALS. (CR-1:1421-1425).

73. On November 16, 2023, MACIAS sent an email to Appellees' counsel as a meet and confer to ascertain their opposition to RODRIGUEZ' filing of a Motion for Continuance of the hearing on GC RENTALS' MOTION FOR SANCTIONS, since the undersigned counsel already had scheduled hearings in the

41st District Court of El Paso County Texas, in *Javier Robles vs. Admiral's Experience, Inc., et al.*, Cause number 2021DCV2598, and therefore said hearing in *Robles* took precedence herein, pursuant to the Local Rules of El Paso County. (CR-1:1426-1428).

74. On November 22, 2023, Appellee GC RENTALS served on Appellants "Defendant GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk's Second Supplemental Initial Disclosures", therein producing for the very first time the "Real Estate Errors And Omissions Liability Policy ("POLICY")" of the "INSURER", Twin City Fire Insurance Company, or The Hartford, for the "NAMED INSURED", GC Rentals and Management, LLC dba Realty ONE Group Mendez Burk, which should have been produced to the undersigned counsel for RODRIGUEZ, more than three (3) months earlier, on August 1, 2023, per TRCP Rule 192.3(f).[8]  (CR-3:5512-5613).

75. On November 28, 2023, RODRIGUEZ filed their partially opposed "Motion For Continuance of Hearing on GC RENTALS' MOTION FOR SANCTIONS ("Motion For Continuance").  (CR-1:1399-1430).

---

[8]  Incredibly, at the prior deposition of Gabriel Mendez ("MENDEZ"), ABDEL-JABER, the conflicted counsel for both Appellee GC RENTALS and the INSURER, improperly instructed MENDEZ, owner of GC RENTALS, to NOT answer any questions relating to the INSURER, or the POLICY, and refused to produce either the POLICY, or any other relevant documents concerning MENDEZ and the INSURER, in blatant violation of (a) the Third Amended Notice of Deposition issued to GC RENTALS, pursuant to TRCP 199.2(b)(1), therein requesting the production of documents by GC RENTALS regarding same, and (b) ABDEL-JABER's obligation to describe/produce said insurance documents, under the "Required Disclosures" provisions of TRCP 194.2(b)(7).

76.     On same date, November 28, 2023, RODRIGUEZ filed "Plaintiffs' Response To Defendants GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing" ("RESPONSE").  (CR-1:1431-1790).

77.     On same date, November 28, 2023, at 10:44 AM, MACIAS provided the Court with a copy via email of said Motion For Continuance.

78.     On same date, November 28, 2023, at 2:17 PM, Blake Downey, counsel for Appellees GARDEA and SYNERGY, informed the undersigned, via email, that the Trial Court had already conducted the Emergency Hearing on the undersigned's Motion for Continuance of GC RENTALS' MOTION FOR SANCTIONS, and had denied same outside the presence of the undersigned counsel, and was starting the hearing on GC RENTALS' MOTION FOR SANCTIONS.[9]  (CR-1:2367-2369).

79.     On same date, November 28, 2023, after concluding the hearing on the *Robles* case, the undersigned joined the hearing on GC RENTALS' MOTION FOR SANCTIONS that was already in progress via Zoom, in *ex parte* manner.[10]

---

[9]  The undersigned also received a telephone call from ABDEL-JABER confirming that the Court had conducted the hearing on the Motion for Continuance of Motion For Sanctions, had denied same, and had started the Emergency Hearing on GC RENTALS' Motion For Sanctions.

[10]  The undersigned, by and through MACIAS, subsequently requested a copy of the transcript of the aforementioned Motion For Continuance and said *ex parte* Emergency Hearing, but was

80. In plain terms, by the timer the undersigned joined the "Emergency Hearing", on GC RENTALS' MOTION FOR SANCTIONS this case had already been decided via Zoom, in improper *ex parte* manner, by JUDGE RANGEL.[11]

81. On December 4, 2023, the Trial Court signed and filed the "Order on Defendants' Joint Motion For Sanctions, Motion To Show Cause and Motion For Emergency Hearing" ("ORDER"), against Appellants ELDON RODRIGUEZ and MARIA RODRIGUEZ, therein:

    a.    Granting "Defendants' Joint Motion for Sanctions, Motion to Show Cause and Motion for Emergency Hearing",

    b.    Ordering Plaintiffs to pay expenses related to Defendants expenses of discovery, expenses for depositions, and taxable court costs pursuant to Texas Rule of Civil Procedure 2l5.2(2); and

    c.    Ordering that all Plaintiffs' claims against Defendants are dismissed with prejudice to refiling pursuant to Texas Rule of Civil Procedure 215.2(5).

(AARB-1:003-004).

82. On January 3, 2024, RODRIGUEZ timely filed their "Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct, Motion To Reform,

---

advised that said proceedings were was not recorded, and therefore apparently no recording of said hearings exists.

[11] RODRIGUEZ prays the Court take Judicial Notice, pursuant to Rule 201, of the Texas Rules of Evidence, of the Opinion, Issued November 3, 2023, of the Special Court Of Review, commissioned by the Texas State Commission, sanctioning JUDGE RANGEL for Judicial Misconduct, sanctioned for Judicial Misconduct, during civil proceeding, involving a discovery dispute, and a Zoom hearing to resolve the dispute, coincidentally, as was the said "Emergency Hearing" at issue herein. (See AARB-1: 006-019).

Motion To Vacate, Motion To Set Aside and Motion For New Trial" ("MOTION TO RECONSIDER"). (AARB-1:010-038).

83. On February 16, 2024, RODRIGUEZ timely filed their "Notice of Appeal." (AARB-1:044-048).

84. On April 2, 2024, the District Clerk's Office filed the Clerk's Record (3 Volumes). (AARB-1:049).

85. On May 1, 2024, RODRIGUEZ filed their "Appellants' First Motion For Extension Of Time To File Appellants' Principal Brief", requesting a thirty (30) day extension.

86. On same date, May 1, 2024, this Court entered an Order granting Appellants' First Motion For Extension Of Time To File Appellants' Principal Brief, extending the Principal Brief deadline to Saturday, June 1, 2024.

87. On Monday, June 3, 2024, RODRIGUEZ filed their "Appellants' Principal Brief."

88. On July 2, 2024, GARDEA and SYNERGY filed their "Jaime Gardea and Synergy Construct LLC's First Motion For Extension Of Time To File Reply Brief."

89. On July 5, 2024, this Court entered an Order granting GARDEA and SYNERGY's First Motion For Extension Of Time To File Appellees' Brief, extending the Brief deadline to August 17, 2024.

90. On July 11, 2024, GC RENTALS filed its "Amended Motion For

Extension Of Time To File Brief Of Appellees."

91. On same date, July 11, 2024, RODRIGUEZ filed their "Appellants' Objection To Motion For Extension Of Time To File Reply Brief OF Appellees Filed By GC Rentals and Management, LLC." (AARB-1:050-148).

92. On July 12, 2024, this Court entered an Order granting GC RENTALS' Amended Motion For Extension Of Time To File Brief Of Appellees', extending the Brief deadline to August 2, 2024.

93. On July 31, 2024, GC RENTALS filed its "Appellee GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk's Second Motion For Extension Of Time To File Responsive Brief."

94. On August 2, 2024, this Court entered an Order granting GC RENTALS' Second Motion For Extension Of Time To File Responsive Brief, extending the Brief deadline to August 9, 2024.

95. On August 9, 2024, GC RENTALS filed its "Brief of Appellee GC Rentals and Management, LLC d/b/a Realty One Group Mendez."

96. On August 16, 2024, GARDEA and SYNERGY filed their "Appellees Jaime Gardea and Synergy Construct LLC's Second Motion To Extend Deadline to File Brief."

97. On August 21, 2024, this Court entered an Order granting GARDEA and SYNERGY's Second Motion For Extension Of Time To File Appellees' Brief, extending the Brief deadline to August 31, 2024."

98. On August 23, 2024, the District Clerk's Office filed a Supplemental Clerk's Record (1 Volume).

99. On August 29, 2024, RODRIGUEZ filed their "Appellants' First Motion For Extension Of Time To File Appellants' Reply Brief To GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk."

100. On same date, August 29, 2024, GARDEA and SYNERGY filed their "Jaime Gardea and Synergy Construct LLC's Appellees' Brief."

101. On August 30, 2024, this Court entered a "Corrected Order" granting Appellants' First Motion For Extension Of Time To File Appellants' Reply Brief To GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk, extending the Brief deadline to September 28, 2024.

102. On September 17, 2024, Appellants filed their "Appellants' First Motion For Extension Of Time To File Appellants' Reply Brief To Jaime Gardea and Synergy Construct LLC."

103. On September 19, 2024, this Court entered an Order granting Appellants' First Motion For Extension Of Time To File Appellants' Reply Brief To GARDEA and SYNERGY, extending the Brief deadline to October 18, 2024.

104. On September 26, 2024, RODRIGUEZ filed their "Appellants' Second Motion For Extension Of Time To File Appellants' Reply Brief To GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk."

105. On September 30, 2024, this Court entered an Order granting

Appellants' Second Motion For Extension Of Time To File Appellants' Reply Brief To GC RENTALS, extending the Brief deadline to October 28, 2024.

106. On October 15, 2024, RODRIGUEZ filed their "Appellants' Second Motion For Extension Of Time To File Appellants' Reply Brief To Jaime Gardea and Synergy Construct LLC."

107. On October 16, 2024, this Court entered an Order granting Appellants' Second Motion For Extension Of Time To File Appellants' Reply Brief To GARDEA and SYNERGY, extending the Brief deadline to November 17, 2024.

**II.      APPELLEE'S SUMMARY OF THE ARGUMENT.**

108. GC RENTALS argues that the "offensive conduct by Nevarez was directly related to the reason for the Joint Motion for Sanctions. Other sanctions were imposed against Nevarez for his prior discovery abuse, thereby justifying the Order." (Response, at 10).

109. However, GC RENTALS cites to no specific "offensive conduct by Nevarez", other than complaining about the discovery by NEVAREZ of subject fourteen (14) page "Exhibit No. 1" in NEVAREZ' Outlook "SPAM" folder, due to "oversight" of NEVAREZ, of not checking his Outlook "SPAM" folder, for emails from "American Windows", until the day before ELDON's deposition.  (See Exhibit R, (AARB-1:__-__).

110. Moreover, GC RENTALS can cite to no specific sanctions imposed against Nevarez for his alleged prior discovery abuse, because there were NO

34

SANCTIONS imposed on NEVAREZ. (See (AARB-1:__-__, for the "Order On Defendant's Motion To Compel Discovery Against Plaintiffs").

111.  In fact, the Court NEVER even ruled on "Defendant GC Rentals And Management, LLC d/b/a Realty One Group Mendez Burk's Motion For Costs." (CR-[Volume No.]:[Page No.]").

112.  GC RENTALS argues that "Appellants did not produce a single receipt or evidence in support of their alleged damages" to GC RENTALS, Gardea or Synergy.  (Response, at 2).

113.  Similarly, GC RENTALS argues that "Nevarez, contrary to the trial court's Order, did not withdraw objections and did not produce a single receipt or other evidence in support of Appellant's alleged damages and claimed none were available. CR:1687-1733; CR:3822-3840." (Response, at 5-6).

114.  To the contrary, in full and timely occurrence with the Order On Defendant's Motion To Compel Discovery Against Plaintiffs", on August 4, 2023, Appellants served "Plaintiffs' First Supplementary TRCP Rule 194 Required Disclosures" to Defendants Heather Harmston, Jaime Gardea, Synergy Construct LLC, and GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, with Exhibit A attached, and provided a Dropbox link with all documents listed on Exhibit A via email.  (**Total 408 pages**). (CR-1:1737-1748) (CR-1:1751-

35

1753) (CR-2:2168-2170) (SCR-1:503-517).[12]

115.  In short, GC RENTALS' representations to this Court are not only wrong, but are contrary to the record herein.

116.  GC RENTALS has completely failed to carry its burden of proof, and therefore this Court should (a) reverse the ORDER of the Trial Court, (b) order the transfer of this case to another trial court, for consideration of the merits, and (c) award Appellants all reasonable attorney's fees and costs incurred in this appeal.

### III.  PRAYER.

**WHEREFORE, PREMISES CONSIDERED**, Appellants ELDON RODRIGUEZ and MARIA RODRIGUEZ ask the Court to (a) reverse the ORDER of the Trial Court, (b) order the transfer **of** this case **to** another trial court, for consideration of the merits, and (c) award Appellants all reasonable attorney's fees and costs incurred in this appeal.

October 28, 2024                    Respectfully submitted,


                                   **THE NEVAREZ LAW FIRM, PC**
                                   7362 Remcon Circle
                                   El Paso, Texas 79912
                                   Telephone: (915) 225-2255
                                   Facsimiles: (915) 845-3405
                                   Email: MNevarez@LawOfficesMRN.com

---

[12]  Unfortunately, JUDGE RANGEL did not appear in person at said hearing on the motion to compel, and apparently no record was kept of subject hearing. However, the record of emails between the parties herein reflects that the undersigned actually volunteered and arranged for the inspection and copying to occur on August 4, 2023, before subject hearing, though JUDGE RANGEL later ruled that said inspection and copying could occur by Close of Business, on August 4, 2023

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**
State of Texas Bar No. 14933400

Attorney for Appellants

**CERTIFICATION**

I certify that I have reviewed this Appellants' Reply Brief and conclude that every factual statement is supported by competent evidence included in the record.

/s/ Michael R. Nevarez
**MICHAEL NEVAREZ**

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i) (3), I hereby certify that this ELDON RODRIGUEZ and MARIA RODRIGUEZ' Reply Brief is a computer-generated document using Microsoft Word, and contains **6,875** words (excluding the Caption, Identity Of Parties And Counsel, Table Of Contents, Index Of Authorities, Statement Of The Case, Statement Of Jurisdiction, Statement Regarding Oral Argument, Record References, Statement Of Issues Presented, Statement Of Procedural History, Signature, Proof Of Service, Certification, Certificate Of Compliance, and Appendix), which is less than the **7,500** word maximum, in accordance with Tex. R. App. P. 9.4(i)(2)(C).


/s/ Michael R. Nevarez
**MICHAEL NEVAREZ**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing

**APPELLANTS' REPLY BRIEF TO BRIEF OF APPELLEE GC RENTALS**

**AND MANAGEMENT, LLC d/b/a REALTY ONE GROUP MENDEZ**

**BURK**, with all supporting attachments, exhibits, and affidavits referenced therein,

if any, was served by e-Filing via an Electronic Filing Service Provider, to the

following parties in interest, on this October 28, 2024:

**ATTORNEY FOR APPELLEE HEATHER HARMSTON:**
MARIO A. GONZALEZ
1522 Montana Avenue, Suite 100
El Paso, Texas 79902
Telephone: (915) 543-9802
Email: mario@gonzalezlawfirm.com

**ATTORNEY FOR APPELLEES JAIME GARDEA, SYNERGY
CONSTRUCT LLC:**
M. BLAKE DOWNEY
SCOTTHULSE PC
One San Jacinto Plaza
201 E. Main Drive, Suite 1100
El Paso, Texas 79901
Telephone: (915) 533-2493
Emails: bdow@scotthulse.com;

**ATTORNEYS FOR APPELLEE GC RENTALS:**
JAMES A. MARTINEZ
HALA A. ABDEL-JABER
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
P.O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1597
Emails: martinezja@jmeplaw.com; Abdel-jaber@mgmsg.com

/s/ Michael R. Nevarez
**MICHAEL NEVAREZ**

No. 08-24-00024-CV

In The Court of Appeals
For The Eighth District Of Texas

Eldon Rodriguez and Maria Rodriguez

v.

Heather Harmston, Jaime Gardea, Synergy Construct LLC, GC Rentals
and Management LLC d/b/a Realty One Group Mendez Burk, Gabriel
Mendez, and Miguel Chacon

**Appendix To Appellants' Reply Brief To Brief Of Appellee GC Rentals
and Management, LLC d/b/a Realty One Group Mendez Burk**
_____

Appeal From The 171st District Court
Of El Paso County, Texas
Trial Court Cause No. 2021-DCV-2346

Eldon Rodriguez and Maria Rodriguez,
Appellants

Michael R. Nevarez, Esq.
The Nevarez Law Firm, PC
7362 Remcon Circle
El Paso, Texas 79912
State Bar No. 14933400
Telephone: (915) 225-2255
Facsimiles: (915) 845-3405
E-Mail: MNevarez@LawOfficesMRN.com

Attorney for Appellants

**ORAL ARGUMENT NOT REQUESTED**

# LIST OF DOCUMENTS

**<u>Appendix Page:</u>**

1.      Order of Defendants' Joint Motion For Sanctions…………………………..4

2.      Special Court of Review Opinion Issued Nov. 3, 2023…….……………..6

3.      Defendants, GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's, Joint Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing and Exhibits A and B …………………...20

4.      E-file Notification of Service – Defendants' Joint Motion For Sanctions Against Plaintiffs…………………………………………………………...73

5.      Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts and Exhibits (A-J)…………………………………...75
      a.      Exhibit A – Building Inspection Report…………………………83
      b.      Exhibit B – John Estrada's Resume………………………………90
      c.      Exhibit C – Executive Report by Jaime Gallo………………………91
      d.      Exhibit D – Jaime Gallo CV Resume………………………………94
      e.      Exhibit E – Tom Given Resume……………………………………96
      f.      Exhibit F – Expert Report of Michael Bray…………………………97
      g.      Exhibit G – Michael Bray Resume……...…………………………..99
      h.      Exhibit H – G-3ngineering Report…………………………………101
      i.      Exhibit I – New Proposed Residence……………...………………131
      j.      Exhibit J – Truss Engineering Drawings…………………………..138

6.      E-file Filing Accepted – Plaintiffs' Third Amended List of Experts …….156

7.    Objections To Plaintiffs' Third Amended Notice of Deposition of Corporate Representative of GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk …………………………………………………...158

8.    Date Calculator – 30 Day Deadline To File Motion To Reconsider.……...167

9.    Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct, Motion To Reform, Motion To Vacate, Motion To Set Aside and Motion For New Trial…………………………………………………………..172

10.   Date Calculator – 75 Day Deadline To File Notice of Appeal…………..201

11.   Notice of Appeal……………………….…………………………206

12.   Letter from Court of Appeals, Eighth District of Texas, Regarding Clerk's Record Filed…………………………………………………………211

13.   US Dept of Housing – Settlement Statement.………..……… ..………...212

## IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS

## 171st JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELDON RODRIGUEZ and MARIA RODRIGUEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and MEGAN TARA HARRIS,<br><br>    Defendants. | § § § § § § § § § § § § § § § § | Case No. 2021DCV2346 |

## ORDER ON DEFENDANTS' JOINT MOTION FOR SANCTIONS, MOTION TO SHOW CAUSE AND MOTION FOR EMERGENCY HEARING

On this day came to be considered Defendants GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Jaime Gardea, Synergy Construct, and Heather Harmston's, Joint Motion for Sanctions, Motion to Show Cause and Motion for Emergency Hearing (the "Motion"). Having considered said Motion and the arguments of counsel, this Court hereby orders that said Defendants' Motion is GRANTED.

IT IS THEREFORE ORDERED that Defendants' Joint Motion for Sanctions, Motion to Show Cause and Motion for Emergency Hearing is GRANTED.

IT IS FURTHER ORDERED Plaintiffs are ordered to pay expenses related to Defendants expenses of discovery, expenses for depositions, and taxable court costs pursuant to Texas Rule of Civil Procedure 215.2(2).

IT IS FURTHER ORDERED that all Plaintiffs' claims against Defendants are dismissed with prejudice to refile pursuant to Texas Rule of Civil Procedure 215.2(5). This order is final and

AARB-1:004

appealable.

SIGNED this ___4___ day of ~~July~~ Dec., 2023.

Honorable Bonnie Rangel
171st Judicial District

APPROVALS:

_____
Michael Nevarez
Attorney for Plaintiffs

/s/ Hala A. Abdel-Jaber
_____
James A. Martinez
Hala A. Abdel-Jaber
Attorneys for Defendant GC Rentals and Management,
LLC d/b/a Realty One Group Mendez Burk

/s/ Blake Downey (with permission)
_____
Blake Downey
Attorney for Jaime Gardea and
Synergy Construct, LLC

_____
Mario Gonzalez
Attorney for Heather Harmston

AARB-1:005

**Opinion Issued November 3, 2023**



**DOCKET NO. SCR 22-0004**

**SPECIAL COURT OF REVIEW**

**IN RE INQUIRY CONCERNING HONORABLE BONNIE RANGEL**
**CJC NO. 21-0483, 21-0802, 21-1294 & 21-1609**

---

**OPINION**

**Before QUINN, CJ Presiding, and BENAVIDES JJ and GOLEMON, CJ.**

Truly, a picture is worth one thousand words, if not more. Here, we have more than pictures; rather, we have videos of conduct ascribed by the Texas State Commission on Judicial Conduct as unacceptable. While words may tend to describe that conduct, they fall short of grasping its essence. Thus, we use both in completing the duty assigned us by the Texas Supreme Court. That body ordered this panel to conduct a de novo review of various acts performed by the Honorable Bonnie Rangel, 171st District Court. Those acts were found sanctionable by the Commission, which issued both a public warning and public admonishment. We issue a public warning coupled with an order for further education and mentoring.

## *Background*

The "public admonition" arose from a single instance of Judge Rangel filing a written response to a motion seeking her recusal from a particular case. Underlying the determination was the rule of procedure stating that a jurist subject to such a motion "should not file a response" to it. TEX. R. CIV. PROC. 18a(c)(2). According to the Commission, the mere fact that Judge Rangel filed a response meant she failed to comport and maintain competence in the law, thereby violating "Canons 2A and 3B(2) of the Texas Code of Judicial Conduct."

The "public warning" arose from the judge's interaction with attorneys and court personnel during four separate hearings held within the two-year period of 2020 to 2021. Each hearing occurred electronically and remains within the morass of videos accessible to the public via YouTube. And, collectively, her conduct led the Commission to hold she "should be publicly warned for failing to [be] patient, dignified and courteous toward the Assistant District Attorney, attorneys and court personnel, all of whom she deals in an official capacity, during court hearings, in violation of Canon 3B(4) of the Texas Code of Judicial Conduct."

Each of the foregoing determinations are subject to a de novo review. *In re Bell*, 894 S.W.2d 119, 121 (Tex. Spec. Ct. Rev. 1995); *In re Keller*, 357 S.W.3d 413, 425-26 (Tex. Spec. Ct. Rev. 2010). Thus, in July 2023, we convened a hearing to garner pertinent evidence. Both Judge Rangel and the Commission appeared. The following emanates from that hearing.

2

### *Responding to Recusal*

We begin with the matter of responding to the recusal motion and reiterate that the Commission found Judge Rangel violated Canons 2A and 3B(2) in doing so. We conclude otherwise.

Canon 2A states that: a "judge shall comply with the law . . .." Per Canon 3B(2), a jurist also "shall maintain professional competence in" the law. Of the myriad laws we "shall comply with" and "should maintain professional competence in" is that establishing the procedures to be followed when a litigant attempts to recuse a trial judge. Those procedures appear in Rule 18a of the Texas Rules of Civil Procedure. And, the subpart in play is that stating: "[t]he judge whose recusal or disqualification is sought should not file a response to the motion." TEX. R. CIV. PROC. 18a(c)(2). No one disputes that Judge Rangel filed a response. She admitted as much and explained she "was not aware of that" provision. So too did she state she: 1) had not been in "very many contentious or contested motion[s] to recuse," 2) failed to comply with the law when filing the response, and 3) failed to maintain professional competence in the law regarding motions to recuse and filing a response. Does that warrant sanction in this instance . . . we say no.

The violation of judicial canons may be the source of discipline when "willful." TEX. CONST. art. V, §1-a(6)(A). Willful conduct, for purposes of that article, involves the improper or wrongful use of the power of office by a judge acting intentionally, or with gross indifference. *In re Ginsberg*, 630 S.W.3d 1, 7 (Tex. Spec. Ct. Rev. 2018); *In re Barr*, 13 S.W.3d 525, 534 (Tex. S. Ct. Rev. Trib. 1998); *In re Thoma*, 873 S.W.2d 477, 489 (Tex. S. Ct. Rev. Trib. 1994). This contemplates more than an error in judgment or lack of diligence. *In re Barr*, 13 S.W.3d at 534; *In re Thoma*, 873 S.W.2d at 489. Rather,

3

it must evince moral turpitude, dishonesty, corruption, misuse of office, bad faith or the like. *Id.* And, the Commission must prove the jurist had either: 1) the conscious objective of causing the result or of acting in the manner defined in the pertinent rule of conduct or 2) exercised indifference that is flagrant, shameful and beyond all measure and allowance when performing the act. *In re Ginsberg*, 630 S.W.3d at 7; *In re Barr*, 13 S.W.3d at 534-35.

At best, the evidence of record revealed a lack of knowledge on Judge Rangel's part about the applicability of Rule 18a and its allegedly absolute prohibitions. It depicts her failure to exercise diligence in discovering the law by which she had to abide when confronted with a motion to recuse. We find nothing in it evincing moral turpitude, dishonesty, corruption, misuse of office, or bad faith. *See In re Ginsberg*, 630 S.W.3d at 8 (defining bad faith as dishonesty of belief or purpose). Nor do we find within it a pattern of practice of ignoring applicable law or refusal to educate herself about the law.

Judges make mistakes when complying with, applying, and interpreting laws. Indeed, the obviousness of this is implicit within our tiered judicial system. Recognizing that, those writing the Constitution required violations of Canons 2A and 3B(2) to be willful. Judge Rangel's were not. Her mistake likened to simply an error in judgment or lack of diligence.

*Interaction at Hearings*

Next, we address Judge Rangel's comportment with Canon 3B(4). It provides that a "judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, and should require similar

4

conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control."  TEX. CODE JUD. CONDUCT, Canon 3B(4).  The Commission charged Judge Rangel with violating this canon while presiding over four hearings.  And, as said earlier, the Commission determined that collectively, the violation warranted a public warning. We concur after conducting our own de novo review of the evidence.

To reiterate, the conduct at issue was brought to the Commission's attention through three complaints.  One, CJC No. 21-0483, encompassed two incidents.  Each of those incidents involved extended rebukes, one directed at an assistant district attorney and the El Paso County district attorney's office.[1]  The other entailed rebukes directed at two attorneys in a civil proceeding and stemmed from those attorneys characterizing an opponent's discovery requests as "nonsensical."[2]  The second complaint, CJC No. 21-0802, concerned reference to a defendant suffering the effects of "karma,"[3] while the third, CJC No. 21-1609, deals with reference to a court interpreter's attitude and a curt directive to the interpreter about having a "good life."[4]  We address each in turn.

Regarding the assistant district attorney and office of the El Paso District Attorney incident, Judge Rangel spoke in what can be described as an elevated, sometimes shrill, tone.[5]  With such a tone in her voice, interspersed with hopping in her seat and waving her arms, she 1) criticized how "you guys operate," 2) opined that the district attorney's office does not "operate with fairness and decency and justice," 3) characterized arguments proffered by the assistant district attorney as "outrageous" and "stupid," 4)

---

[1] https://www.youtube.com/live/I1Yc5otb-kU?si=QhkNXHbFYy3i7sZB
[2] https://www.youtube.com/live/_hvzgS9L2bc?si=a-0thJDmdZhVERDs
[3] https://www.youtube.com/live/XFn0FpotMSI?si=G8xFzeOszjnXpvAM
[4] https://www.youtube.com/live/esYQxeYT7ws?si=JUKjdGeSsVmUOYRP
[5] https://www.youtube.com/live/I1Yc5otb-kU?si=QhkNXHbFYy3i7sZB beginning at 1:23:30 *in passim.*

5

voiced disgust through her statement, " I just can't take that . . . can't take it," 5) criticized "how you guys think and how you dispense justice . . . it's outrageous," 6) espoused "this isn't the first time this outrageousness has been brought to my attention . . . this is case, after case, after case on big cases . . . you guys just gotta get a conviction," and 7) accused the office of repeatedly "play[ing] games" and "being obstructive in all the big big cases." Given that this was a hearing conducted over Zoom during the period of COVID closures, the assistant district attorney sat alone and attempted to communicate with office colleagues through text messages. Judge Rangel then accused the lawyer of inattentiveness and extended her commentary. Again, this discourse transpired over a period of minutes as opposed to seconds. Furthermore, it evinced a general bias against the manner in which another elected official (the district attorney) operated his office. Indeed, she later admitted to 1) having a "contentious relationship" with the district attorney, 2) "everyone" knowing of that contentious relationship, 3) supporting a candidate running against him, 4) uttering "disparaging comments" about his office while conducting the Zoom hearing, and 5) having issues, in general, with the particular assistant district attorney sitting before her. The foregoing similarly demonstrates bias and prejudice by Judge Rangel, which also violates Canon 3B(5). TEX. CODE JUD. CONDUCT, Canon 3B(5).

As for the civil proceeding, it involved a discovery dispute and a Zoom hearing to resolve them. The three attorneys participating therein were female, two of whom worked for the same law firm. Through much of the proceeding, Judge Rangel spoke calmly and inquisitively. Yet, that changed when one attorney (movant's counsel) described how the other two first "trashed" her by apparently characterizing her discovery requests as

6

"vague" and "nonsensical."[6]  In a stern voice and a roll of her eyes, Judge Rangel began with: "you know, that would kind of piss me off."  This was followed, in an alternatingly calm and yelling tone, with her description of the "flavor" of the situation.  That "flavor" consisted of: 1) "disrespect" as opposed to "kindness" and 2) two more experienced attorneys "pick[ing]" on a less seasoned one.[7]  She then can be heard both interchangeably emphasizing and yelling that: 1) "nonsensical is mean," 2) "you guys are disrespectful and you guys are mean," 3) "why would you say 'nonsensical', that's disrespectful," 4) "have you ever said nonsensical in other responses," 5) "well you're disrespectful to a lot of people and that's rude," 6) "let me tell you . . . in this world we do not need any more of that, we have plenty of that," 7) "so be professional," 8) "so when you say nonsensical you mean disrespect," 9) "and let me tell you . . . disrespect is determined by the receiver," 10) "stop shaking your head because you're disrespecting me right now," and 11) you may not mean it "but you do it to everybody," 12) "you can't deal with these people," 13) "these people do not accept responsibility . . .  do not accept . . . that 'nonsensical' was a little bit disrespectful," and 14) "it's a shame you all have to be female, that's the shameful part."[8]  These comments were also punctured with body language like swinging of the arms, slapping of hands, waving of the head, and leaning towards the camera.  Though more criticisms were made over the ensuing minutes despite apologies from counsel, this captures the tenor of her actions.  It further captures

---

[6] https://www.youtube.com/live/_hvzgS9L2bc?si=a-0thJDmdZhVERDs beginning at 17:30 *in passim.*

[7] The record indicates Rangel simply did not know that the lawyer she assumed was inexperienced had been licensed four years while one whom she castigated was newly licensed.

[8] Judge Rangel informed the two attorneys that words like "vague," "overbroad," and "don't make sense" were acceptable terms to her.  Interestingly, the latter phase is the definition of "nonsensical."  MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriam-webster.com/dictionary/nonsense (last visited October 6, 2023).  Furthermore, an electronic query of the term on a popular legal research site disclosed over 800 court opinions wherein it was used by the jurists authoring them.

AARB-1:012

their rather ironic nature, given the admonishment to act with respect and kindness. Judge Rangel would later concede that her conduct could have been better.

Next are the circumstances in CJC No. 21-0802. The hearing concerned a motion to dismiss charges against a defendant. Apparently, he had been accused of indecency with and sexual assault of a child. The defendant having since suffered severe medical issues implicating his groin area, Judge Rangel quipped: "sometimes karma's a bitch." She then followed that, in a raised voice and a wave of her arm with: "and let me tell you, if he did it, karmically he's suffering right now cause God hit him right in the place where . . . it all started . . . really . . .." At that point, counsel observed that the defendant was also a double amputee. Thereafter, Judge Rangel quipped: "right, he can't feel anything down there . . . that's karmic . . . if he did it, there it is, God's taken of it, there's justice, God's taken care of it, if he did it.'[9] The above again demonstrates bias and prejudice by Judge Rangel, which violates Canon 3B(5). TEX. CODE JUD. CONDUCT, Canon 3B(5).

Asked at the hearing by this Special Court of Review whether her comments illustrated a bias or prejudice against the as-yet convicted defendant, she responded "no." Instead, her intent was to "find some sense of justice for the complaining witnesses" and "give a little peace to the complaining witnesses." Intending to bring a sense of justice for and peace to the complaining witnesses by describing defendant's medical condition as karmic and God's justice certainly suggests a predisposition regarding the defendant's guilt. So too does it evince ridicule of his medical condition.

---

[9] https://www.youtube.com/watch?app=desktop&v=XFn0FpotMSI&feature=youtu.be beginning 33:45 *in passim.*

The substance of the third and final complaint, i.e., CJC No. 21-1609, occurred at the end of a guilty plea proceeding. Judge Rangel inquired of the court interpreter if she could deactivate the interpreting program. An inaudible response came from the interpreter, which response apparently indicated she could not. Nevertheless, Judge Rangel calmly informed the interpreter to: 1) not be offended, 2) she was not trying to "piss [the interpreter] off," and 3) another interpreter had successfully ended the program in a prior hearing. More was then said by the judge. It included, in an alternatingly raised and then stern voice: 1) "I'm not making this up and I'm not trying to piss you off;" 2) "you pissed me off with your attitude;" 3) "goodbye and have a good life . . . figure it out, please;" and 4) "that's what you should have said from the very beginning instead of pissing me off . . .."[10]

### *Judicial Conduct*

Media, movies, and television influence the public's perception of their elected judges. Whether it be the wizened, yet stern, Judge Chamberlain Haller, or the witty, sharped-tongued Judge Judy, their performance on screen may easily be perceived as examples of how we should act. Yet, we are not them or Judge Dredd or even Judge Elihu Smalls. We are not entertainers, but rather Texas jurists obligated to abide by actual rules as opposed to a story or show script. Those rules include the Code of Judicial Conduct. Furthermore, Article V, Section 1-a(6)(A) of the Texas Constitution states for what a judge may be disciplined and mandates that a jurist shall not engage in the willful violation of the Code of Judicial Conduct, or in willful or persistent conduct that is clearly

---

[10] https://www.youtube.com/watch?v=esYQxeYT7ws&list=PPSV  1:51:45 *in passim.*

9

inconsistent with the proper performance of her duties or casts public discredit upon the judiciary or on the administration of justice. TEX. CONST. ART. V, § 1-a(6)(A); *see also* TEX. GOV'T CODE ANN. § 33.001(b)(2); TEX. CODE JUD. CONDUCT, Canon 2(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B.

Again, Cannon 3B(4) of that Code requires us to "be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity . . .." TEX. CODE JUD. CONDUCT, Canon 3B(4); *In re Barr*, 13 S.W.3d at 538-39. Heeding this mandate does not obligate us to be robots, shorn of individual personality and character. *In re Barr*, 13 S.W.3d at 538-39. Indeed, it is that individuality in spirit, experience, and background that refreshes our ranks and reinvigorates our jurisprudence. Yet, there are limits. For instance, a judge may not threaten to crawl "across the bench and slap[] the crap out of" an attorney without repercussion. *In re Barr*, 13 S.W.3d at 539-40 (finding such violative of the Canon). And should they be impatient, vindictive, undignified, and sarcastic, they risk discipline. *Id.* at 539 (noting that jurists have been disciplined for such conduct). Similarly, insulting, degrading, vile, and sexist language has little place within the courtroom. *Id.* at 540.

### *Rangel's Conduct*

The conduct captured in the videos and described above falls below that acceptable under 3B(4). Extended shouting at counsel for using a word commonly found in legal writings coupled with a tone reasonable jurists would find disrespectful, if not contemptable, if directed at him or her, falls outside the penumbra of patient and dignified. The same could be true of repeatedly uttering, in anger, a word ("piss") found contemptable if said by lawyers. *E.g.*, *In re Hesse*, No. 07-16-00437-CR, 2017 Tex. App.

10

LEXIS 7230, at *1 (Tex. App.—Amarillo Aug.1, 2017, orig. proc.) (mem. op.) (wherein a trial court held counsel in contempt for repeating the word "piss"). Indeed, jurists should practice what they preach. Levelling extended and global accusations of misconduct in a loud, angered voice against counsel and the office for which she worked, and ridiculing a party's severe medical condition also evince conduct violative of 3B(4). Moreover, nothing presented us suggested that Judge Rangel's utterances and accusations were involuntary. Rather, the evidence showed them to be intentionally said. Thus, the violations of Canon 3(B)4 were willful.

Nonetheless, not every violation need be sanctioned. A brief quip, an instance of raised voice to garner attention and stress seriousness, an exasperated shake of head or rolling of eyes, a stern look or even a harsh word may not warrant sanction. We are human, after all, not that robot spoke of in *Barr*. Our emotions may well show themselves in unique situations irrespective of the effort used to suppress them. It is for this reason that the measure of sanction, if any, is influenced by such things as the seriousness of the transgression, its frequency, its nature, its impact on the perception of the judiciary, the physical situs of its occurrence, its occurrence in private life or while performing duties of an elected office, the judge's tenure, the judge's effort to recognize and correct misbehaviors, repetition of the misconduct, and other relevant indicia. *See In re Sharp*, 480 S.W.3d 829, 839-40 (Tex. Spec. Ct. Rev. 2013) (listing various indicia).

Judge Rangel structured her defense, in part, upon the theme of "24 years . . . four complaints." In other words, she asks us to infer that because only four complaints had been filed during her 24-year tenure on the bench, she necessarily erred only four times. To withstand analysis, the inference necessitates another component. That component

11

would consist of proof that everyone who witnesses improper conduct necessarily complains. We know that is not true. Indeed, Judge Rangel admitted to witnessing what she labelled misconduct by attorneys without formally complaining of it. If she remained silent, why would not others? In our field, it is not unheard of for attorneys to withhold complaint due to fear of retaliation, which fear one witness actually mentioned during our de novo review. Many also accept ill conduct as part and parcel of practicing our trade. We may not like it but we let it go. Acknowledging that truth leads us to reject the inference that she committed only four instances of misconduct in her 24 years since only four complained. On the other hand, the evidence does establish that within the years 2020 and 2021, she engaged in at least four instances of impropriety.

More importantly, there is a reason these four instances occurred in 2020 and 2021. It relates to the presence of COVID and the ensuing need to conduct public hearings via ZOOM and YouTube. Therefore, referencing the prior 20+/- years and lack of complaint is somewhat misleading and irrelevant given the non-utilization of Zoom and universal viewing through YouTube before then.

Additionally, the evidence illustrates that the conduct in question was not private, but quite public; it occurred during official court proceedings. Anyone in the world with access to the internet could and can view it, as did many. Moreover, the attorneys and court personnel subject to her utterances were comparable to a captive audience. Being participants in a hearing, they were not necessarily free to leave without experiencing additional reaction. Simply put, a judge controls the proceeding, which legal counsel generally know. Engaging in impermissible diatribe while exercising that control is a misuse of that office.

12

Judge Rangel realizing the improper nature of her action was commendable, as was her effort to alter her behavior through educational instruction. Yet, her realization and efforts at modification were not contemporaneous with or soon after her activity, but rather she acted after the Commission did, that is, after it sanctioned her and she sought review of that decision.

We also find troubling her effort to justify her conduct by suggesting that segments of the YouTube viewing public found it acceptable. As said earlier, we are not entertainers; we do not play to the public crowd. Though the public is free to grade us through the ballot box, we grade our department through compliance with canons regulating judicial conduct. Again, Article V, Section 1-a(6)(A) of the Texas Constitution states what a judge may be disciplined for and provides in relevant part that the jurist shall not engage in a willful violation of the Code of Judicial Conduct, or in willful or persistent conduct that is clearly inconsistent with the proper performance of her duties or casts public discredit upon the judiciary or on the administration of justice. TEX. CONST. ART. V, § 1-a(6)(A); *see also* TEX. GOV'T CODE ANN. § 33.001(b)(2); TEX. CODE JUD. CONDUCT, Canon 2(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B.

Our consideration of the incidents in total, leads us to find both a misuse of office in which Judge Bonnie Rangel intentionally engaged and one warranting the sanction of a public warning. We further direct Judge Rangel to complete 1) 2 hours of education on courtroom decorum and judicial deportment as offered by the Texas Center for the Judiciary, and 2) 2 hours of mentoring with the Honorable Judge Mark Atkinson, executive

13

director of the Texas Center for the Judiciary. Such must begin within one month and completed within six months from the date of this opinion.[11]

Judge Rangel is so Ordered. We further order that no party or their representative shall remove any video or like media mentioned in this opinion from Youtube or the internet for one year from the date of this opinion.

Per Curium

---

[11] Regarding Judge Rangel's pending motion to dismiss, we deny it. Her first ground focused on purported non-compliance with statutory time periods. Those time periods were effective September 1, 2022 and applied only to complaints filed after that date. The complaints against Judge Rangel were filed in 2020 and 2021. As for the second ground, any purported denial of due process during the administrative hearing held by the Commission was rendered harmless through the de novo review. Comparing the de novo review held here to that from a justice court to a county court at law, perfecting the appeal or review annulled or vacated the judgment or decision of the Commission. *See Golden v. Milstead Towing & Storage*, Nos. 09-21-00043-CV, 09-21-00044-CV, 09-21-00045-CV, 2022 Tex. App. LEXIS 2988, at *5 (Tex. App.— Beaumont May 5, 2022, no pet.) (mem. op.) (stating that: 1) an appeal from the justice court is de novo, 2) the reviewing court does not review alleged errors of the justice court, and 3) the justice court's decision is set aside upon perfection of the appeal). Furthermore, this panel afforded her the due process to which she was entitled.

14

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
171st JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELDON RODRIGUEZ and MARIA RODRIGUEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 2021DCV2346 |
| HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and MEGAN TARA HARRIS, | § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK, HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC'S, JOINT MOTION FOR SANCTIONS AGAINST PLAINTIFFS, MOTION TO SHOW CAUSE AND MOTION FOR EMERGENCY HEARING**

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Defendants, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK ("GC Rentals"), HEATHER HARMSTON ("Harmston"), JAIME GARDEA ("Gardea"), and SYNERGY CONSTRUCT, LLC ("Synergy"), (collectively the "Defendants") in the above-entitled numbered cause, and file this Joint Motion for Sanctions, Motion to Show Cause, and Motion for Emergency Hearing and says:

**I.**
**FACTUAL BACKGROUND**

On or about May 18, 2023, Defendant GC Rentals filed a Motion to Compel Plaintiffs' Responses to Defendant's First Set of Interrogatories and Requests for Production ("Motion to Compel"). This Court heard Defendant GC Rental's Motion to Compel on July 21, 2023. After having heard the parties' arguments, this Court ruled that Plaintiffs would be required to amend

1

1939-407/HABD/1754726

their responses and produce all non-privileged documents responsive to Defendant GC Rental's Requests for Production on or before August 4, 2023.

Plaintiffs' counsel required Defendants counsel to appear at his office in order to inspect and collect documents responsive to production. Counsel for GC Rentals, Gardea and Synergy appeared and requested copies of the complete file made available for inspection. Plaintiffs' counsel allegedly produced all documents responsive to Defendant's Requests. For purposes of this Motion, Defendants would call this Court's attention to Defendant GC Rental's Requests for Production Nos. 1, 4, 5, 13, 14, 33, and 36. A true and correct copy of Defendant GC Rental's Requests for Production is attached hereto as Exhibit A.

On or about November 9, 2023, Plaintiff Eldon Rodriguez's deposition took place. During this time, counsel inquired about damages and evidence of damages alleged by Plaintiff. Plaintiff and Plaintiff's counsel failed to disclose the alleged costs or evidence of alleged costs and damages. Yet, during Plaintiffs' counsel's line of questioning, he sought to enter "Plaintiffs' Exhibit 1" Bates labeled as Deposition of Eldon 001-0014. A true and correct copy of this Exhibit is attached hereto as Exhibit B. Said Exhibit had never been produced to Defendants before the deposition. Plaintiff's counsel claimed his reasoning for not producing said Exhibit was an "oversight." The documents were in Plaintiff's counsel's possession since April of 2020.

Prior to the disclosure of these documents on November 9, 2023, Plaintiffs did not disclose the calculation of economic damages. Further, Defendants were not made aware of any economic damages that may be susceptible to calculation, which means damages cannot be recovered in a court of law, and these damages therefore constitute irreparable harm. Plaintiffs' failure to disclose as required by the Texas Rules of Civil Procedure. Due to said "oversight" Defendants' respective counsel could not properly prepare for Plaintiff's deposition, was not made reasonably aware of

2

AARB-1:021

the calculation of damages alleged by Plaintiffs pursuant to the Texas Rules of Civil Procedure 192 and 196 and were forced to incur unnecessary and unreasonable attorneys' fees.

## II.
### REQUEST FOR SANCTIONS FOR FAILING TO COMPLY WITH COURT'S ORDER

If a party fails to comply with proper discovery requests or to *obey an order to provide or permit discovery*, including an order made under 215.1 (an order compelling discovery), the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

> An order disallowing any further discovery of any kind or of a particular kind by the disobedient party.
>
> An order that the matters regarding which the order was made or any other designated fact shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting from introducing designated matters into evidence;
>
> An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action of proceedings or any part thereof, or rendering a judgment of default against the opposing part;

*See* Tex. Civ. P. 215.2(1), (3)-(5).

Plaintiffs have failed to comply with the Court's Order Granting Defendant GC Rental's Motion to Compel Discovery. Accordingly, Defendants are entitled to sanctions under the Texas Rules of Civil Procedure and would respectfully request that the Court sanction Plaintiffs as follows:

1. Order that the Plaintiffs are prohibited from conducting discovery of any kind to support their claims and defenses (Tex. Civ. P. 215.2(1));

2. Other that Plaintiffs pay expenses related to Defendants' expenses of discovery, expenses for depositions and taxable court costs (Tex. Civ. P. 215.2(2));

3

3. Order that Plaintiffs are prohibited from supporting or opposing any claim relating to the alleged costs and damages other than the contract, or making any mention or reference to repairs and renovation costs, moving costs, whatsoever; specifically, that Plaintiffs are prevented from introducing evidence related to the repairs of the Property and/or its condition, work performed on the Property, alleged damages to the Property, the costs of moving in/out of the Property, or any other topic related to the repairs and renovation costs, and the moving costs in any manner whatsoever (Tex. Civ. P. 215.2(4));

4. Render a judgment against Plaintiffs, dismissing their claims against Defendant with prejudice (Tex. R. Civ. P. 215.2(5)).

Sanctions for discovery abuse are imposed to: (1) secure compliance with the discovery rules; (2) deter other litigants from violating the discovery rules; (3) punish parties that violate the discovery rules; and (4) promote settlements. *See Schein v. American Rest. Grp.*, 852 S.W.2d 496, 497 (Tex. 1993). The sanctions that Defendants request be imposed on Plaintiffs will serve all of the functions contemplated by the Texas Supreme Court in the *Schein* opinion. Accordingly, Defendants would respectfully request that the Court impose all, or a combination of, the above requested sanctions on Plaintiffs for their undisputed failure to comply with the Court's Order Granting Defendant GC Rental's Motion to Compel.

**IV.**
**REQUEST FOR ATTORNEY'S FEES AND EXPENSES AS SANCTIONS**

Plaintiffs' failure to comply with the Court's Order Granting Defendant GC Rental's Motion to Compel subjects them to the sanctions listed in Rule 215.2(b). In addition to the sanctions requested above, Defendants would also request that the Court sanction Plaintiffs by requiring them to pay the reasonable expenses, including attorneys' fees, that Defendants were forced to incur as a result of Plaintiffs' failures. "In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees,

4

10171-126/CMUN/1597204

caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment." *See* Tex. R. Civ. P. 215.2(b)(8).

## A.    Failure to Comply with Court's Order

As a result of the Plaintiffs' failure to comply with the Court's Order Granting Defendant GC Rental's Motion to Compel, Defendants were forced to incur expenses and attorneys' fees that were both reasonable and necessary. Specifically, counsel for Defendant GC Rental's were required to draft its Motion for Compel, Defendants' counsel inspect and gather discovery from Plaintiffs, review the Court's Order Granting Defendant's Motion to Compel, attempt to coordinate the depositions of Plaintiffs, draft its Motion for Emergency Hearing, continuously update the representatives of the respective Defendants, and ultimately draft this Motion for Sanctions against the Plaintiffs. These tasks took approximately twenty (20) hours to complete. Accordingly, Defendants would request that the Court, in addition to the sanctions requested above, order that Plaintiffs pay Defendants' reasonable and necessary attorneys' fees in the amount incurred as a result of Plaintiffs' failure to comply with the Court's Order Granting Defendant GC Rental's Motion to Compel.

Defendant asks that the Court issue an Order requiring Plaintiffs and Plaintiffs' Counsel to appear and show cause why they should not be held in contempt for violating the Court's Order Granting Defendant's Motion to Compel.

**WHEREFORE, PREMISES, CONSIDERED**, Defendants pray that this matter be set for hearing, and after such hearing, impose the requested sanctions on the Plaintiffs, enter any other sanctions as the Defendants may deem appropriate against the Plaintiff, and for any other

5

such other and further relief to which Defendants may be justly entitled, general or special, legal or equitable.

Respectfully submitted,

**MOUNCE, GREEN, MYERS**
**SAFI, PAXSON & GALATZAN, P.C.**
P.O. Drawer 1977
El Paso, Texas 79999-1977
Phone: (915) 532-2000
Fax:    (915) 541-1597

By:    _____
     **James A. Martinez**
     State Bar No. 00791192
     martinezja@jmeplaw.com
     **Hala A. Abdel-Jaber**
     State Bar No. 24133142
     Abdel-jaber@mgmsg.com

     *Attorneys for Defendants GC Rentals*

Respectfully submitted,

**SCOTT HULSE P.C.**
201 E. Main Drive, Suite 1100
El Paso, Texas 79901
(915) 533-2493

By:    */s/ Tomas Porras-Acosta_____*
     **M. BLAKE DOWNEY**
     State Bar No. 24082933
     bdow@scotthulse.com
     **TOMAS E. PORRAS-ACOSTA**
     State Bar No. 24115138
     tpor@scotthulse.com
     *Attorneys for Defendants Jaime Gardea and*
     *Synergy Construct, LLC*

6

10171-126/CMUN/1597204

Respectfully submitted,

**Mario A. Gonzalez**
1522 Montana Ave.
El Paso, Texas 79902

**/s/ Mario A. Gonzalez – with permission**

By: _____

Mario A. Gonzalez

*Attorney for Heather Harmston*

## CERTIFICATE OF SERVICE

In compliance with Texas Rule of Civil Procedure 21a (e), I, **Hala A. Abdel-Jaber**, hereby certify that on the 10th day of November, 2023, a true and correct copy of the foregoing document was sent electronically and is served on the following parties or attorney(s,) to: Roberta Medina, Rasberry & Associates (rmedina@rasberry.com); Michael Nevarez, 7362 Remcon Circle, El Paso, Texas 79912, mnevarez@lawofficesnrn.com, M. Blake Downey, One San Jacinto Plaza, 201 N. Main Drive, Suite 1100, El Paso, Texas 79901, bdow@scotthulse.com, and Mario A. Gonzalez, 1522 Montana Avenue #100, El Paso, Texas 79902, mario@gonzalezlawfirm.com.

_____

**Hala A. Abdel-Jaber**

7

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terry Silva on behalf of Hala Abdel-Jaber
Bar No. 24133142
tsilva@mgmsg.com
Envelope ID: 81527968
Filing Code Description: Motion (No Fee)
Filing Description: Motion for Sanctions
Status as of 11/13/2023 9:41 AM MST

Associated Case Party: GC RENTALS AND MANAGEMENT LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James A.Martinez | | martinezja@jmeplaw.com | 11/10/2023 1:37:50 PM | SENT |
| James Martinez | | eservice@jmeplaw.com | 11/10/2023 1:37:50 PM | SENT |
| Hala Abdel-Jabar | | abdel-jaber@mgmsg.com | 11/10/2023 1:37:50 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Virginia Munoz | | vmunoz@mgmsg.com | 11/10/2023 1:37:50 PM | SENT |
| M. BlakeDowney | | bdow@scotthulse.com | 11/10/2023 1:37:50 PM | SENT |
| Terry Silva | | tsilva@mgmsg.com | 11/10/2023 1:37:50 PM | SENT |
| michael nevarez | | mnevarez@lawofficesmrn.com | 11/10/2023 1:37:50 PM | SENT |
| Denise Macias | | paralegal-2@lawofficesmrn.com | 11/10/2023 1:37:50 PM | SENT |
| Loretta Mata | | lor.mata@epcounty.com | 11/10/2023 1:37:50 PM | SENT |
| Georgina Gallegos | | ggal@scotthulse.com | 11/10/2023 1:37:50 PM | SENT |
| Guy McGunegle | | gmcg@scotthulse.com | 11/10/2023 1:37:50 PM | SENT |
| Mario Gonzalez | | mario@gonzalezlawfirm.com | 11/10/2023 1:37:50 PM | SENT |
| Roberta Medina | | rmedina@rasberry.com | 11/10/2023 1:37:50 PM | SENT |

AARB-1:027

# EXHIBIT A

Filed 5/18/2023 11:26 AM
Norma Favela Barceleau
District Clerk
El Paso County
2021DCV2346

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
171ˢᵗ JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELDON RODRIGUEZ and MARIA RODRIGUEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 2021DCV2346 |
| HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and MEGAN TARA HARRIS, | § § § § § § § § | |
| Defendants. | § § | |

**DEFENDANT GC RENTALS AND MANAGEMENT LLC D/B/A REALTY ONE GROUP MENDEZ BURK'S MOTION TO COMPEL PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**

**COMES NOW DEFENDANT GC RENTALS AND MANAGEMENT LLC D/B/A REALTY ONE GROUP MENDEZ BURK ("GC RENTALS")** in the above-entitled and numbered cause and respectfully moves the Court for an Order to compel a proper response to Defendant's First Set of Interrogatories and Requests for Production, and in support thereof would show as follows:

**I.**

Defendant served Plaintiffs with First Set of Interrogatories and Requests for Production on April 5, 2023 pursuant to the Texas Rules of Civil Procedure. Defendant attaches to this instrument and incorporates herein as if set forth at length Plaintiff's Answers and Responses to Defendant's First Set of Interrogatories and Requests for Production.

**II.**

1

1939-407/JMAR/1736803

Plaintiffs objected to or failed to properly respond to Defendant's Interrogatories Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, and 21 and First Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35 and 36.

Defendant would show said discovery requests are calculated to lead to the discovery of admissible evidence and are within the scope of discovery established by the Texas Rules of Civil Procedure.

**WHEREFORE, PREMISES CONSIDERED,** Defendant requests that this Motion be set for hearing with notice to all parties and, upon proper hearing, that the Court order Plaintiffs to fully respond to Defendant's discovery requests without further objection, overrule Plaintiff's objections and provide the documents requested and for such other and further relief, general or special, legal or equitable, to which Defendant may be justly entitled.

Respectfully submitted,

**MOUNCE, GREEN, MYERS,
SAFI, PAXSON & GALATZAN**
A Professional Corporation
P.O. Box 1977
El Paso, Texas 79999-1977
(915) 532-2000
(915) 541-1597 (fax)

*/s/ James A. Martinez*
**James A. Martinez**
State Bar No. 00791192
martinezja@jmeplaw.com
**Hala A. Abdel-Jaber**
State Bar No. 24133142
abdel-jaber@mgmsg.com

*Attorneys for Defendant GC Rentals*

2

1939-407/JMAR/1736803

## CERTIFICATE OF SERVICE

I certify on this the 18th day of May, 2023, the foregoing pleading was electronically filed with the Clerk of the Court using the Texas Electronic Filing Rules, which will send notification of such filing to the following: Michael Nevarez, 7362 Remcon Circle, El Paso, Texas 79912, mnevarez@lawofficesnrn.com, M. Blake Downey, One San Jacinto Plaza, 201 N. Main Drive, Suite 1100, El Paso, Texas 79901, bdow@scotthulse.com, and Mario A. Gonzalez, 1522 Montana Avenue #100, El Paso, Texas 79902, mario@gonzalezlawfirm.com.

/s/ James A. Martinez
**JAMES A. MARTINEZ**

3

AARB-1:031

| | | |
|---|---|---|
| ELDON RODRIGUEZ, and | § | |
| MARIA RODRIGUEZ | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | CAUSE NUMBER: 2021-DCV-2346 |
| | § | |
| HEATHER HARMSTON, | § | |
| JAIME GARDEA, | § | |
| SYNERGY CONSTRUCT LLC, | § | |
| GC RENTALS AND MANAGEMENT LLC | § | |
| d/b/a REALTY ONE GROUP MENDEZ BURK, | § | |
| and MEGAN TARA HARRIS | § | |
| | § | |
| Defendants. | § | |

---

**PLAINTIFF ELDON RODRIGUEZ AND MARIA RODRIGUEZ'S RESPONSES AND ANSWERS TO DEFENDANT GC RENTALS AND MANAGEMENT LLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFFS**

---

TO: **DEFENDANT GC RENTALS AND MANAGEMENT LLC, BY AND THROUGH ITS ATTORNEY OF RECORD, JAMES A. MARTINEZ**

Plaintiffs ELDON RODRIGUEZ and MARIA RODRIGUEZ (hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, hereby serve this "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant GC Rentals and Management LLC's First Set Interrogatories and Requests For Production To Plaintiffs", on Defendant GC RENTAL AND MANAGEMENT LLC ("Defendant"), in accordance with Rules 192, 193, 195, 196, 197, and 198 of the Texas Rules of Civil Procedure ("TRCP"), as follows:

### *FIRST SET OF INTERROGATORIES*

#### *Interrogatory No. 1:*

Please identify all delays you claim were caused by GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk ("Defendant") on the Project.

*ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "Project."

Subject to said objections, and without waiving same, Plaintiffs answer as follows: Plaintiffs make no claim for delay.

## *Interrogatory No. 2:*

Please indicate the amount, if any, you believe is owed to Plaintiffs for the Project.

*ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "Project."

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraph 51. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## *Interrogatory No. 3:*

Please state your full name, address, residence and work telephone numbers, date of birth, place of birth and all names used in your lifetime.

*ANSWER:*

Plaintiffs object to this Interrogatory to the extent the proposed discovery is not relevant to the subject matter of the suit and will not lead to the discovery of admissible evidence.

Plaintiffs object to this Interrogatory to the extent the proposed discovery goes beyond the subject matter of the case and reasonable expectations of information that will aid resolution of the dispute.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: c/o Michael R. Nevarez, The Nevarez Law Firm, PC, 7362 Remcon Circle, El Paso, Texas 79912. Telephone: (915) 225-2255.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 2 of 25

AARB-1:033

## Interrogatory No. 4:

Please set forth the amount of attorney's fees and expenses you have incurred to date in connection with this proceeding.

**ANSWER:**

> Plaintiffs object to this Interrogatory to the extent the proposed discovery seeks information that would require the creation of a document not in existence.

> Subject to said objections, and without waiving same, Plaintiffs answer as follows: Unknown at this time.

## Interrogatory No. 5:

If you have any complaints about Defendant's work on the Project, please describe all of them.

**ANSWER:**

> Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "Project."

> Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

> Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## Interrogatory No. 6:

If you claim Defendant's conduct caused you any damage or any injury, please describe the conduct and identify the kind and/or amount of damage or injury you claim it caused you.

**ANSWER:**

> Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "conduct."

> Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

> Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 3 of 25

AARB-1:034

*Interrogatory No. 7:*

If you claim Defendant failed to perform any obligation called for in its contract with you, please describe these failures and any resulting amount you claim you were required to pay.

*ANSWER:*

      Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "obligation."

      Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

      Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

*Interrogatory No. 8:*

If you claim Defendant improperly performed any of its work on the Project, please identify that work and identify the amount of damage or injury you claim it caused to you.

*ANSWER:*

      Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "Project."

      Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

      Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

*Interrogatory No. 9:*

Please describe any work that has not been completed on the Project and explain why it has not been completed.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346        Page 4 of 25

AARB-1:035

*ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "Project."

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

*Interrogatory No. 10:*

Please describe the factual basis for your contention, if any, that Defendant failed to comply with its contractual obligations to Plaintiff.

*ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it is overly broad and vague in the use of the term "obligations."

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

*Interrogatory No. 11:*

Please provide the factual basis for your claims, if any, that Defendant committed fraud by misrepresentation or inducement.

*ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 5 of 25

AARB-1:036

Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

### *Interrogatory No. 12:*

Please provide the factual basis for your contention, if any, that Defendant's negligence or gross negligence was the proximate cause of any damage or injury to you.

### *ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

### *Interrogatory No. 13:*

You claim Defendant committed fraud by misrepresentation or inducement. Please identify each representation you claim Defendant made and describe the manner in which it was false.

### *ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

### *Interrogatory No. 14:*

You claim Defendant committed fraud by non-disclosure. Please describe each fact or circumstance you claim Defendant failed to disclose that constitutes fraud by non-disclosure.

### *ANSWER:*

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171ˢᵗ District Court, Cause Number 2021-DCV-2346          Page 6 of 25

AARB-1:037

follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

### Interrogatory No. 15:

You claim Defendant committed appropriation by theft. Please describe each act or omission by Defendant that you claim constitutes appropriation by theft.

### ANSWER:

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

### Interrogatory No. 16:

You claim Defendant was negligent. Please describe each act or omission by Defendant you claim constitutes negligence.

### ANSWER:

See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

### Interrogatory No. 17:

You claim Defendant was grossly negligent. Please describe each act or omission by Defendant you claim constitutes gross negligence.

### ANSWER:

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 7 of 25

AARB-1:038

Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## Interrogatory No. 18:

You claim Defendant breached a duty of good faith and fair dealing. Please describe each act or omission by Defendant that you claim constitutes a breach of the duty of good faith and fair dealing.

### ANSWER:

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## Interrogatory No. 19:

You claim Defendant violated the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA). Please describe each act or omission by Defendant you claim violates the DTPA.

### ANSWER:

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## Interrogatory No. 20:

You claim Defendant violated the DTPA. Please identify each portion of the DTPA you claim Defendant violated.

### ANSWER:

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                     Page 8 of 25

AARB-1:039

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires a legal opinion and a conclusion of law.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## Interrogatory No. 21:

You assert a claim against Defendant for promissory estoppel. Please describe each promise or representation you claim Defendant made that gives rise to Defendant's liability under a theory of promissory estoppel.

## ANSWER:

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires Plaintiffs to marshal all of their evidence.

Plaintiffs object to this Interrogatory to the extent that it impermissibly requires a legal opinion and a conclusion of law.

Subject to said objections, and without waiving same, Plaintiffs answer as follows: See "Plaintiffs' First Amended Petition", Paragraphs 20-37. See also Plaintiffs' Amended List of Expert Witnesses And Designation of Testifying Experts, Exhibits A and B.

## Interrogatory No. 22:

Please identify the occupants of the Property for each month from January 1, 2018 to the present and the amount of rent or other consideration Plaintiffs received for it.

## ANSWER:

None.

## FIRST REQUESTS FOR PRODUCTION TO PLAINTIFFS

## Request for Production 1:

Please produce Defendant's entire file for the Project, excluding any portions you claim are legally privileged.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 9 of 25

AARB-1:040

*Response:*

Plaintiffs object to this Request to the extent that it is overly broad and vague in the use of the term "Project."

Subject to said objections, and without waiving same, Plaintiffs respond as follows: Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## *Request for Production 2:*

Please produce all correspondence you sent to or received from Defendant regarding the Project.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## *Request for Production 3:*

Please produce all construction plans and specifications for the Project.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 10 of 25

AARB-1:041

### *Request for Production 4:*

Please produce all construction diaries, notes, and other contemporaneous memos of any ongoing work that were prepared by employees or agents of Plaintiff.

### *Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 5:*

Please produce all invoices for materials purchased for the Project.

### *Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 6:*

Please produce a copy of any and all invoices received from your attorneys for attorney's fees and expenses to date in this proceeding.

### *Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 11 of 25

AARB-1:042

**_Request for Production 7:_**

Please produce a copy of any and all check stubs or other records of payment to your attorneys in connection with services rendered by them to you in this proceeding.

**_Response:_**

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

**_Request for Production 8:_**

Please attach copies of any and all statements previously made by Defendant, its employees, or representatives concerning the subject matter of this lawsuit, that are in your possession, custody or control. For the purpose of this request, a statement previously made is (a) written, signed or otherwise adopted or approved by the person making it, or (b) a stenographic, mechanical, electrical or other type of recording, or any transcription thereof which is a substantially verbatim recital of a statement made by the person and contemporaneously recorded.

**_Response:_**

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

**_Request for Production 9:_**

Please produce all non-privileged records, writings or other documents evincing any settlement agreement of any nature whatsoever that you have entered into with anyone pertaining to the Project or the Property.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
_Eldon and Maria Rodriguez v. Heather Harmston, et al._
El Paso County, 171ˢᵗ District Court, Cause Number 2021-DCV-2346                Page 12 of 25

AARB-1:043

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 10:*

Please produce all photographs, diagrams, schematics, charts, models, or other graphic depictions of the events or damages made the basis of this lawsuit, including any and all photographs or videos demonstrating, displaying or showing any effect or condition allegedly resulting from the events made the basis of this suit.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 11:*

Please produce a copy of any fee engagement letter you have executed with your attorneys in connection with this proceeding.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 13 of 25

AARB-1:044

_**Request for Production 12:**_

If you claim Defendant failed to perform any of the work called for in its contract with you, please produce all non-privileged records that reflect these failures.

_**Response:**_

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

_**Request for Production 13:**_

If you claim Defendant improperly performed any of its work on the Project, please produce all non-privileged records that reflect the improper work and records that show the amount you were required to pay, if any, to correct it.

_**Response:**_

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

_**Request for Production 14:**_

If you claim any of Defendant's conduct caused damage, please produce all non- privileged records that demonstrate the kind and amount of damage you claim it caused.

_**Response:**_

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
_Eldon and Maria Rodriguez v. Heather Harmston, et al._
El Paso County, 171st District Court, Cause Number 2021-DCV-2346　　　　Page 14 of 25

AARB-1:045

## Request for Production 15:

Please produce all documents Plaintiffs sent to or received from Defendant regarding the Project.

### Response:

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 16:

Please produce all non-privileged documents Plaintiffs sent to or received from any insurance company regarding the Project.

### Response:

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 17:

Please produce all non-privileged documents that evince or reflect any delays you claim Defendant caused on the Project.

### Response:

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 15 of 25

AARB-1:046

## Request for Production 18:

You claim Defendant made fraudulent representations to you. Please produce all non- privileged records that reflect any such statements or representations.

### Response:

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 19:

You claim Defendant breached a contract. Please produce all non-privileged records that reflect the terms of the contract you claim Defendant breached.

### Response:

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 20:

You claim Defendant is liable for promissory estoppel. Please produce all non-privileged records that reflect each promise or representation you claim Defendant made that gives rise to liability for promissory estoppel.

### Response:

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 16 of 25

AARB-1:047

date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### Request for Production 21:

You claim Defendant is liable for fraud by non-disclosure. Please produce records that reflect each fact or circumstance you claim Defendant failed to disclose that constitutes fraud by non-disclosure.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### Request for Production 22:

You claim Defendant is liable for appropriation by theft. Please produce all non-privileged records that you believe support your claim against Defendant for appropriation by theft.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### Request for Production 23:

You claim Defendant acted negligently. Please produce all non-privileged records that reflect any act or omission by Defendant that you claim constitutes negligence.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 17 of 25

AARB-1:048

available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 24:*

You claim Defendant acted grossly negligently. Please produce all non-privileged records that reflect any act or omission by Defendant that you claim constitutes gross negligence.

### *Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 25:*

You claim Defendant breached a duty of good faith and fair dealing. Please produce all non-privileged records you believe create a duty of good faith and fair dealing on the part of Defendant.

### *Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

### *Request for Production 26:*

You sue Defendant for breach of a duty of good faith and fair dealing. Please produce all non-privileged records you claim reflect any act or omission by Defendant that constitutes a breach of the duty of good faith and fair dealing.

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 18 of 25

AARB-1:049

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 27:

You sue Defendant for civil conspiracy. Please produce all non-privileged records you claim reflect any act or omission by Defendant that gives rise to liability for civil conspiracy.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 28:

You claim Defendant violated the Texas DTPA. Please produce all non-privileged records you believe reflect any act or omission by Defendant that you claim constitutes a violation of the DTPA.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 19 of 25

AARB-1:050

## Request for Production 29:

Please produce all records you sent to or received from any insurance company from the period January 1, 2018 to the present regarding the Property, its condition or repairs made to it.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 30:

Please produce all non-privileged records that reflect all rental income you have received for the Property from the period January 1, 2018 to the present.

*Response:*

> None.

## Request for Production 31:

Please produce all written leases for any occupant of the Property for the period from January 1, 2018 to the present.

*Response:*

> None.

## Request for Production 32:

Please produce all inspection reports for the Property.

*Response:*

> Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 20 of 25

AARB-1:051

opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 33:

Please produce records that reflect all repairs you performed on the Property from January 1, 2018 to the present.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 34:

Please produce any appraisals you obtained for the Property from January 1, 2018 to the present.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

## Request for Production 35:

Please produce all records that reflect your efforts to market or sell the Property from January 1, 2018 to the present.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs'

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 21 of 25

possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

**_Request for Production 36:_**

If you had to have any of the work any Defendant performed repaired or corrected, please produce records that reflect the nature and cost of the repair or corrective work.

**_Response:_**

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

May 5, 2023

Sincerely,

**THE NEVAREZ LAW FIRM, PC**
7362 Remcon Circle
El Paso, Texas 79912
Telephone: (915) 225-2255
Facsimiles: (915) 845-3405
Email: MNevarez@LawOfficesMRN.com

/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**
State Bar No. 14933400

Attorney for Plaintiffs

---

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
_Eldon and Maria Rodriguez v. Heather Harmston, et al._
El Paso County, 171ˢᵗ District Court, Cause Number 2021-DCV-2346                    Page 22 of 25

AARB-1:053

STATE OF CALIFORNIA )

)

COUNTY OF LOS ANGELES )

BEFORE ME, the undersigned Notary Public, on this day personally appeared Eldon Rodriguez, who being by me duly sworn on his oath deposed and said that he is the Plaintiff in the above-entitled and numbered cause; that he has read the above and foregoing "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs", and that every statement contained in the interrogatory answers is within his knowledge and true and correct.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

_____
Eldon Rodriguez

SUBSCRIBED AND SWORN TO BEFORE ME on the _04_ day of _05_, 20 _23_, to certify which witness my hand and official seal.

(Seal)

> MASOUD MINARAVESH
> Notary Public · California
> Los Angeles County
> Commission # 2322064
> My Comm. Expires Mar 21, 2024

_____
Notary Public, State of California

My Commission expires: 03/21/2024

---

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171ˢᵗ District Court, Cause Number 2021-DCV-2346          Page 23 of 25

AARB-1:054

## VERIFICATION

STATE OF CALIFORNIA      )

                                        )

COUNTY OF LOS ANGELES   )

BEFORE ME, the undersigned Notary Public, on this day personally appeared Maria Rodriguez, who being by me duly sworn on her oath deposed and said that she is the Plaintiff in the above-entitled and numbered cause; that she has read the above and foregoing "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs", and that every statement contained in the interrogatory answers is within her knowledge and true and correct.

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

_____
Maria Rodriguez

SUBSCRIBED AND SWORN TO BEFORE ME on the _04_ day of _05_____, 20_23_, to certify which witness my hand and official seal.

(Seal) _____



MASOUD MINARAVESH
Notary Public - California
Los Angeles County
Commission # 2322064
My Comm. Expires Mar 21, 2024

_____
Notary Public, State of California

My Commission expires: _03/21/2024_

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346        Page 24 of 25

AARB-1:055

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF ELDON RODRIGUEZ AND MARIA RODRIGUEZ'S RESPONSES AND ANSWERS TO DEFENDANT GC RENTALS AND MANAGEMENT LLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFFS**, with all supporting attachments, exhibits, and affidavits referenced therein, if any, was served either by regular first-class mail, postage prepaid, and/or by e-Filing via an Electronic Filing Service Provider, and/or via facsimile, to the following parties in interest, on this May 5, 2023:

> **ATTORNEY FOR GC RENTALS**
> **And MANAGEMENT LLC:**
> James A. Martinez
> Hala A. Abel-Jaber
> MOUNCE, GREEN, MYERS,
> SAFI, PAXSON & GALATZAN
> P.O. Box 1977
> El Paso, TX 79999-1977
> Telephone: (915) 532-2000
> Email: martineja@jmeplaw.com
>         abdel-jaber@mgmsg.com

> /s/ Michael R. Nevarez
> **MICHAEL R. NEVAREZ**

.

---

Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers to Defendant
GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171ª District Court, Cause Number 2021-DCV-2346                    Page 25 of 25

AARB-1:056

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Barbara Divis on behalf of James Martinez
Bar No. 791192
BDivis@mgmsg.com
Envelope ID: 75773441
Filing Code Description: Motion (No Fee)
Filing Description: Def. GC Rentals' Motion to Compel Discovery
Status as of 5/18/2023 3:01 PM MST

Associated Case Party: GC RENTALS AND MANAGEMENT LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James A.Martinez | | martinezja@jmeplaw.com | 5/18/2023 11:26:18 AM | SENT |
| James Martinez | | eservice@jmeplaw.com | 5/18/2023 11:26:18 AM | SENT |
| Hala Abdel-Jabar | | abdel-jaber@mgmsg.com | 5/18/2023 11:26:18 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| M. BlakeDowney | | bdow@scotthulse.com | 5/18/2023 11:26:18 AM | SENT |
| Barbara Divis | | bdivis@mgmsg.com | 5/18/2023 11:26:18 AM | SENT |
| Terry Silva | | tsilva@mgmsg.com | 5/18/2023 11:26:18 AM | SENT |
| Desiree M.Duarte | | ddua@scotthulse.com | 5/18/2023 11:26:18 AM | SENT |
| michael nevarez | | mnevarez@lawofficesmrn.com | 5/18/2023 11:26:18 AM | SENT |
| Denise Macias | | paralegal-2@lawofficesmrn.com | 5/18/2023 11:26:18 AM | SENT |
| Georgina Gallegos | | ggal@scotthulse.com | 5/18/2023 11:26:18 AM | SENT |
| Guy McGunegle | | gmcg@scotthulse.com | 5/18/2023 11:26:18 AM | SENT |
| Mario Gonzalez | | mario@gonzalezlawfirm.com | 5/18/2023 11:26:18 AM | SENT |

# EXHIBIT B

AARB-1:058

**MNevarez@LawOfficesMRN.com**

| | |
|---|---|
| **From:** | Eldon Rodriguez <outlook_BAB554B1D5DBB81D@outlook.com> |
| **Sent:** | Wednesday, April 29, 2020 1:52 PM |
| **To:** | mnevarez@lawofficesmrn.com |
| **Subject:** | Eldon D Rodriguez expenses |

#136    blvd movers 5/9/18 $6036.92   pick-up
#1706   blvd movers 4/18/18 $5334.46  delivery
                 **Total amount: $11,391.38**


#137     cirrlio arrieta  4/20/18 $400.00 rock material
#138     marti ronquillo 4/26/18  $1,000.00  rock material
#140     protety profit  4/28/18  $86.00  property profit
#148     martin somboa  4/6/18  $1,720.00 shutters
#152     martin ronqullio  4/30/18  $1,000.00  rock material
# 151 martin ronqullio  4/28/18  $500.00  rock material
#155  martin ronqullio  5/2/18  $550.00  rock material
#156  carman canqas  5/17/18  $150.00  plumbing
#157  cristina rivera  5/21/18  $200.00  plumbing
#159  adrian congas  5/25/18  $150.00  plumbing
#160  adrian congas  5/27/18  $150.00  plumbing
#154  martin ronquillo  5/18/18  $1,300.00  concrete
          Martin somboa            $1,720.00  shutters
                 **Total amount: $8,926.00**


**#812 moving to los angeles: company- inland sea 4/27/19  $5,151.50**


construction@ home- el paso, texas
garage construction- shelves @ el paso, texas     $1,200.00
television installation - 3 t.v.   600.00
box material for packing and moving: both ways for el paso house and los angeles house $1,000.00
**total amount: 3,800.00**

**overall amount of all expenses: $29,268.88**

Deposition of Eldon Rodriguez                    ELDON - 001


AARB-1:059

Movers

| | | | | | |
|---|---|---|---|---|---|
| # 136 | Blvd Mover's | 5/9/18 | 6036 $\frac{92}{}$ | PU | |
| # 1706 | Blvd Mover's | 4/18/18 | 5354 $\frac{46}{}$ | Deliv. | |
| | | | (11,390.38) | | |
| # 137 | Cirrilio Arrieta | 4/24/18 | 400 $\frac{00}{}$ | Rock | |
| # 138 | Marti Ronguillo | 4/26/18 | 1000 $\frac{00}{}$ | Rocks | |
| # 140 | Property Profil | 4/28/18 | 86 $\frac{00}{}$ | Prop Profil | |
| # 148 | Martin Somboa | 4/6/18 | 1720 $\frac{00}{}$ | Shotters | |
| # 152 | Martin Ronguillo | 4/30/18 | 1000 $\frac{00}{}$ | Rock | |
| # 151 | Martin Ronguillio | 4/28/18 | 500 $\frac{00}{}$ | Rock | |
| # 155 | Martin Ronguillo | 5/2/18 | 558 $\frac{00}{}$ | '''' | |
| # 156 | Carman Cangas | 5/17/18 | 158 $\frac{00}{}$ | Plumb. | |
| # 157 | Cristina Rivera | 5/21/18 | 200 $\frac{00}{}$ | Plumb | |
| # 159 | Adrian Conjas | 5/25/18 | 150 $\frac{00}{}$ | Plumb. | |
| # 160 | Adrian Cowgas | 5/27/18 | 150 $\frac{00}{}$ | Plumb | |
| # 154 | Martin Ronguillo | 5/18/18 | 1300 $\frac{00}{}$ | Concrete | |
| | Martin Somboa | | 1720 | Shotter | |
| | | | (8926 $\frac{00}{}$) | | |

# 812 ( Move 4/27/19 to Los Angles    Inland Sea (5151 $\frac{00}{}$ ) )

( Const. @ House   El Paso )

161 ( Move 2 ways

| | | | |
|---|---|---|---|
| Garage Const | Shelves | | 1200 $\frac{00}{}$ |
| TV Installation | 3 | | 600 $\frac{00}{}$ |
| Cost of Boxes & Pack | 2 way | | 1000 $\frac{00}{}$ |
| | | | (3800 $\frac{00}{}$) |
| | | | 29,268 $\frac{88}{}$ |

| Site<br>VIEWPOINTE | Paid Date<br>20180312 | Serial<br>136 | Routing<br>12104288 | Account<br>2291561674 | PC<br>000060 | Amount<br>6,036.92 | Sequence #<br>8615126267 | C: |
|---|---|---|---|---|---|---|---|---|



Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

https://oibservices.wellsfargo.com/OIB/ControllerServlet

2/22/2020

Deposition of Eldon Rodriguez                    ELDON - 003

AARB-1:061

| Site VIEWPOINTE | Paid Date 20180423 | Serial 137 | Routing 12104288 | Account 2291561674 | PC 000060 | Amount 400.00 | Sequence # 8816660626 | Ca |
|---|---|---|---|---|---|---|---|---|



Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

https://oibservices.wellsfargo.com/OIB/ControllerServlet                    2/22/2020

Deposition of Eldon Rodriguez                    ELDON - 004

AARB-1:062

1000

| Site VIEWPOINTE | Paid Date 20180427 | Serial 138 | Routing 12104288 | Account 2291561674 | PC 000060 | Amount 1,000.00 | Sequence # 8210680101 | C: |
|---|---|---|---|---|---|---|---|---|

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1069

138
16-24/1220 4936

4/26/18 Date

Pay to the Order of  _Martin Ronzieulla_  $ 1000

_One Thousand Dollar_ no/100  Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For _Rock & gravel Work @ Resi_  [signature]

⑈122002470⑈ 229156167411⑈ 00138

Seq: 100
Batch: 452109
Date: 04/27/18

Cash Check

ENDORSE HERE X

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 12104288 | 8818134125 | 05042018 | $86.00 | 2291561674 | 140 | 00007559 |

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059

140
18-24/1220 4938

Date 4/28/18

Pay to the Order of _Property Profile_ $ 86 00

_Eighty Six Dollars and_ 00 Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For 3836954

_Eldon D Rodriguez_

⑆122000247⑆ 2291561674⑈ 00140

Seq: 51
Batch: 659133
Date: 05/04/18

Sno:00051 05/04/18
BAT:659133 CC:3360007866
WT-01 LTPS:Dallas PT
RC:Summerlin AC:RVI INB

ENDORSE HERE
X

PAY TO THE ORDER OF DEPOSIT
CHECK BANK OF AMERICA DS LINE
FOR DEPOSIT ONLY
PROPERTY PROFILE, INC
501017290124

Deposition of Eldon Rodriguez              ELDON - 006

AARB-1:064

| Site VIEWPOINTE | Paid Date 20180406 | Serial 148 | Routing 12104288 | Account 2291561674 | PC 000062 | Amount 1,720.00 | Sequence # 2484602343 | C |
|---|---|---|---|---|---|---|---|---|

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059

148
16-24/1220 4836

4/6/18
Date

Pay to the Order of _Martin Agamboa_ $ 1720⁰⁰

_Seventeen Hundred Twenty Dollars_

WELLS FARGO  Wells Fargo Bank, N.A.
California
wellsfargo.com

For _Shelter_

Eldon D Rodriguez

⑈122000247⑈ 2291561674⑈ 00148

2484502343

MOBILE DEPOSIT

Martin Agamboa

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

https://oibservices.wellsfargo.com/OIB/ControllerServlet

2/22/2020

Deposition of Eldon Rodriguez    ELDON - 007

AARB-1:065

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 12104288 | 8610844669 | 05012018 | $1000.00 | 2291561674 | 152 | 00007559 |

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1069

152
16-24/1220 4936

4/30/18 Date

Pay to the Order of _Morten Roncaville_ $ 1000⁰⁰

_One Thousand Dollar and_ ⁰⁰/₁₀₀ Dollars

Wells Fargo Bank, N.A.
Calroronia
wellsfargo.com

For _____ _Eldon Rodriguez_

⑈122000247⑈ 2291561674⑈ 00152

Seq: 51
Batch: 548279
Date: 05/01/18

Cash Check
$1,000.00
08/30

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 12104288 | 8819544971 | 05172018 | $150.00 | 2291561674 | 156 | 00007215 |

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059

156
16-24/1220 4936

asuu9+
TXUD OMSSUU    5/17/18

Date

Pay to the
Order of _Carmen Canjas_    $ 150 00

_One Hundred Fifty and_    Dollars

WELLS FARGO  Wells Fargo Bank, N.A.
California
wellsfargo.com

For _Plumbing_    _Eldon D Rodriguez_

⑆122000247⑆ 2291561674⑆ 00156

>312081089< - 0002
4497 — 25846874
05/17/2018 - 18:20:27

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 12104288 | 8213703784 | 05212018 | $200.00 | 2291561674 | 157 | 00007215 |



Deposition of Eldon Rodriguez                                   ELDON - 010

AARB-1:068

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | C: |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20180525 | 159 | 12104288 | 2291561674 | 000060 | 50.00 | 8810328544 | |

ELDON D RODRIGUEZ
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059

159

18-24/1220 4936

4/25/18 Date

Pay to the Order of _____ $ 50

Fifty Dollars and 00/xx Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For _Plumbing_

⑆122000247⑆ 2291561674⑈ 00159

⑆122000247
2291561674
ELDON D RODRIGUEZ

**Security Features exceed industry standards and include:**
* Matching account and check number on back (Patent No. 9,240,088)
* The Security Weave® pattern on back designed to deter fraud
* Microprint (M®) lines printed on front and back
* The words "ORIGINAL DOCUMENT" across the back
* Photo Safe Deposit™ icon visible on front and back

**Do not cash if:**
* Any of the features listed above are missing or appear altered
* Fugitive ink on back looks pink or has disappeared
* Brown status and colored spots appear on both front and back

00159

☐ CHECK HERE IF MOBILE DEPOSIT

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

https://oibservices.wellsfargo.com/OIB/ControllerServlet

2/22/2020

Deposition of Eldon Rodriguez

ELDON - 011

AARB-1:069

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 12104288 | 8513898955 | 05292018 | $150.00 | 2291561674 | 160 | 00007559 |

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059

160
18-24/1220 4836

4/27/18 Date

Pay to the Order of _Adrian Camp_ $ 150 00

_One Hundred Fifty and ⁰⁰⁄₁₀₀_ Dollars

WELLS FARGO  Wells Fargo Bank, N.A.
California
wellsfargo.com

For _Work @ Home_

⑆122002471⑆ 2291561674⑈ 00160

Deposition of Eldon Rodriguez

ELDON - 012

AARB-1:070

| Routing | Sequence # | Paid Date | Amount | Account | Serial | Capture Source |
|---------|-----------|-----------|--------|---------|--------|----------------|
| 12104288 | 8610844670 | 05012018 | $1300.00 | 2291561674 | 154 | 00007559 |

ELDON D RODRIGUEZ                                                                    154
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059                                                    16-24/1220 4938

5/1/18 Date

Pay to the
Order of   Martin Ronquillo                               $ 1300.00

Thirteen Hundred Dollars —————                                Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For _____                    Eldon D. Rodriguez

⑆122000247⑆ 2291561674⑈ 00154

Seq: 52
Batch: 548279
Date: 05/01/18

Cash Check

08/20
$1,300.00

AARB-1:071

| Routing | Sequence # | Paid Date | Amount | Account | SerialCapture Source |
|---------|-----------|-----------|--------|---------|---------------------|
| 12104288 | 8610844670 | 05012018 | $1300.00 | 2291561674 | 154 | 00007559 |

**ELDON D RODRIGUEZ**
7305 WESTLAWN AVE
WESTCHESTER, CA 90045-1059

154
16-24/1220 4908

5/1/18 Date

Pay to the Order of  Martin Ronquillo                    $ 1300.00

Thirteen Hundred Dollars                    Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For _____                    Eldon D. Rodriguez

⑆122000247⑆ 2291561674⑈ 00154

Seq: 52
Batch: 548279
Date: 05/01/18

$1,300.00

| | |
|---|---|
| **From:** | no-reply@efilingmail.tylertech.cloud |
| **Sent:** | Friday, November 10, 2023 1:39 PM |
| **To:** | mnevarez@lawofficesmrn.com |
| **Subject:** | Notification of Service for Case: 2021DCV2346, Eldon Rodriguez and Maria RodriguezVSHeather Harmston, Jaime Gardea, Synergy Construct LLC, GC RENTALS AND MANAGEMENT LLC, Megan Tara Harris for filing Motion (No Fee), Envelope Number: 81527968 |

# Notification of Service

Case Number: 2021DCV2346
Case Style: Eldon Rodriguez and Maria
RodriguezVSHeather Harmston, Jaime Gardea,
Synergy Construct LLC, GC RENTALS AND
MANAGEMENT LLC, Megan Tara Harris
Envelope Number: 81527968



This is a notification of service for the filing listed. Please click the link below to retrieve the submitted document. If the link does not work, please copy the link and paste into your browser. You can also obtain this document by following the steps on this article.

| Filing Details | |
|---|---|
| **Case Number** | 2021DCV2346 |
| **Case Style** | Eldon Rodriguez and Maria RodriguezVSHeather Harmston, Jaime Gardea, Synergy Construct LLC, GC RENTALS AND MANAGEMENT LLC, Megan Tara Harris |
| **Date/Time Submitted** | 11/10/2023 1:37 PM MST |
| **Filing Type** | Motion (No Fee) |
| **Filing Description** | Defendants GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea and Synergy Construct, LLC's Joint Motion for Sanctions Against Plaintiffs, Motion to Show Cause and Motion for Emergency Hearing |
| **Filed By** | Terry Silva |
| **Service Contacts** | GC RENTALS AND MANAGEMENT LLC:<br><br>James Martinez (martinezja@jmeplaw.com)<br><br>James Martinez (eservice@jmeplaw.com)<br><br>Hala Abdel-Jabar (abdel-jaber@mgmsg.com)<br><br><br>Other Service Contacts not associated with a party on the case: |

| | Virginia Munoz (vmunoz@mgmsg.com) |
| --- | --- |
| | M. Downey (bdow@scotthulse.com) |
| | Terry Silva (tsilva@mgmsg.com) |
| | michael nevarez (mnevarez@lawofficesmrn.com) |
| | Denise Macias (paralegal-2@lawofficesmrn.com) |
| | Loretta Mata (lor.mata@epcounty.com) |
| | Georgina Gallegos (ggal@scotthulse.com) |
| | Guy McGunegle (gmcg@scotthulse.com) |
| | Mario Gonzalez (mario@gonzalezlawfirm.com) |
| | Roberta Medina (rmedina@rasberry.com) |

| Document Details | |
| --- | --- |
| **Served Document** | [Download Document](#) |
| This link is active for 30 days. | |

# IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS

# 171ST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELDON RODRIGUEZ, and | § | |
| MARIA RODRIGUEZ | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CAUSE NUMBER: 2021-DCV-2346** |
| | § | |
| HEATHER HARMSTON, | § | |
| JAIME GARDEA, | § | |
| SYNERGY CONSTRUCT LLC, | § | |
| GC RENTALS AND MANAGEMENT LLC | § | |
|   d/b/a REALTY ONE GROUP MENDEZ BURK, | § | |
| and MEGAN TARA HARRIS | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' THIRD AMENDED LIST OF EXPERT WITNESSES AND DESIGNATION OF TESTIFYING EXPERTS

**TO THE HONORABLE JUDGE BONNIE RANGEL:**

**COME NOW** ELDON RODRIGUEZ AND MARIA RODRIGUEZ, Plaintiffs in the

above-styled and -numbered cause of action (hereinafter jointly referred to as "Plaintiffs" and/or

"RODRIGUEZ"), by and through the undersigned counsel, and hereby timely file this "Plaintiffs'

Third Amended List of Expert Witnesses And Designation of Testifying Experts", designating the

expert witnesses expected to be called upon to testify at the trial of this matter, in accordance with

the Scheduling Order and Discovery Control Plan, filed October 30, 2023, as follows:

## I.      TESTIFYING EXPERT WITNESSES.

1.    John Estrada,
      Inspector #7636
      315 Alvarez Drive
      El Paso, TX 79932
      Telephone: (915) 845-7067

Expert John Estrada, Professional Inspector, will testify regarding (i) the numerous code discrepancies and structural problems with the real property located at 9328 McFall Drive, El Paso, Texas, and (ii) the "Property Inspection Report" that Estrada prepared, particularly the "2x4 framing thru-out/not consistent with 2x6 framing as indicated/blue print."

 a. The documents, tangible things, models, or data compilations that have been provided to, reviewed by, or prepared by or for the Expert in anticipation of the Expert's testimony are itemized in the Expert Estrada's Property Inspection Report dated June 10, 2018, attached hereto as Exhibit A.

 b. As discovery is ongoing, Expert Estrada has not yet prepared a final written expert report regarding the discoverable facts, but said report will be forthwith produced as soon as reasonably possible after it has been completed and reduced to tangible form.

 c. Plaintiffs will make the Expert available for deposition reasonably promptly after this designation, at a mutually agreeable time and place, in full accordance with the Texas Rules of Civil Procedure, Rule 195, entitled "Discovery Regarding Testifying Expert Witnesses."

 d. Expert John Estrada's current résumé is attached hereto as Exhibit B.

 e. The Expert may also reference the following:

  i. Exhibit H - G-3ngineering Report.
  ii. Exhibit I - New Proposed Residence.
  iii. Exhibit J - Truss Engineering Drawings.

2. Jaime Gallo, PE, CCM
GECCA, LLC
801 Myrtle Ave., Suite 101
El Paso, TX 79901
Telephone: (915) 229-6742

Expert Jaime Gallo, Principal Engineer, will testify regarding (i) the "Executive Summary Report" that Gallo prepared, and (ii) Gallo's engineering assessment of the structural condition of the real property located at 9328 McFall Drive, El Paso, Texas.

 a. The documents, tangible things, models, or data compilations that have been provided to, reviewed by, or prepared by or for the Expert in anticipation of the Expert's testimony are itemized in the Expert Gallo's Executive Summary Report dated June 29, 2021, attached hereto as Exhibit C.

 b. As discovery is ongoing, Expert Gallo has not yet prepared a final written expert

Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts
*Eldon and Maria Rodriguez v. Heather Harmston, Jaime Gardea, and Synergy Construct LLC*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346  Page 2 of 7

AARB-1:076

report regarding the discoverable facts, but said report will be forthwith produced as soon as reasonably possible after it has been completed and reduced to tangible form.

c. Plaintiffs will make the Expert available for deposition reasonably promptly after this designation, at a mutually agreeable time and place, in full accordance with the Texas Rules of Civil Procedure, Rule 195, entitled "Discovery Regarding Testifying Expert Witnesses."

d. Expert Jaime Gallo's current résumé is attached hereto as Exhibit D.

e. The Expert may also reference the following:

   i. Exhibit H - G-3ngineering Report.
   ii. Exhibit I - New Proposed Residence.
   iii. Exhibit J - Truss Engineering Drawings.

3. Mr. Thomas Given, CPA
   Given CPA, PC
   6006 N. Mesa St., Suite 328
   El Paso, Texas 79912
   Telephone: (915) 585-1900

   Expert Tom Given, Certified Public Accountant with Given CPA, PC, will testify regarding the quantification of Plaintiffs' damages.

   a. The documents, tangible things, models, or data compilations that have been provided to, reviewed by, or prepared by or for the Expert in anticipation of the Expert's testimony cannot be itemized at this time, as discovery is incomplete.

   b. As discovery is incomplete, Expert Given has not yet prepared a final written expert report regarding the discoverable facts. Said expert report will be forthwith produced as soon as reasonably possible, after it has been completed and reduced to tangible form.

   c. Plaintiffs will make the Expert available for deposition reasonably promptly after completion of the expert report, at a mutually agreeable time and place, in full accordance with the Texas Rules of Civil Procedure, Rule 195, entitled "Discovery Regarding Testifying Expert Witnesses."

   d. Expert Tom Given's current résumé is attached hereto as Exhibit E.

4. Mr. Michael H. Bray, Licensed Real Estate Agent
   4855 N. Mesa St., Suite 116
   El Paso, Texas 79912
   (915) 549-1770

Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts
*Eldon and Maria Rodriguez v. Heather Harmston, Jaime Gardea, and Synergy Construct LLC*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 3 of 7

AARB-1:077

Expert Michael H. Bray, Licensed Real Estate Agent with RC Properties, will testify concerning (i) the duties and obligations owed by a real estate agent and broker and at issue during a real estate purchase/sale transaction, including at issue in the transaction the subject of this lawsuit, and (ii) the report Bray prepared.

a.   The documents, tangible things, models, or data compilations that have been provided to, reviewed by, or prepared by or for the Expert in anticipation of the Expert's testimony are itemized in the Expert Bray's Report dated October 3, 2023, attached hereto as Exhibit F.

b.   As discovery is incomplete, Expert Bray has not yet prepared a final written expert report regarding the discoverable facts. Said expert report will be forthwith produced as soon as reasonably possible, after it has been completed and reduced to tangible form.

c.   Plaintiffs will make the Expert available for deposition reasonably promptly after completion of the expert report, at a mutually agreeable time and place, in full accordance with the Texas Rules of Civil Procedure, Rule 195, entitled "Discovery Regarding Testifying Expert Witnesses."

d.   Expert Michael H. Bray's current résumé is attached hereto as Exhibit G.

e.   The Expert may also reference the following:

   i.    Exhibit H - G-3ngineering Report.
   ii.   Exhibit I - New Proposed Residence.
   iii.  Exhibit J - Truss Engineering Drawings.

5.   Michael R. Nevarez
     The Nevarez Law Firm, PC
     P.O. Box 12247
     El Paso, Texas 79913  Telephone:
     (915) 225-2255
     Facsimiles: (915) 845-3405

Expert Michael R. Nevarez will testify on the reasonableness and necessity of attorney fees and costs incurred herein, and as to the contract law principles applicable in this case, under (i) Texas statutory and regulatory laws, and (ii) the Constitution of the State of Texas.

The general substance of the Expert's mental impressions and opinions and a brief summary of the basis for them are as follows:

a.   Mr. Nevarez may testify and provide his expert opinions as to what reasonable and

Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts
*Eldon and Maria Rodriguez v. Heather Harmston, Jaime Gardea, and Synergy Construct LLC*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 4 of 7

AARB-1:078

necessary attorneys fee and costs are for pre-trial, trial, appeal to the Court of Appeals, and appeal to the Supreme Court. Mr. Nevarez cannot formalize his opinions until a date closer to trial because the activity undertaken in this case, has not been fully determined, analyzed, developed, and/or implemented, which will directly affect his overall mental impressions and opinions. Mr. Nevarez will rely on his education, experience in the handling of legal matters in EI Paso County, Texas, his understanding of the issues in this case, his personal involvement in handling of this case; the applicable rules consistent with the Texas Disciplinary Rules of Professional Conduct and the Texas Supreme Court's ruling in *Arthur Andersen & Co. v. Perry Equipment Corporation*, 945 S.W.2d 812, 818 (Tex. 1997), including, but not limited to:

    i.        The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

    ii.       The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

    iii.      The fee customarily charged in the locality for similar legal services;

    iv.      The amount involved and the results obtained;

    v.        The time limitations imposed by the client or by the circumstances;

    vi.      The nature and length of the professional relationship with the client;

    vii.     The experience, reputation, and ability of the lawyer or lawyers performing the services; and,

    viii.    Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

As of the below date, the mental impressions and opinions held by Mr. Nevarez are that $300 per hour for the services of Plaintiffs' attorney are reasonable and necessary in this case for pre-trial, post-trial, and appeal, and $350 per hour for trial work, based on the above- delineated factors under Texas law. It is anticipated at this preliminary stage that pretrial and trial preparation will require 100 to 150 hours; post trial 50 to 100 hours; appeal to 8th Court of Appeals 50 to 100 hours; petition to Texas Supreme Court 50 hours; and in the event petition is granted by the Texas Supreme Court, 100 hours.

    b.     Mr. Nevarez may testify and provide his expert opinions as to the contract law principles applicable in this case under (i) Texas statutory and regulatory laws, and (ii) the Constitution of the State of Texas, concerning Plaintiffs' entitlement to payment of its claims, including all attorney's fees and costs.

Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts
*Eldon and Maria Rodriguez v. Heather Harmston, Jaime Gardea, and Synergy Construct LLC*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346        Page 5 of 7

AARB-1:079

As of the below date, the mental impressions and opinions held by Mr. Nevarez are that, in accordance with contract law principles applicable in this case under the laws of the State of Texas, and the Constitution of the State of Texas, Plaintiffs are entitled to payment of all of its claims, and all attorney's fees and costs.

c.    The documents, tangible things, models, or data compilations that have been provided to, reviewed by, or prepared by or for the Expert in anticipation of the Expert's testimony are as follows: The Pleadings in this case, all non-privileged case files, the discovery documents, and any photographs, video, and other tangible or intangible documents related to this case. In addition, as this case is ongoing and fee statements are continually being generated, Plaintiff swill also produce redacted copies of all fee invoices and statements upon request, at a reasonable time and place, as agreed to by the parties, and upon reasonable written notice.

d.    As discovery is ongoing, Mr. Nevarez has not yet prepared a written report regarding the discoverable factual observations, tests, supporting data, calculations, photographs, and opinions, but said report will be forthwith produced as an Application for Attorney's Fees and Costs soon as reasonably possible.

e.    Plaintiffs will make the Expert available for deposition reasonably promptly after this designation, at a mutually agreeable time and place, in full accordance with the Texas Rules of Civil Procedure, Rule 195, entitled "Discovery Regarding Testifying Expert Witnesses."

f.    Mr. Nevarez does not possess or maintain a current résumé and/or bibliography. However, Mr. Nevarez' background may be found at: http://lawofficesmrn.com/michael-r-nevarez/.

November 10, 2023                                Respectfully submitted,

                                                **THE NEVAREZ LAW FIRM, PC**
                                                Attorneys and Counselors At Law
                                                7362 Remcon Circle
                                                El Paso, Texas 79912
                                                Telephone: (915) 225-2255
                                                Facsimiles: (915) 845-3405
                                                Email: MNevarez@LawOfficesMRN.com

                                                /s/ Michael R. Nevarez
                                                **MICHAEL R. NEVAREZ**
                                                State of Texas Bar No. 14933400
                                                Attorney for Plaintiffs

Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts
*Eldon and Maria Rodriguez v. Heather Harmston, Jaime Gardea, and Synergy Construct LLC*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                          Page 6 of 7


AARB-1:080

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' THIRD AMENDED LIST OF EXPERT WITNESSES AND DESIGNATION OF TESTIFYING EXPERTS**, with all supporting attachments, exhibits, and affidavits thereto, if any, was served by regular first-class mail, postage prepaid, and/or by e-Filing via an Electronic Filing Service Provider, and/or via facsimile, and/or hand delivery, to the following parties in interest, on this November 10, 2023:

**ATTORNEY FOR DEFENDANT HEATHER HARMSTON:**
MARIO A. GONZALEZ
1522 Montana Avenue, Suite 100
El Paso, Texas 79902
Telephone: (915) 543-9802
Email: mario@gonzalezlawfirm.com

**ATTORNEYS FOR DEFENDANTS JAIME GARDEA and SYNERGY CONSTRUCT LLC:**
M. BLAKE DOWNEY and
DESIREE M. DUARTE
SCOTTHULSE PC
One San Jacinto Plaza
201 E. Main Drive, Suite 1100
El Paso, Texas 79901
Telephone: (915) 533-2493
Emails: bdow@scotthulse.com; ddua@scotthulse.com

**ATTORNEYS FOR DEFENDANT GC RENTALS:**
JAMES A. MARTINEZ
HALA A. ABDEL-JABER
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
P.O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1597
Emails: martinezja@jmeplaw.com; Abdel-jaber@mgmsg.com

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**

---

Plaintiffs' Third Amended List of Expert Witnesses and Designation of Testifying Experts
*Eldon and Maria Rodriguez v. Heather Harmston, Jaime Gardea, and Synergy Construct LLC*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346 <space_holder>Page 7 of 7

AARB-1:081

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Nevarez
Bar No. 14933400
MRN@MRN4Law.com
Envelope ID: 81539749
Filing Code Description: Amended Filing
Filing Description: Amended witness list
Status as of 11/13/2023 10:01 AM MST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Virginia Munoz | | vmunoz@mgmsg.com | 11/10/2023 8:33:57 PM | SENT |
| M. BlakeDowney | | bdow@scotthulse.com | 11/10/2023 8:33:57 PM | SENT |
| Terry Silva | | tsilva@mgmsg.com | 11/10/2023 8:33:57 PM | SENT |
| michael nevarez | | mnevarez@lawofficesmrn.com | 11/10/2023 8:33:57 PM | SENT |
| Denise Macias | | paralegal-2@lawofficesmrn.com | 11/10/2023 8:33:57 PM | SENT |
| Loretta Mata | | lor.mata@epcounty.com | 11/10/2023 8:33:57 PM | SENT |
| Georgina Gallegos | | ggal@scotthulse.com | 11/10/2023 8:33:57 PM | SENT |
| Guy McGunegle | | gmcg@scotthulse.com | 11/10/2023 8:33:57 PM | SENT |
| Mario Gonzalez | | mario@gonzalezlawfirm.com | 11/10/2023 8:33:57 PM | SENT |
| Roberta Medina | | rmedina@rasberry.com | 11/10/2023 8:33:57 PM | SENT |

Associated Case Party: GC RENTALS AND MANAGEMENT LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James A.Martinez | | martinezja@jmeplaw.com | 11/10/2023 8:33:57 PM | SENT |
| James Martinez | | eservice@jmeplaw.com | 11/10/2023 8:33:57 PM | SENT |
| Hala Abdel-Jabar | | abdel-jaber@mgmsg.com | 11/10/2023 8:33:57 PM | SENT |



 

**John Estrada**
TREC. LIC. # 7636

Cell: (915) 227-3436
Home: (915) 845-7067

P.O. Box 220388
El Paso, TX 79913

# PROPERTY INSPECTION REPORT

**Prepared For:** Eric B Darnell P.O. Box 121 El Paso,Tx.79941 (915)313-0000

(Name of Client)

Email: edarnell@darnell-lawfirm.com

**Concerning:** 9328 Mc Fall Dr El Paso,Tx.79925

(Address or Other Identification of Inspected Property)

**By:** John Estrada # 7636

(Name and License Number of Inspector) **(Date) 06/10/2018**

(Name, License Number and Signature of Sponsoring Inspector, if required)

### PURPOSE, LIMITATIONS AND INSPECTOR / CLIENT RESPONSIBILITIES

This property inspection report may include an inspection agreement (contract), addenda, and other information related to property conditions. If any item or comment is unclear, you should ask the inspector to clarify the findings. It is important that you carefully read ALL of this information.

This inspection is subject to the rules ("Rules") of the Texas Real Estate Commission ("TREC"), which can be found at www.trec.texas.gov.

The TREC Standards of Practice (Sections 535.227-535.233 of the Rules) are the minimum standards for inspections by TREC licensed inspectors. An inspection addresses only those components and conditions that are present, visible, and accessible at the time of the inspection. While there may be other parts, components or systems present, only those items specifically noted as being inspected were inspected. The inspector is NOT required to turn on decommissioned equipment, systems, utility services or apply an open flame or light a pilot to operate any appliance. The inspector is NOT required to climb over obstacles, move furnishings or stored items. The inspection report may address issues that are code-based or may refer to a particular code; however, this is NOT a code compliance inspection and does NOT verify compliance with manufacturer's installation instructions. The inspection does NOT imply insurability or warrantability of the structure or its components. Although some safety issues may be addressed in this report, this inspection is NOT a safety/code inspection, and the inspector is NOT required to identify all potential hazards.

In this report, the inspector shall indicate, by checking the appropriate boxes on the form, whether each item was inspected, not inspected, not present or deficient and explain the findings in the corresponding section in the body of the report form. The inspector must check the Deficient (D) box if a condition exists that adversely and materially affects the performance of a system or component or constitutes a hazard to life, limb or property as specified by the TREC Standards of Practice. General deficiencies include inoperability, material distress, water penetration, damage, deterioration, missing components, and unsuitable installation. Comments may be provided by the inspector whether or not an item is deemed deficient. The inspector is not required to prioritize or emphasize the importance of one deficiency over another.

Some items reported may be considered life-safety upgrades to the property. For more information, refer to Texas Real Estate Consumer Notice Concerning Recognized Hazards or Deficiencies below.

THIS PROPERTY INSPECTION IS NOT A TECHNICALLY EXHAUSTIVE INSPECTION OF THE STRUCTURE, SYSTEMS OR COMPONENTS. The inspection may not reveal all deficiencies. A real estate inspection helps to reduce some of the risk involved in purchasing a home, but it cannot eliminate these risks, nor can the inspection anticipate future events or changes in performance due to changes in use or occupancy. It is recommended that you obtain as much information as is available about this property, including any seller's disclosures, previous inspection reports, engineering reports, building/remodeling permits, and reports performed for or by relocation companies, municipal inspection departments, lenders, insurers, and appraisers. You should also attempt to determine whether repairs, renovation, remodeling, additions, or other such activities have taken place at this property. It is not the inspector's responsibility to confirm that information obtained from these sources is complete or accurate or that this inspection is consistent with the opinions expressed in previous or future reports.

ITEMS IDENTIFIED IN THE REPORT DO NOT OBLIGATE ANY PARTY TO MAKE REPAIRS OR TAKE OTHER ACTIONS, NOR IS THE PURCHASER REQUIRED TO REQUEST THAT THE SELLER TAKE ANY ACTION. When a deficiency is reported, it is the client's responsibility to obtain further evaluations and/or cost estimates from qualified service professionals. Any such follow-up should take place prior to the expiration of any time limitations such as option periods. Evaluations by qualified tradesmen may lead to the discovery of additional deficiencies which may involve additional repair costs. Failure to address deficiencies or comments noted in this report may lead to further damage of the structure or systems and add to the original repair costs. The inspector is not required to provide follow-up services to verify that proper repairs have been made.

Property conditions change with time and use. For example, mechanical devices can fail at any time, plumbing gaskets and seals may crack if the appliance or plumbing fixture is not used often, roof leaks can occur at any time regardless of the apparent condition of the roof, and the performance of the structure and the systems may change due to changes in use or occupancy, effects of weather, etc. These changes or repairs made to the structure after the inspection may render information contained herein obsolete or invalid. This report is provided for the specific benefit of the client named above and is based on observations at the time of the inspection. If you did not hire the inspector yourself, reliance on this report may provide incomplete or outdated information. Repairs, professional opinions or additional inspection reports may affect the meaning of the information in this report. It is recommended that you hire a licensed inspector to perform an inspection to meet your specific needs and to provide you with current information concerning this property.

**TEXAS REAL ESTATE CONSUMER NOTICE CONCERNING HAZARDS OR DEFICIENCIES**

Each year, Texans sustain property damage and are injured by accidents in the home. While some accidents may not be avoidable, many other accidents, injuries, and deaths may be avoided through the identification and repair of certain hazardous conditions. Examples of such hazards include:

- malfunctioning, improperly installed, or missing ground fault circuit protection (GFCI) devices for electrical receptacles in garages, bathrooms, kitchens, and exterior areas;
- malfunctioning arc fault protection (AFCI) devices;
- ordinary glass in locations where modern construction techniques call for safety glass;
- malfunctioning or lack of fire safety features such as smoke alarms, fire-rated doors in certain locations, and functional emergency escape and rescue openings in bedrooms;
- malfunctioning carbon monoxide alarms;
- excessive spacing between balusters on stairways and porches;
- improperly installed appliances;
- improperly installed or defective safety devices; and
- lack of electrical bonding and grounding.

To ensure that consumers are informed of hazards such as these, the Texas Real Estate Commission (TREC) has adopted Standards of Practice requiring licensed inspectors to report these conditions as "Deficient" when performing an inspection for a buyer or seller, if they can be reasonably determined.

These conditions may not have violated building codes or common practices at the time of the construction of the home, or they may have been "grandfathered" because they were present prior to the adoption of codes prohibiting such conditions. While the TREC Standards of Practice do not require inspectors to perform a code compliance inspection, TREC considers the potential for injury or property loss from the hazards addressed in the Standards of Practice to be significant enough to warrant this notice.

Contract forms developed by TREC for use by its real estate licensees also inform the buyer of the right to have the home inspected and can provide an option clause permitting the buyer to terminate the contract within a specified time. Neither the Standards of Practice nor the TREC contract forms require a seller to remedy conditions revealed by an inspection. The decision to correct a hazard or any deficiency identified in an inspection report is left to the parties to the contract for the sale or purchase of the home.

**INFORMATION INCLUDED UNDER "ADDITIONAL INFORMATION PROVIDED BY INSPECTOR", OR PROVIDED AS AN ATTACHMENT WITH THE STANDARD FORM, IS NOT REQUIRED BY THE COMMISSION AND MAY CONTAIN CONTRACTUAL TERMS BETWEEN THE INSPECTOR AND YOU, AS THE CLIENT. THE COMMISSION DOES NOT REGULATE CONTRACTUAL TERMS BETWEEN PARTIES. IF YOU DO NOT UNDERSTAND THE EFFECT OF ANY CONTRACTUAL TERM CONTAINED IN THIS SECTION OR ANY ATTACHMENTS, CONSULT AN ATTORNEY.**

---

**Amount Due:  $300.00**

**Inspected:   06/10/2018**

**Temp:  72-98 dgrs / sny**

**Built:  1970 / 2017 (re-build / post fire)...FYI, homes built 1900-1950 most likely have lead paint, 1950-1979 possibly have**

**lead paint, note home has been painted multiple times since 1970**

**Sq. Ft.  2,512...garage 399 sqft, oprch 241 sqft**

**Faces:  east**

**I=Inspected**          **NI=Not Inspected**          **NP=Not Present**          **D=Deficient**

| I | NI | NP | D | Inspection Item |
|---|----|----|---|-----------------|

### I.  STRUCTURAL SYSTEMS

☒ ☐ ☐ ☒   **A.  Foundations**
*Type of Foundation(s):*   slab on grade
*Comments:*  the foundation appears to be functioning as intended**, exterior concrete slab exiting mstrbdrm slope deficeint / low area (depression) adjacent sliding glass doors (water ponds & drains toward structure doors)**

☒ ☐ ☐ ☒   **B.  Grading & Drainage** *Comments:* **water ponds in various locations in bckyrd / negative drainage, water should flow away from structure & toward street (elevation = 6" drop /10' away from structure), soil above grade in various locations (termite conducive), missing weep hole below front SE rock wall (conducive for drainage toward street)**

☒ ☐ ☐ ☐   **C.  Roof Covering Materials**
*Type(s) of Roof Covering:*   composite shingle
*Viewed From:*  100 % on roof
*Comments:*  2017, all components appear to be functioning as intended / intact

☒ ☐ ☐ ☒   **D.  Roof Structure & Attic**
*Viewed From:*  no attic, gable
*Approximate Average Depth of Insulation:*  not visible
*Approximate Average Thickness of Vertical Insulation:*  not visible
*Comments:*  **deficeint venting of roof surface / space between ceiling @ sheathing (plywood) / (only 1 ea turbine vent for entire roof surface) / recommended amount of vented area = 1 sqft / 600 sqft., recommend roofing contractor**

☒ ☐ ☐ ☒   **E.  Walls (Interior & Exterior)** *Comments:* **previous open cut-outs of drywall in various locations (exposed 2x4 framing thru-out / no 2x6 framing as indicated in blue prints), exterior brick veneer joints deficeint sealant @ juncture of north wall, stucco voids in various locations, to include back wall penetration of faucet hose bibb, void above south office window @ hard board siding, voids in water heater drywall, tuck point @ brick veneer deficeint in various locations, exposed water rot of sill plate @ bck wall below stucco juncture**

☒ ☐ ☐ ☒   **F.  Ceilings & Floors** *Comments:* **drywall ceiling voids in water heater closet,** tile carpet intact

☒ ☐ ☐ ☒   **G.  Doors (Interior & Exterior)** *Comments:* **unfinished door molding paint & nail holes in various locations / deficeint paint, previous repairs / missing code required solid core door @ garage to house entry (1,3/8 " fire resistant door) / deficeint threshold / missing fastener screw @ striker plate @ same (light shines thru / no rubber seal), binding mstrbdrm slidng glass door / missing sliding screen @ same, missing sliding screen @ NW door, deficeint weather strips in various locations, missing vents @ laundry door (top & bottom when gas dryer present), ktchn drawers binding / binding linen closet door, doors out of square (racked) in various locations**

☒ ☐ ☐ ☒   **H.  Windows** *Comments:* **torn / damaged / missing screens in various locations, front bdrm window latches broken / binding windows / mis-aligned**

| I | NI | NP | D | Inspection Item |
|---|----|----|---|---|

☐ ☐ ☒ ☐  **I.  Stairways (Interior & Exterior)** *Comments:*

☒ ☐ ☐ ☒  **J.  Fireplace/Chimney** *Comments:*  <mark>chimney chase (covered with waffer board / not water proofed)</mark>, electric fire place

☒ ☐ ☐ ☒  **K.  Porches, Balconies, Decks, and Carports** *Comments:* <mark>wood deck @ bck exit door in direct contact with soil (termite conducive condition), bck slab @ mstrbdrm exit deficeint as noted (slope toward structure)</mark>

## II. ELECTRICAL SYSTEMS

☒ ☐ ☐ ☒  **A.  Service Entrance and Panels** *Comments:* overhead feed @ west wall, meter / main-panel @ same, 120/240 volt, 200 amp service (up-grade), sub-panel in garage<mark>, double tap @ ground wires / busbar not compliant), recommend licensed electrician</mark>

☒ ☐ ☐ ☒  **B.  Branch Circuits, Connected Devices, and Fixtures**
*Type of Wiring:* aluminum branch circuit wiring thru-out
*Comments:* <mark>missing GFCI protected exterior (bck / frt) receptacles / dead @ same, discrepancies tagged blue, GFCI protected receptacles required within 6' of water / all exterior / ktchn / 1ea garage, recommend licensed electrician</mark>

## III. HEATING, VENTILATION AND AIR CONDITIONING SYSTEMS

☒ ☐ ☐ ☐  **A.  Heating Equipment**
*Type of System:* forced air / gas pack unit on roof-top
*Energy Source:* gas
*Comments:* Ruud / Achiever, 2016, mod # RGEA1460AJT101AA, ser # F131701615, all components operating / intact

☒ ☐ ☐ ☐  **B.  Cooling Equipment**
*Type of System:* refrigerated air
*Comments:* **same as above**

☒ ☐ ☐ ☒  **C.  Duct System, Chases, and Vents** *Comments:* <mark>deficeint venting of roof / attic space as noted</mark>

## IV.        PLUMBING SYSTEM

☒ ☐ ☐ ☒  **A.  Water Supply System and Fixtures**
*Location of water meter:* curb
*Location of main water supply valve:* same
*Static water pressure reading:* 60 psi.
*Comments:* <mark>missing code required back flow preventer @ exterior front faucet hose bibb / previous sewer line repair @ mstrbthrm (leaking / plugged / obstructed cast iron pipe)</mark>

I=Inspected        NI=Not Inspected        NP=Not Present            D=Deficiency

| I | NI | NP | D | Inspection Item |
|---|----|----|----|-----------------|

☒ ☐ ☐ ☐   **B.  Drains, Wastes, and Vents** *Comments:* intact

☒ ☐ ☐ ☒   **C.  Water Heating Equipment**
*Energy Source:*  gas
*Capacity:*  40 gal
*Comments:*  Rheem / Performance, 2017, mod # XG40T06EC36U1, ser # M511717059<mark>**, missing 90 elbow @ exterior (west) discharge line, void in platform @ drain line penetration & various locations, recommend licensed plumber,**</mark> **FYI, average life span of wtrhtrs apprx 10-15 yrs**

☐ ☐ ☒ ☐   **D.  Hydro-Massage Therapy Equipment** *Comments:*


# V.  APPLIANCES

☒ ☐ ☐ ☒   **A   Dishwasher** *Comments:* Whirlpool, all components operating,<mark> **door protrudes past island counter-top edge (should be recessed / flush with counter-top)**</mark>

☒ ☐ ☐ ☐   **B.  Food Waste Disposer** *Comments:* Badger-500, all components operating, **previously repaired / became detached from drain bezel locking ring**

☒ ☐ ☐ ☒   **C.  Range Exhaust Vent** *Comments:*   <mark>**missing / code required / El Paso,Cnty (fire code)**</mark>

☒ ☐ ☐ ☒   **D.  Ranges, Cook-tops, and Ovens** *Comments:*  Whirlpool gas cook-top, gas ovens, test = 350 dgrs., all components operating / <mark>**missing code required anti-tip device / missing escutcheon ring @ gas line wall penetration**</mark>

☐ ☒ ☐ ☐   **E.  Microwave Oven** *Comments:* **not integral**

☐ ☐ ☒ ☐   **F.  Trash Compactor** *Comments:*

☒ ☐ ☐ ☐   **G.  Mechanical Exhaust Vents and Bathroom Heaters** *Comments:* operating / intact

☒ ☐ ☐ ☐   **H.  Garage Door Operator(s)** *Comments:* Lift Master / MY, all components operating /intact

☒ ☐ ☐ ☐   **I.  Doorbell and Chimes** *Comments:* operating / intact

I=Inspected          NI=Not Inspected          NP=Not Present          D=Deficiency

| I | NI | NP | D | Inspection Item |
|---|----|----|---|-----------------|

☒ ☐ ☐ ☒  **J.  Dryer Vents** *Comments:* intact, electric or gas service, ==**gap @ ceiling gas line penetration (no escutcheon ring present) / missing door register vents (top & bottom) as noted**==

## VI. OPTIONAL SYSTEMS

☒ ☐ ☐ ☒  **A.  Lawn and Garden Sprinkler Systems** *Comments:* ==**did not function,** front yard abandoned==

☐ ☐ ☒ ☐  **B.  Swimming Pools, Spas, Hot Tubs, and Equipment**
*Type of Construction:* concrete
*Comments:*

☐ ☐ ☒ ☐  **C.  Outbuildings** *Comments:*

☐ ☐ ☒ ☐  **D.  Outdoor Cooking Equipment**
*Energy Source:*
*Comments:*

☒ ☐ ☐ ☐  **E.  Gas Supply Systems** *Comments:*  meter @ south wall / intact

☐ ☐ ☒ ☐  **F.  Private Water Wells** (A coliform analysis is recommended.)
*Type of Pump:*
*Type of Storage Equipment:*
*Comments:*

☐ ☐ ☒ ☐  **G.  Private Sewage Disposal (Septic) Systems**
*Type of System:*
*Location of Drain Field:*
*Comments:*

☐ ☐ ☒ ☐  **H.  Whole-House Vacuum Systems** *Comments:*

☒ ☐ ☐ ☐  **I.  Other Built-in Appliances** *Comments:* Whirlpool refrigerator, operating / intact

**Remarks:**          ==**General condition, discrepancies as noted, tagged blue, previous fire damaged structure / prevelant smoke odor thru-out, recommend licensed electrician, recommend roofing contractor / deficeint venting, recommend structual engineer (2x4 framing thru-out / not consistent with 2x6 framing as indicated / blue print)**==

RESUME: JOHN ESTRADA

1963-1968 FRAMER

YARBROUGH CONSTRUCTION / ROGER SHULTZ

1968 /1969 - JANUARY 1973 USMC

1973 - 1976 UTEP / BIOLOGY MAJOR

1978 ICX TRANSPORTAION / UPS / 2002 CONSOLIDATED FREIGHTWAYS

2004 - 2022 PROFESSIONAL MASTER COMMERCIAL / RESIDENTIAL INSPECTOR

# GECCA, LLC

June 29, 2021

Attn: Mr. Michael Nevarez
The Nevarez Law Firm, PC
P.O. Box 12247
El Paso, TX 79913

RE:    Executive Summary – Preliminary Findings
       9328 McFall Drive, El Paso Texas

Dear Mr. Nevarez:

Per your June 25, 2021 request, GECCA, LLC conducted a Structural Condition Assessment at the Rodriguez Residence located at 9328 McFall Drive in El Paso, TX. Mr. Jaime Gallo, P.E., CCM, Principal Engineer (Civil/Structural), performed the site visit on June 28, 2021. GECCA was requested to assess the structural condition of the residence and assess if it met the applicable building code requirements.

This report is intended to be an Executive Summary and may not present all the conditions noted. Please note that our observations for this project are limited to a single site visit of readily visible conditions and did not include material testing or destructive sampling. Others had completed drywall cutouts throughout the interior of the building. GECCA reviewed the framing materials readily accessible through the drywall cutouts.

*Assignment*
GECCA was contacted by Mr. Michael Nevarez, representing Mr. Eldon Rodriguez, on June 25, 2021, to conduct a structural assessment of the building structure. Mr. Nevarez stated that the current property owners were concerned that the building was not constructed to the applicable building code requirements and the permitted design documents.

*Background Information*
Mr. Jaime Gallo, PE, formerly representing G-3ngineering, LLC, completed an Engineering Report in reference to the subject reference on August 9, 2017.  At the time, the property was gutted and partially demolished as a result of a fire originating at the chimney. The conclusions and recommendations included in the August 9, 2017 report are listed below:

- All charred lumber and the adjoining member(s) on each side not exhibiting damage shall be removed and replaced;
- Any doors, windows, or frames exhibiting dislodgements, water or fire damage shall be removed and replaced;
- The floor slab damage was cosmetic and may be remain in place for an in-kind single story, conventional, wood frame structure;
- Modifications to the load bearing walls or the use of other construction materials will require further evaluation; and
- The removal, replacement and repair activities shall be conducted under the oversight of a structural engineer or experienced construction professional.

GECCA or Mr. Gallo, were not involved in subsequent redesigned, permitting, and reconstruction at an undetermined time by other parties sometime after the August 9, 2017 G-3ngineering recommendations were issued.

## *Observations*

The following is a summary of the conditions observed during our site visit to investigate the current conditions at the Rodriguez residence:

- The wall framing was not conventional and not in compliance with the applicable building code and industry standards. The original eight-foot-tall, 2x4 stud framed walls were raised over two feet in height by adding 2x4 stud framing at 16-inch spacings. The accessible framing exhibited gaps between members, splits and lacked proper anchoring and straps. Per the current version of the International Building Code (IBC), adopted by the City of El Paso, walls higher than ten feet, as observed at the Rodriguez residence, must be engineered to resist the expected service loads. The framed load-bearing walls at the Rodriguez residence were not designed to sustain the loading required per the applicable building code;
- Charred framing members were observed at the Rodriguez residence. Fire events typically result in the charring of wood members. The charred wood members exhibit reduced cross-sectional areas and damage to the wood fibers reducing their load-bearing capacity. For this reason, the 2017 assessment recommended all charred members and the adjoining member not exhibiting fire damage be removed and replaced in kind;
- The building structure was not replaced in kind; mainly, load-bearing walls were raised to over ten feet in height, a room and a rear porch were added. The modifications warranted the re-evaluation of the foundation and its load-bearing capacity; and
- Other Code violations and workmanship issues such as unbooted/unflashed roof penetrations, roof penetrations less than 12 inches from valleys/ridges, a deficiently sealed chimney cap, inadequate footings, poorly constructed framing, and rafter connections, and deficiently installed stucco cladding were observed by GECCA.

## *Conclusions and Recommendations*

The building codes specify the minimum requirements to safeguard the building occupants' health, safety, and welfare. The Rodriguez residence is not in compliance with the minimum requirements of the applicable building code and, as a result, shall be deemed uninhabitable until a thorough assessment can be completed by a qualified professional and its deficiencies remediated or removed and replaced.

## *Limitations*

The conclusions, analyses, and opinions expressed herein have been prepared within a reasonable degree of professional certainty. They are based on the results and interpretations of the testing and/or data collection activities performed at the site, the information available to GECCA at the time the report was issued, and the education, training, knowledge, skill, and experience of the author and/or licensed professional noted.

The contents of this report are confidential, are intended for the use of The Nevarez Law Firm and its representatives or clients, and may also be privileged or otherwise protected by work product immunity or other legal rules. GECCA assumes no liability for the misuse of this information by others and reserves the right to update this report should additional information become available.

This document has been signed and sealed in accordance with applicable state statutes. If not signed and sealed by the licensed professional(s) named and shown as its author(s), the observations, conclusions, and opinions cannot be relied upon; as such, the document has been provided for information purposes only. This report was technically reviewed in accordance with GECCA's standard practice.

GECCA, LLC appreciates this opportunity to be of service to you. If we can be of further assistance in this or other matters, please do not hesitate to contact us.

Sincerely,
GECCA, LLC



Jaime Gallo, PE, CCM

TXBPE F-21686

# Jaime Gallo, PE, CCM

Principal Engineer (Civil/Structural)

[JaimeGalloPE@gmail.com](mailto:JaimeGalloPE@gmail.com) (915) 346-5111

## Professional Summary

Mr. Gallo is a Principal Civil/Structural Engineer located in El Paso, Texas. He serves as a forensic Civil/Structural engineer and is responsible for engineering projects requiring determination of the cause, origin, and extent/severity of damage to buildings and structures. Mr. Gallo's work is primarily focused on projects requiring evaluation of structural damage from various causes including wind due to hurricanes, structural settlement conditions, and construction activities. Mr. Gallo is also involved in litigation support of our clients, providing expert evaluations.

Mr. Gallo has been responsible for various types of structural investigations including evaluating damage from hurricanes, foundation issues, automobile impacts, hail storms, elevated wind forces and rainfall, ice and snow events, drainage issues, plumbing and construction techniques and methods. Mr. Gallo has extensive experience in forensic investigations, design and construction of residential and commercial structures. Projects include schools, office complexes, multi-story structures, infrastructure, and commercial buildings. Clients have included private and institutional owners, government entities, insurance companies and plaintiff attorneys.

Mr. Gallo has been a practicing licensed professional engineer since 2010. He has held civil engineering positions involving residential and commercial site design and development, design and construction of residential, commercial and civil infrastructure projects. These positions have ranged in responsibility from entry to supervisory and management levels. As project engineer, Mr. Gallo was responsible for production of construction documents and plans, permitting documents and submittals, project coordination and construction/operation/maintenance administration. As a certified construction manager, Mr. Gallo has been responsible overseeing the owner's best interest and directing residential, commercial and civil infrastructure construction projects from conception to completion.

## Education

May 2002      Bachelor of Science, Civil Engineering
University of Texas, El Paso, Texas

## History

> Principal Engineer/Owner GECCA (formerly G-3ngineering), El Paso, Texas, 2010 – Present

> Infrastructure Lead for ECM International, Inc., El Paso, Texas, 2013 – Present

> Project Manager for JD Abrams, LP, Austin, Texas, 1998 – 2012

## Relevant Professional Licenses

**Texas** – Professional Engineer, License Number: 107316

**Florida** – Professional Engineer, License Number: 84713

**Colorado** – Professional Engineer, License Number: 54800

**North Carolina** – Professional Engineer, License Number: 047715

**New Mexico** – Professional Engineer, License Number: 22749

**National Council of Examiners for Engineering and Surveyors** (NCEES) Model Law Engineer (MLE) Record Number: 12-514-65

**Certified Construction Manager (CCM),** License Number: 6462

## Professional Organizations / Affiliations

American Society of Civil Engineers National Chapter, Professional Member

National Society of Professional Engineers, Professional Member

Construction Managers Association of America, Professional Member

Project Management Institute, Professional Member

## Areas of Specialization

> Structural Forensic Investigations

> Foundation/Settlement Evaluations

> Wind Force/Storm Surge/Wave Action/Flooding Damage Assessments

> Vibration Damage Assessments

> Roof Covering Damage Assessments

> Litigation Support Services

> Design and Construction

## Representative Project Experience

Responsible for the investigation and evaluation of structural issues related to various types of projects. Mr. Gallo has investigated over 900 projects in the civil/structural field.

**Given CPA, PC**

**6006 N Mesa St, Suite 328**
**El Paso, Texas 79912**
**Office: (915) 585-1900      Cell: (915) 276-3225     Email: given@givencpa.com**

**More than 25 years of experience in public and industry accounting.**
- **CPA**
- **CVA**

## RecentProfessional Experience

**2005 - Present              Given CPA, PC                  El Paso, Texas**

- *Owned and operated my CPA firm specializing in small business accounting and tax services and business valuations.*
- *Assist business owners with sale of their business-merger and acquisitions specialist.*

## Membership

*Texas Society of CPA's*

*National Association of Certified Valuators and Analysts*

## Education

***Masters of Business Administration ( MBA)***
***Finance/Accounting***
University of Pennsylvania
*Wharton Graduate School*

***Bachelors of Business Administration (BBA)***
***Finance/Economics with honors***
University of Texas at Austin

# Michael H. Bray

**4866 N. Mesa Street, Suite 116**
**El Paso, Texas 79912**
**(915) 549-1770**

October 3, 2023

Michael R. Nevarez
The Nevarez Law Firm, PC
7362 Remcon Circle
El Paso, TX 79912

RE:     9328 McFall Drive, El Paso Texas

Dear Mr. Nevarez:

This report and the testimony I will provide is based on my 35 years' experience as a licensed real estate agent, concerning the duties and obligations owed by a real estate agent and broker and at issue during a real estate purchase/sale transaction, including at issue in the transaction the subject of this lawsuit. I may testify concerning the ethical and contractual obligations and duties owed by a real estate agent and broker to their clients and customers, including the disclosure of material information as to the transaction or property.

As a former member of the Broker/Lawyer Committee at the Texas Real Estate Commission, I may testify to the proper use of contract forms, to include required disclosures. As a former member of the Professional Standards Committee of the Texas Association of REALTORS and a Certified Instructor for licensing and continuing education courses, I may testify to potential violations of the REALTORS Code of Ethics and the Texas Real Estate Commission Canons of Professional Ethics.

I will testify that a broker/agent has minimum legal and contractual duties to inform the customer of any material information about the transaction received by broker/agent, and must treat all parties to a real estate transaction honestly and fairly. I will testify that a broker/agent may not have a duty to discover material facts to a property, but do have a duty to disclose any known material facts.

I will testify that GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Gabriel Mendez as Broker, and Megan Harris, purportedly the Licensed Supervisor of Listing Associate, had legal, contractual and fiduciary duties to inform all "PARTIES" of information material to the transaction or property known to Defendants (including disclosed by the seller or seller's agent).

I will testify the duties and obligations arise from i) the ethical duties required of

broker/agents in Texas ii) the facts surrounding the transaction to include the MLS listing provided Realty One Group Mendez Burk, iii) the failure to list, and provide copies of an Engineering Report completed by G-3ngineering, LLC, and the failure to follow the recommendations during the repairs which are known material facts.

I will testify that despite knowledge of this material information, they breached their duties and obligations to Mr. and Mrs. Rodriguez to inform them of this information, material to the transaction, such that Mr. and Mrs. Rodriguez would be induced to do more investigation of any hidden or concealed structural defects, and 2) stating on the Seller's Disclosure Notice that the structure was "demoed" and "rebuilt" with "every phase cleared by the city inspector, fire marshal and city engineer", thereby setting the expectation that all work was done in accordance with applicable codes and building practices. Mr. Bray will testify Defendants actions breach these obligations and duties, whether by commission, omission, or willful omission.

Sincerely,

Michael H. Bray

# Michael H. Bray
## Qualifications



*Michael H. Bray, ABR, AHWD, CPE, CSP, eCertified, GRI, TAHS,*
*Fine Homes Specialist*
*(915) 549-1770*
Mhbray1@gmail.com
*RC Properties*
*4855 N. Mesa St., Suite 116*
*El Paso, TX 79912*

**1987-Present** Texas Real Estate Salesman license #0385615

**June 2023 – present**, Commissioner – Regional Renewable Energy Advisory Commission,

**November 2021 – present**, State Bar of Texas, Grievance Committee

**2010** Texas REALTOR® Hero (For Statewide work on Affordable Housing)

**2003-2009** Texas Real Estate Commission Broker/Lawyer Committee

**2003-2019** Presiding Officer, Texas Department of Housing and Community Affairs, Manufactured Housing Board (Gubernatorial Appointment)

**2003-Present** Vice President, El Paso Housing Finance Corporation

**2007-2021** Chair, Building and Standards Commission, City of El Paso

**2010-2014** Member, Zoning Boards of Adjustments, City of El Paso

**2010 - 2016** El Paso Health Facilities Development Corporation

**2001** President, Greater El Paso Association of REALTORS®

**1999, 2000** Non-Attorney Mediator of the Year, El Paso Bar Association

**1993-2003, 2014-2015** Advisory to the Board, El Paso Builders Association

**1994-Present** Mediation Officer, Greater El Paso Association of REALTORS®

AARB-1:099

**1994-Present** Mediation Officer, Texas Association of REALTORS®

**2005-2007** Director, Texas Association of REALTORS®

**2007-2009** Regional Vice President, Texas Association of REALTORS®

**2007-2009** Executive Committee, Texas Association of REALTORS®

**2010-2013** Director, National Association of REALTORS®

**2005** Chair, Texas Association of REALTORS® Housing Initiatives Committee

**1996-Present** Legislative Liaison, Texas Association of REALTORS®

**1996-Present** Governmental Affairs Committee, Texas Association of REALTORS®

**1996-Present** Professional Standards Committee, Texas Association of REALTORS®

**2008-2011** Director, Frontera Land Alliance

Member, Architectural Preservation Committee, Texas Trost Society

Instructor, Academy of Real Estate, El Paso (Pre-licensing and Continuing Education), 25+ yrs.

Faculty Instructor, Texas REALTORS® University, Austin

Instructor, National Association of REALTORS®, At Home With Diversity

(Former) Vice President, Habitat for Humanity of El Paso

(Former) Vice President, Camino Real Association of Mediators

(Former) Board Member, Fannie Mae Border Regional Alliance

(Former) Board Member, Coalition for the Homeless

(Former) Public Relations Officer, Paso Del Norte Chapter of American MENSA

AARB-1:100

Engineering Report

# 9328 MC Fall Dr.

# El Paso, TX 79925

Prepared for

**Ms. Carol Ahearn**

**9328 MC Fall Dr.**

**El Paso, TX 79925**

August 9, 2017

Prepared by

**G-3ngineering, LLC**

1901 Arizona, Suite 205

El Paso, TX 79902

(915) 209-5141

info@g-3ng.com

TBPE F-14940

# Contents

1.0    Assignment...................................................................................................................2

2.0    Background Information .................................................................................................2

3.0    Property Description ......................................................................................................2

4.0    Observations .................................................................................................................2

5.0    Discussion.....................................................................................................................4

6.0    Conclusions ..................................................................................................................4

7.0    Qualifications ...............................................................................................................5

8.0    Closing..........................................................................................................................6

9.0    References ....................................................................................................................7

10.0   Attachment A: Figures & Photographs ........................................................................8

11.0   Attachment B: Fire marshal's report. ..........................................................................9



August 9, 2017

Ms. Carol Ahearn
9328 MC Fall Dr.
El Paso, TX 79925

RE:    **Engineering Report**
143 CIELO VISTA PARK LOT 16 (10219 SQ FT)
9328 MC Fall Dr.
El Paso, TX 79925

As requested, G-3ngineering, LLC (G-3) has completed an engineering assessment investigation at the subject property located at 9328 MC Fall Dr. in El Paso, Texas. Our findings, analysis, and conclusions are included herein.

This report contains a discussion of the information gathered during the investigation and an analysis and conclusions with respect to the condition of the subject site at the time of G-3's inspection. The conclusions contained herein are based on information available to date.

This written report is the response to your request for an engineering investigation at the property and should be read in full.



## 1.0 Assignment

G-3ngineering was contact by Mr. Miguel Chacon, representing the Owner, on July 13, 2017 to conduct an engineering assessment at the subject property (Figure 1).  Mr. Jaime Gallo, PE (G-3) examined the site on July 14, 2017.

Mr. Chacon, Mr. Salvador Hernandez, Ms. Ahearn, and an unidentified gentleman were on premises during the examinations.  The scope of this assignment was to perform a visual engineering assessment of building damage resulting from a fire event on an earlier date.

## 2.0 Background Information

Mr. Chacon indicated a recent house fire damaged the structure and the owner was evaluating the extent of the rebuilding effort.  The owner does not recall experiencing major water or sewer line breaks or other major repairs or structural modifications to the building.  The construction (record) drawings were not available for review.  As of the time of this writing, the fire marshal's report has been requested but not received.

G-3's scope of work was to perform a visual inspection and provide guidance to determine the extent of the remaining damage, structural components or members requiring replacement, and visual evaluation of the foundation.

## 3.0 Property Description

The subject property is approximately 2,500 square foot, single story residential home, conventional wood frame construction bearing on a slab on grade foundation, and a combination of wood siding and brick veneer exterior.  It is unknown if the foundation is post tensioned or conventional reinforcement.  Public records fail to indicate when the home was constructed.  By observation the construction & style is approximated to be pre-1980.  The construction is typical of the area and time period for its size and function.  The property is bounded by residential properties to the north and east; Mondwood Drive to the South & accessed via MC Fall Drive to the east (Figure 2).

The building rests on a 0.235 acre lot in a fully developed residential subdivision draining towards MC Fall Dr.  Photograph No. 1 presents a street view of the property as of July 2017.  A floor plan sketch is presented by Figure 3.

## 4.0 Observations

Observations were photographed to document damage or distress and relevant conditions at the subject property on the date of the site visit. Not all damage or distress that may be present was necessarily observed or photographed; however, the selected photographs provide an indication of their types, severity, and distribution. They may also document unusual or contributing conditions that may exist.  At the time of G-3's visit, the roof structure had been demolished and most walls had been



stripped of the interior sheathing and insulation.  Partial cleaning of the premises & emptying of all furniture & belongings had been performed by others.

Photographs taken to document our findings and observations are presented throughout this report.  The following observations were noted during the visual site examinations on July 14, 2017.  Figure 3 presents the approximate location of the photographs presented.  The labels are indicated by a leader and box, with a number corresponding to the photograph number such as:



G-3's observations initiated at the NE interior corner, Garage, and continued counterclockwise throughout the inside.  A walk around the exterior following the same basic pattern was also documented.  Below is a listing of the observed conditions; Photograph Numbers are enclosed in brackets [#]:

[2] The exterior load bearing stud wall exhibits some localized charring of stud members and the top plate.

[3] The second window's framing along the exterior north wall is significantly charred.  The exterior wall and its framing appear in sound condition.

[4] The remaining NW corner room's exterior walls exhibit minimal damage.  Some floor covering is missing but the underlying foundation does not exhibit significant fractures.

[5] The chimney's smoke damage initiates at the roof line.  No significant fire or structural damage is evident below the roof line.

[6] Remaining joists in the SW corner room are charred exhibiting some loss of cross-section.

[7] & [8] The living area interior load bearing walls and joist exhibit minimal damage.  The floor covering sustained cosmetic damage.  Exposed floor areas do not exhibit excessive fractures, spalling or other stress.

[9] Interior load bearing wall exhibits minimal damage & floor covering incomplete.

[10] The interior view looking north presents some damage to the window header and top plate.

The exterior walls were visually inspected for fractures or other indication of settlement and stresses.

[11] The exterior north wall brick veneer exhibits normal wear and without signs of movement or settlement of the foundation.

[12], [13], & [14] Exterior west wall appeared normal without significant fractures.

[15] The exterior south wall's brick veneer is in normal condition as expected for its age.



## 5.0 Discussion

The visual determination of whether structural fire damage to wood members has occurred to the extent that removal and replacement are required is generally associated with the presence of charring to such wood members[1]. All members exhibiting charring will result in a reduced cross-section and thus lowered load carrying capacity. Thus, any charred wood member and the additional adjacent sound, undamaged member shall be removed and replaced.

Additionally, darkened wood members will exhibit reduced loading capacities[2]. Darkening of wood members typically occurs at temperatures of about $392^{\circ}F$ to $572^{\circ}F$. Ignition occurs at a temperature of about $450^{\circ}F$[3]. The darkened wood members shall be carefully evaluated and considered for removal & replacement.

Bitumen impregnated fiber board has an exterior and an interior face. Both the exterior face & interior faces of the employed fiberboard appears to have received the bitumen treatment and thus resulting in some water resistance. When attached to the structure per the manufacturer recommendations it acts as a sheathing mechanism to prevent the intrusion of moisture into the framing structure and the building. It also provides some consequential insulating qualities. A layer of brick veneer, wood siding or similar is then fastened to complete the building envelope.

The back of the board, or interior face, appears to have water-resistant qualities. During the firefighting operations, it is typical for significant amounts of water to come into contact with this fiber board sheathing. The introduction of moisture into this material results in warping, expansion, loss of integrity, pulling from the fasteners and other unfavorable functional damage. Such damage was not apparent throughout the remaining structure. Localized perforations were noted near the roof line where fire fighters were seeking access to battle the fire and these localized areas shall be patched.

Photographs No. 11-15 present the observed condition of the exterior walls. While the load bearing function is provided primarily by the wood stud framing, the brick veneer serves to complete the building envelope and provide an aesthetic finish. Other common systems are stucco, siding, Exterior Insulation and Finish System (EIFS). Unlike these systems, brick veneer tends to be the least forgiving to foundation settlement conditions since it clearly exhibits fractures along its grout lines. Other indications of foundation settlement are uneven floor slopes, new and clean fractures on the surface, and differential settlement of the structure against adjacent sidewalks and rockwalls. Our visual inspections did not reveal such indicators.

## 6.0 Conclusions

By the guideline presented in the Discussion and as recommended by R. S. Amin in "Structural Appraisals for Fire Damaged Buildings,", the members shown in Photographs No 2 through 6 in addition to the adjacent stud or joist on each side not exhibiting damage shall be removed and replaced. Any other members observed during the re-construction exhibiting similar charring shall be re removed & replaced. Since the roof structure has been removed, replacing these members shall require minimal shoring.



In its current condition, the exterior unloaded walls should be easily accessed from the inside and any charred wood members can be replaced with relative ease. Similarly, exterior doors, door frames, and windows that have been dislodged, exhibit water damage, or charring should be removed and replaced.

The chimney will likely require a complete removal and replacement from approximately two feet below the roofline to the top. The lower portion may remain in place as-is however its condition should be re-evaluated as demolition is progressed.

Typically fires initiate within a wall or the ceiling and the fire rises to the ceiling and adjacent members. Rarely does fire cause damage to floor slab or foundation. In areas of known expansive soils, the intrusion & puddling of water resulting from the firefighting operations may exacerbate pre-existing differential settlement conditions. The floor damage observed throughout this property is cosmetic and will not impede its functional capacity. At the time of our visit and limited visual observations, there is no indication of foundation damage or failure.

The foundation and floor slab appear in sound condition and capable to sustain the load bearing of a single story wood frame structure. Erection of a multi-story structure or walls of other construction materials such as concrete masonry unit (CMU) would require further analysis beyond the scope of this report.

The remaining walls and framing observed at the time of G-3's visit appears in sound condition and capable to sustain the load bearing of a typical roof structure with minor localized repairs and following conventional framing practice as dictated by the latest International Building Code (IBC).

It is recommenced the removal, replacement, or repair activities be conducted with the oversight of a structural engineer or experienced construction professional to ensure proper shoring and temporary supports. Furthermore, the repair or replacement of the structural members shall be completed with equal or better materials.

## 7.0 Qualifications

The information presented in this report addressed the limited objectives related to the evaluation of the subject property. This report only describes the conditions present at the time of our evaluation. It is not intended to fully delineate or document every defect or deficiency throughout the subject property. If any additional information is encountered which relates to this evaluation, G-3 reserves the right to alter the opinions presented in this report. In some cases, additional studies to include destructive testing may be warranted to fully evaluate concerns noted.

Our services have been performed using that degree of skill and care ordinarily exercised under similar conditions by reputable members of G-3's profession practicing in the same or similar locality at the time of performance.

Any verbal statements made before, during, or after the course of the investigation were made as a courtesy only and are not considered a part of this report.



## 8.0 Closing

G-3ngineering, LLC appreciates the opportunity to offer our consulting services. Please do not hesitate to contact us should you require additional information.

Sincerely,
G-3ngineering, LLC

Jaime Gallo, PE, CCM

Texas Board of Professional Engineering F-14940
Texas Board of Professional Land Surveying F- 10194079



## 9.0 References

1. Amin, R. S. "Structural Appraisals for Fire Damaged Buildings," accessed August 5, 2016. http://keu92.org/uploads/Search%20engineering/STRUCTURAL%20APPRAISAL%20FOR%20FIRE.pdf

2. "Guide for Fire and Explosion Investigations." National Fire Protection Association (NFPA) 921, 2004.

3. Noon, R. K. *Forensic Engineering Investigation*. New York: CRC Press, 2001.



## 10.0 Attachment A: Figures & Photographs



## List of Figures

Figure 1. Location Map. ................................................................................................. 13

Figure 2. Property Description. ...................................................................................... 13

Figure 3 Approximate initiation of fire (indicated by red star). .................................... 15

## List of Photographs

Photograph No. 1 9328 MC Fall Dr. street view July 18, 2017. ..................................... 14

Photograph No. 2 Garage exterior bearing wall stud damage. ..................................... 16

Photograph No. 3 Exterior bearing wall stud and window frame damage. ................... 17

Photograph No. 4 Exterior bearing wall minimal damage & floor covering damage. ..... 18

Photograph No. 5 Chimney smoke damage. .................................................................. 19

Photograph No. 6 Charred joist. .................................................................................... 20

Photograph No. 7 Living area interior load bearing wall and joist exhibit minimal damage and floor covering cosmetic damage. ................................................................ 21

Photograph No. 8 Exterior front load bearing wall minimal damage & floor cosmetic damage. ............. 22

Photograph No. 9 Interior load bearing wall minimal damage & floor covering damage. ....................... 23

Photograph No. 10 Interior view, looking North. .......................................................... 24

Photograph No. 11 Exterior wall façade exhibits normal wear & no signs of settlement against foundation. ...................................................................................... 25

Photograph No. 12 Exterior brick façade in normal condition, no indication of settlement. .................... 26

Photograph No. 13 Rear exterior wall looking east, no signs of significant fractures. ............................. 27

Photograph No. 14 Exterior SW corner. ........................................................................ 28

Photograph No. 15 Exterior south wall normal brick veneer condition. ...................... 29





**Figure 1. Location Map.**



**Figure 2. Property Description.**





**Photograph No. 1 9328 MC Fall Dr. street view July 18, 2017.**



**Figure 3 Approximate initiation of fire (indicated by red star).**





Photograph No. 2 Garage exterior bearing wall stud damage.





Photograph No. 3 Exterior bearing wall stud and window frame damage.





**Photograph No. 4 Exterior bearing wall minimal damage & floor covering damage.**





**Photograph No. 5 Chimney smoke damage.**

AARB-1:118



**Photograph No. 6 Charred joist.**





**Photograph No. 7 Living area interior load bearing wall and joist exhibit minimal damage and floor covering cosmetic damage.**





**Photograph No. 8 Exterior front load bearing wall minimal damage & floor cosmetic damage.**



**Photograph No. 9 Interior load bearing wall minimal damage & floor covering damage.**





**Photograph No. 10 Interior view, looking North.**





**Photograph No. 11 Exterior wall façade exhibits normal wear & no signs of settlement against foundation.**





**Photograph No. 12 Exterior brick façade in normal condition, no indication of settlement.**





**Photograph No. 13 Rear exterior wall looking east, no signs of significant fractures.**





**Photograph No. 14 Exterior SW corner.**





**Photograph No. 15 Exterior south wall normal brick veneer condition.**



## 11.0 Attachment B: Fire marshal's report.

NOT AVAILABLE AT THE TIME OF PUBLICATION.



END OF REPORT

(This page intentionally left blank)



# NEW PROPOSED RESIDENCE

## Mcfall Residence

### OWNER NAME : MR. CHACON
### ADDRESS : 9328 MCFALL DR.
### EL PASO, TEXAS 79925



**MCFALL RESIDENCE**

VICINITY MAP
SCALE: 1/32" = 1'-0"





PROARQ
DRAFTER & DESIGN STUDIO
801 MYRTLE AVE., SUITE "102", EL PASO TX.79902
(915) 256-5573, proarq777@att.net

INDEX OF DRAWINGS

PROJECT No: 17-027

ARCHITECTURAL

| | |
|---|---|
| COVER SHEET | G.0 |
| SITE PLAN AND GENERAL NOTES | A.0 |
| FLOOR PLAN, FINISH SCHEDULE & DETAILS | A.1 |
| EXT. ELEVATIONS, ROOF PLAN AND DETAILS | A.2 |
| INT. ELEVATIONS, DETAILS PLAN | A.3 |
| FRAMING ROOF PLAN, MECHANIC & TYPICAL SECTION | A.4 |
| FOUNDATION & DETAILS PLAN | A.5 |



NAME PROJECT

# MCFALL RESIDENCE

OWNER NAME : Mr. CHACON

ADDRESS : 9328 MCFALL DR.
EL PASO, TEXAS 79925

## SITE PLAN (1)

EXISTING ROCKWALL 89.89'
N06°38'29"W

LOT 16, BLOCK 143

NEW ADDITION:
116.59 SQ.FT.

EXISTING CONCRETE DRIVEWAY

EXISTING AREA TO REMAIN

EXISTING ROCKWALL

25' SETBACK LINE

EXISTING CONCRETE DRIVEWAY

10' UTILITY EASEMENT

5' UTILITY EASEMENT

EXISTING ROCKWALL H=2'-0"

22'-8"
7'-3"
23'-6"
15'-5"
32'-10"
29'-4"
32'-9"
37'-4"

**RECOMMENDED:**
FINISH FLOOR OF BUILDING SHALL BE 1'-0" ABOVE ELEVATION OF EXISTING PROPERTY STREET.



**1  SITE PLAN**
SCALE: 1/8" = 1'-0"

## PROJECT DATA

| | |
|---|---|
| OCCUPANCY | RESIDENTIAL |
| ZONING | R-4 SINGLE FAMILY |
| | MIN FRONT 10' |
| | REAR YARD 10' |
| | MIN CUMULATIVE FRONT & REAR 45' |
| | MIN SIDE YARD 5' |
| EXIST. FRONT PORCH | 240.27 SQ FT |
| NEW REAR PORCH | 95.48 SQ FT |
| EXIST- GARAGE | 379.26 SQ.FT. |
| EXIST LIVING AREA | 2,520.65 SQ FT |
| NEW ADD LIVING AREA | 116.59 SQ.FT. |
| TOTAL LIVING AREA | 2,637.24 SQ FT |

LEGAL DESCRIPTION
143 CIELO VISTA PARK, LOT 16
PID: C51899914303100

BUILDING ADDRESS
9328 MCFALL DR.
EL PASO, TEXAS 79925

## IMAGE SITE PLAN



N06°38'29"W  89.89'

LOT 17

LOT 18

LOT 16, BLOCK 143

9328 Mc FALL Drive

Mc FALL DRIVE
60' R.O.W.

SCALE: 1"=20'

COPYRIGHT © 2017 CAD CONSULTING CO. ALL RIGHTS RESERVED

CERTIFICATION

CARLOS M. JIMENEZ
R.P.L.S. No. 3930

CD CONSULTING COMPANY
EL PASO, TEXAS
(915) 633-6422

**NOTE:**
THIS SURVEY WAS PROPORTIONATE FOR CAD CONSULTING COMPAY

**2  IMAGE SITE PLAN**
SCALE: NOT TO SCALE

## GENERAL NOTES:

1. CONTRACTOR SHALL VERIFY ALL EXISTING CONDITIONS OF CONSTRUCTION AND NOTIFY THE ARCHITECT OR OWNER OF ANY OUTSTANDING DISCREPANCIES WHICH COULD IMPACT CONSTRUCTION COST, MEANS AND OR SCHEDULE.

2. THE CONTRACTOR SHALL VERIFY ALL DIMENSIONS OF ANY EXISTING AND NEW WORK AND SHALL BE RESPONSIBLE FOR THEIR ACCURACY, ANY DIFFERENCES FOUND SHALL BE SUBMITTED TO CONTRACTOR FOR CONSIDERATION BEFORE PROCEEDING WITH THE WORK.

3. THE CONTRACTOR SHALL BE SOLELY RESPONSIBLE FOR COORDINATION AND SCHEDULING OF CONSTRUCTION WORK, PROVISION AND CONTROL OF ALL MEANS AND METHODS OF CONSTRUCTION, FIRE PREVENTION, COORDINATION, ORDERING, DELIVERY AND STORAGE OF MATERIALS, REMOVAL OF DEBRIS AND ALL ASPECTS OF JOB SAFETY.

4. THE CONTRACTOR SHALL VERIFY WITH OWNER REPRESENTATIVE THE NEED FOR DUST CONTAINMENT BARRIERS AT CONSTRUCTION / DEMOLITION OF GYPSUM BOARD WALL SYSTEMS.

5. MAKE THE NECESSARY ARRANGEMENTS WITH THE OWNER TO VISIT THE SITE PRIOR TO SUBMITTING A PROPOSAL. EXAMINE THE EXISTING SITE AND FACILITIES, FIELD VERIFY ALL CONDITIONS, SUBMISSIONS OF A PROPOSAL SHALL BE TAKEN AS EVIDENCE THAT THE CONTRACTOR HAS PHYSICALLY INSPECTED THE SITE AND MADE HIMSELF FAMILIAR WITH, AND UNDERSTANDS THE REQUIRED SCOPE OF WORK. REPORT ALL DISCREPANCIES TO THE OWNER FOR CLARIFICATION BEFORE PROCEEDING WITH THE WORK.

6. ANY PROBLEMS DURING THE PROCESS OF CONSTRUCTION THAT CANNOT BE SOLVED BY THE CONTRACTOR OR SPECIAL CONTRACTOR (PLUMBING, ELECTRICAL OR MECHANICAL) PLEASE CALL THE DESIGNER IN ORDER TO FIND A SOLUTION TOGETHER.

## KEYNOTES:

**I. PRE-CONSTRUCTION**
APPLICABLE CODE REQUIREMENTS MAY VARY ALONG WITH CONSTRUCTION STANDARDS AND TECHNIQUES. CONSULT WITH LOCAL AUTHORITIES AND EXPERIENCED PEOPLE IN BUILDING TRADES BEFORE STARTING CONSTRUCTION. DO NOT SCALE DRAWINGS, VERIFY ALL DIMENSIONS BEFORE PROCEEDING WITH WORK. "N.T.S." DENOTES NOT TO SCALE.

**II DESIGN LOADS**
FLOOR: 40 p.s.f. LIVE LOAD    ROOF: 30 p.s.f. LIVE LOAD    MAXIMUM ALLOWABLE
10 p.s.f. DEAD LOAD    10 p.s.f. DEAD LOAD    SOIL PRESSURE= p.s.f.

**III CONCRETE**
UNLESS OTHERWISE NOTED, ALL SLAB ON GRADE SHALL BE 3000 p.s.i. (28 DAY COMPRESSIVE STRENGTH) CONCRETE ON 4" SAND OR GRAVEL FILL MINIMUM WITH 6x6-W1.4xW1.4 W.W.M. REINFORCING. INTERIOR SLABS SHALL BE PLACED ON 6 MIL STABILIZED POLYETHERINE VAPOR BARRIER.

PROVIDE ½" EXPANSION JOINT MATERIAL BETWEEN ALL CONCRETE SLABS ON ABUTTING CONCRETE OF MASONRY WALLS OCCURRING IN EXTERIOR OR UNHEATED INTERIOR AREAS.

PLACED ½" DIAMETER x 12" SILL PLATE ANCHOR BOLTS AT EACH VERTICAL REBAR (WHERE OCCURRING) OR AT 4'-0" ON CENTER AND AT EACH CORNER AND BOTH SIDES OF OPENINGS.

CONTRACTOR TO BE RESPONSIBLE FOR SIZE, LOCATION, AND INSTALLATION OF REQUIRED STEEL REINFORCING IN FOOTINGS AND WALL PER LOCAL CODES OR SPECIFIC SOIL CONDITIONS; WHICHEVER IS MORE.

FOOTING SIZES SHOWN ARE ONLY TYPICAL FOR STATED SOIL PRESSURES AND CONSISTENT COMPACTION WHICHEVER IS MORE RESTRICTIVE.

CONTRACTOR TO VERIFY FOOTINGS DEPTHS WITH LOCAL FROST REQUIREMENTS OR EXISTING SOIL CONDITIONS; WHICHEVER IS MORE RESTRICTIVE.

PROVIDE TERMITE PROTECTION AS REQUIRED BY LOCAL CODES.

PROVIDE DEEP SCORE CONTROL JOINTS AT MID POINTS OF ALL GARAGES, BOTH DIRECTIONS.

**IV CARPENTRY**
UNLESS OTHERWISE NOTED, MINIMUM FRAMING LUMBER SHALL BE HEM-FIR No. 2 CONSTRUCTION GRADE. BEAMS, HEADERS AND FLOOR JOISTS SHALL HAVE AN ALLOWABLE BENDING STRESS OF 1,200 p.s.i. ALL HEADERS SHALL BE FREE FROM ALL SPILLS, CHECKS OR SHAKES.
UNLESS OTHERWISE NOTED, PROVIDE:
1. DOUBLE HEADER JOIST AND TRIMMERS AT ALL FLOOR OPENINGS.
2. DOUBLE JOISTS UNDER ALL PARALLEL PARTITIONS.
3. DOUBLE 2"X12" HEADERS (WITH ½" PLYWOOD BETWEEN) FOR ALL EXTERIOR OPENINGS AND THOSE IN LOAD BEARING WALLS. (UNLESS OTHERWISE NOTED ON PLAN)
4. TWO ROWS OF 1"x3" CROSS BRIDGING OR METAL BRIDGING PER JOISTS SPAN.
5. FLOOR CONSTRUCTION: ½" PLYWOOD UNDER ⅝" UNDERLAYMENT w/ BUILDING PAPER BETWEEN. (OPTIONAL ¾" TOUNGE AND GROOVE.)

ALL WOOD PLATES IN CONTACT WITH CONCRETE TO BE "PRESSURE TREADED".

UNLESS NOTED OTHERWISE, RAFTERS, CEILING JOISTS, COLLAR TIES AND PURLINS TO BE SIZED AND SPACED IN ACCORDANCE WITH GOVERNING CODES.

ROOF AND FLOOR TRUSSES LAYOUT IS SCHEMATIC ONLY. TRUSS DESIGN INCLUDING SPACING SHALL BE DETERMINED BY TRUSS MANUFACTURE / ENGINEER.

"MICRO-LAM" MANUFACTURED BY TRUSS JOIST CORPORATION OR EQUAL. BENDING STRESS fb=2,800 p.s.i. THIS PRODUCT IS MANUFACTURED GLUE-LAMINATED WOOD PRODUCT WITH SMALL LAMINATION SIMILAR TO PLYWOOD. CHECK WITH YOUR LOCAL TRUSS MANUFACTURE FOR LOCAL AVAILABILITY.

SPECIAL UPLIFT CONNECTORS AS INDICATED AT CANTILEVERED JOISTS ARE TO BE (OR EQUAL TO ) "SIMPSON STRONG-TIE" ANCHORS.

EXTERIOR FLASHING TO BE CORRECTLY INSTALLED AT ALL CONNECTIONS BETWEEN ROOF, WALLS, FIREPLACE, AND PROJECTIONS OR PENETRATIONS AS REQUIRED BY GOOD COMMON CONSTRUCTION PRACTICES.

CONTRACTOR TO PROVIDE ADEQUATE ATTIC VENTILATION / ROOF VENTS / ON ROOF PER LOCAL GOVERNING CODE. INSTALL CONTINUOUS RIDGE VENTILATION AND PAINT TO MATCH ROOF. PROVIDE APPROPRIATE SOFFIT VENTILATION AT OVERHANGS.

V INSULATION, GYPSUM BOARD AND FINISHES PROVIDE R-11 BATT INSULATION IN ALL WALLS AND R-30 (MINIMUM) BLOWN INSULATION (OR BATT AND BLOW COMBINATION) IN ALL CEILINGS, FLOORS, AND RAFTERS ADJACENT TO THE EXTERIOR OR UNHEATED SPACES.

INSTALL SIDE WALL AND CEILING INSULATION IN CONTINUOUS BLANKETS WITHOUT HOLES FOR ELECTRICAL BOXES AND LIGHT FIXTURES OR HEATING DUCTWORK, CAULK ALL OPENINGS IN EXTERIOR WALL CONSTRUCTION.

INSTALL 6 MIL POLYETHYLENE VAPOR BARRIERS AGAINST INSIDE OF ALL INSULATION. LAP 18" MINIMUM TAPE IF LESS.

EXTERIOR WALL SHEATING: 1" EXTRUDED FOAM BOARDS WITH 1/2"x48" WIDE C-D EXT. PLYWOOD BOTH DIRECTIONS AT ALL CORNERS. (MINIMUM R-5)

ALL INTERIOR WALLS ARE TO COVERED WITH 1/2" GYPSUM BOARD, WITH METAL CORNER REINFORCING, TAPE, FLOAT AND SAND. (3 COATS) USE 5/8" GYPSUM BOARD ON CEILINGS WHEN SUPPORTING MEMBERS ARE 24" ON CENTER OR GRATER. USE 1/2" GYPSUM BOARD ON CEILINGS WHEN SUPPORTING MEMBERS ARE LESS THAN 24" ON CENTER FINISH AS NOTED ABOVE.

GARAGE WALLS AND CEILINGS COMMON TO HOUSE ARE TO BE COVERED WITH ONE LAYER 5/8" TYPE "X" GYPSUM BOARD.

USE WATER RESISTANT GYPSUM BOARD FOR WALLS AND CEILING IN ALL BATH AND TOILET AREAS.

INTERIOR TRIM AND FINISHES TO BE SELECTED BY OWNER.

MISCELLANEOUS ALL CLOSET SHELVING TO BE PREFABRICATED, PREFINISHED METAL WITH PROTECTIVE VINYL COATING. (UNLESS OTHERWISE SPECIFIED BY OWNER.)

ANY REFERENCES TO A SPECIFIC BRAND OR MANUFACTURER IS AT THE REQUEST OF THE BUILDER.

PLAN AND / OR ELEVATION CHANGES MAY HAVE BEEN MADE FROM THE PRELIMINARY PLAN THAT APPEARED IN THE PUBLICATION.

I FEEL THESE CHANGES ENHANCE THE CHARACTER AND VALUE OF THE HOME.

IMPORTANT NOTE:
ANY REPRODUCTION OF THESE PRINTS IS PROHIBITED BY FEDERAL COPYRIGHT LAWS AND ILLEGAL REPRODUCTION WILL BE AGGRESSIVELY PURSUED TO THE FULLEST EXTENT OF THE COPYRIGHT LAW.

REVISIONS:
DATE:

PROARQ
PROJECT No.: 17-027
DESIGNED: CHAVEZ
DATE: 09-20-2017
SCALE: AS NOTED

SHEET TITLE:
SITE PLAN
FLOOR PLAN

AARB-1:132

# FLOOR PLAN
SCALE: 1/4" = 1'-0"

## ELECTRIC KEY NOTES

1. ALL OUTLETS AT VANITIES AND COUNTERS TO BE @ 42" A.F.F.
2. PROVIDE 110V UNDER COUNTER OUTLET FOR DISHWASHER AND GARBAGE DISPOSAL.
3. PROVIDE OUTLET AT 60" A.F.F. FOR RANGE HOOD.
4. ALL EXTERIOR LIGHT FIXTURES AND OUTLETS TO BE WEATHERPROOF.
5. ELECTRICIAN TO SIZE AND LOCATE PANEL AND SERVICE.
6. ELECTRICIAN TO PROVIDE POWER TO AC UNITS.
7. ALL OUTLETS IN THE KITCHEN, BATHROOMS, UTILITY ROOM AND GARAGE TO BE G.F.C.I.
8. MATERIAL AND CONSTRUCTION SHALL CONFORM WITH THE LATEST NATIONAL ELECTRICAL CODE, LOCAL POWER COMPANY AND GOVERNING AUTHORITIES.
9. MATERIAL SHALL BE IN ACCORDANCE WITH THE STANDARDS OF THE NATIONAL ELECTRICAL MANUFACTURES ASSOCIATION AND SHALL BE NEW AND U.L. LABELED.
10. ELECTRICAL CONTRACTOR TO COORDINATE AND VERIFY WITH THE MECHANICAL AND PLUMBING CONTRACTOR THE LOCATION AND PUMPS, T-STATS, INTERLOCK WIRING, ETC.
11. VERIFY ALL LOCATIONS OF ELECTRICAL EQUIPMENT WITH OTHER TRADES TO AVOID CONFLICTS AND INTERFERENCES.

## ELECTRICAL PLAN LEGEND

- 110V POLARIZED GROUNDED OUTLET
- 220V 220V OUTLET (COORDINATE APPLIANCE TYPE WITH HOME OWNER)
- GFCI GROUND FAULT CIRCUIT INTERRUPTOR (PROTECTED BY..)
- GROUND FAULT CIRCUIT INTERRUPTOR (PROTECTED BY..) IN WEATHER PROOF ENCLOSURE
- W.P. / GFCI
- – 120 VOLT QUAD FLOOR RECEP.
- LIGHT FIXTURE
- WALL MOUNT LIGHT FIXTURE
- CEILING FAN W/ LIGHT
- RECESSED LIGHT ( SIZE AND STYLE AS PER BUILDER'S SELECTION)
- SWITCH
- 3 3-WAY WITCH
- G GARAGE DOOR OPENER
- SD SMOKE DETECTOR/ALARM (ALL INTER-CONNECTED AS CODE REQUIREMENTS)
- SD/COD SMOKE DETECTOR/CARBON MOXIDE DETECTOR COMBO (ALL INTER-CONNECTED AS CODE REQUIREMENTS)
- EXHAUST FAN MIN. 50 CFM EXHAUSTED TDIRECTLY O THE OUTSIDE REF: R303.3 EXCEPTION
- CA/TV CABLE T.V JACK
- TV
- GAS GAS HOOK UP LOCATION
- LIGHT FIXTURE
- WALL MOUNT LIGHT FIXTURE
- JACUZZI MOTOR JACUZZI
- W.P. ROOF MOUNTED
- FLOOD LIGHT
- TELEPHONE OUTLET BOX
- DOOR BELL
- DOOR BELL CHIME BOX
- T THERMOSTAT
- MS MOTION SENSOR
- SL CEILING SPOT LIGHT
- 2'X4' FLUORESCENT LIGHT FIXTURE
- RECESSED LIGHT
- CP CONTROL PANEL
- RECESSED PUCK LIGHT
- NEW WALLS
- EXISTING WALLS

## WINDOW & DOOR DETAILS
SCALE: 3/16" = 1'-0"

## DR/WDW. JAM DETAIL
SCALE: NTS

## WALL TYPES
- EXIST 2"X6" WOOD STUDS AT 16" O.C. W/ 1/2" GYP. BD. TAPE, BED, TEXTURE AND PAINT AS SELECTED BY OWNER. (PROVIDE CEMENT BOARD AT ALL WET & TILE WALLS.)
- NEW 2"X6" WOOD STUDS AT 16" O.C. W/ 1/2" GYP. BD. TAPE, BED, TEXTURE AND PAINT AS SELECTED BY OWNER. (PROVIDE CEMENT BOARD AT ALL WET & TILE WALLS.)

## DOOR SCHEDULE (TYPICAL)

| NO. | DOOR SIZE | TYPE | DOOR MATERIAL / FINISH | FRAME MATERIAL / FINISH | DOORS REMARKS |
|---|---|---|---|---|---|
| 1 | 2'-3"-0" x 7'-0" x 1-3/4" | D1 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR |
| 2 | 2'-8" x 6'-8" x 1-3/4" | D2 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR |
| 3 | 2'-0" x 6'-8" x 1-3/4" | D3 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR |
| 4 | 2'-2"-0" x 6'-8" x 1-3/4" | D4 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR |
| 5 | 2'-3" x 6'-8" x 1-3/4" | D5 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR (2 SLIDING DOOR) |
| 6 | 2'-4" x 6'-8" x 1-3/4" | D6 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR |
| 7 | 2'-3"-0" x 7'-0" x 1-3/4" | D7 | WOOD / PAINTED | WOOD / PAINTED | NEW SLIDE DOOR |
| 8 | 3'-0" x 7'-0" x 1-3/4" | D8 | WOOD / PAINTED | WOOD / PAINTED | NEW DOOR SOLID-WOOD SELF-CLOSING DOOR |
| 9 | | D9 | | | |

## WINDOWS SCHEDULE (TYPICAL)

| NO. | WINDOW SIZE | UNIT. | WINDOW GLASS | FRAME MATERIAL/FINISH |
|---|---|---|---|---|
| W-1 | 5'-0" x 5'-0" (EXISTING) | 3 | ENERGY-EFFICENT 11/16" DUAL PANE GLASS | VINYL DOUBLE PANE DOUBLE STRENGTH EGRESS SLIDING WINDOW |
| W-2 | 6'-0" x 4'-0" (EXISTING) | 3 | ENERGY-EFFICENT 11/16" DUAL PANE GLASS | VINYL DOUBLE PANE DOUBLE STRENGTH EGRESS SLIDING WINDOW |
| W-3 | 3'-0" x 3'-0" (EXISTING) | 3 | ENERGY-EFFICENT 11/16" DUAL PANE GLASS | PICTURE WINDOW (SEE FRONT ELEVATION) |
| W-4 | 3'-0" x 3'-0" (EXISTING) | 4 | ENERGY-EFFICENT 11/16" DUAL PANE GLASS | VINYL DOUBLE PANE DOUBLE STRENGTH EGRESS SLIDING WINDOW |
| W-5 | 5'-0" x 3'-0" (EXISTING) | 1 | ENERGY-EFFICENT 11/16" DUAL PANE GLASS | PICTURE WINDOW (SEE FRONT ELEVATION) |
| W-6 | 3'-0" x 2'-0" (EXISTING) | 2 | OBS/SAFETY-GLASS | ALUMINUM SINGLE HUNG WINDOW |

## ROOM FINISH SCHEDULE

| NO. | ROOM NAME | FLR | BASE | WALLS FINISH NORTH | SOUTH | EAST | WEST | CLG | CLG. HT. | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|
| 100 | LIVING ROOM | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | — | W-1/1-B | C-1 | 10'-0" | |
| 110 | DINNING ROOM | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | — | C-1 | 10'-0" | |
| 120 | KITCHEN | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | — | W-1/1-A | C-1 | 8'-0" | |
| 130 | BREAKFAST ROOM | F-1 | 2 1/2"WOOD | W-1/1-A | — | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 140 | MASTER BEDROOM | F-2 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 150 | MASTER BATHROOM | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | CERAMIC IN AREA OF SHOWER |
| 160 | W.I.C. MASTER B-ROOM | F-2 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-3/1-A | C-1 | 10'-0" | |
| 170 | BATHROOM 2 | F-2 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-3/1-A | W-1/1-A | C-1 | 10'-0" | CERAMIC IN AREA OF SHOWER |
| 180 | BEDROOM 1 | F-2 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 190 | BEDROOM 2 | F-2 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 200 | HALLWAY | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 210 | UTILITY AREA | — | | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 8'-0" | PLATFORM TO BE RAISED 18" A.F.F. |
| 220 | BEDROOM 3 | F-2 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 230 | BATHROOM 3 | F-1 | 2 1/2"WOOD | W-1/1-A | W-3/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | CERAMIC IN AREA OF SHOWER |
| 240 | LAUNDRY AREA | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 250 | THEATER ROOM | F-1 | 2 1/2"WOOD | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | 10'-0" | |
| 260 | GARAGE | F-3 | | — | — | — | — | C-1 | 10'-0" | |
| 270 | FRONT & REAR PORCH | F-3 | | W-1/1-A | W-1/1-A | W-1/1-A | W-1/1-A | C-1 | | SEE ELEVATIONS IN A.2 |
| 280 | | | | | | | | | | |
| 290 | | | | | | | | | | |

## FINISH KEY

| FLOOR MATERIAL | | WALL MATERIAL | | CEILING MATERIAL | |
|---|---|---|---|---|---|
| F-1 | CERAMIC TILE | W-1 | SEMI-GLOSS PAINTED | C-1 | GYP. / PAINTED |
| F-2 | CARPET | W-2 | GYP. BD. / PAINTED | C-2 | |
| F-3 | POLISHED CONCRETE | W-3 | HALF SEMI-GLOSS PAINTED/ TILE | C-3 | |
| F-4 | – | | | | |

WALLS COLOR PROPOSED

| INTERIORS COLOR PROPOSED | | | | EXTERIORS COLOR PROPOSED | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| OPTIONS | BASE COLOR | OPTIONS | CONTRAST COLOR | OPTIONS | BASE COLOR | OPTIONS | MOLDING ROOF COLOR | OPTIONS | DECORATIVE MOLDING COLOR |
| 1-A | CRUMB COOKIE C20-1 | 1-B | CREAMY WHITE A10-1 | 1-C | DRIFTING DUNE D21-2 | 1-D | STONINGTON D14-3 | 1-E | EARL GRAY D18-4 |
| 2-A | HORSERADISH C15-1 | 2-B | ANTIQUE WHITE D10-4 | 2-C | ADOBE WHITE C14-1 | 2-D | HITCHING POST C22-4 | 2-E | PONY TAIL C15-3 |
| 3-A | DELICATE WHITE D40-1 | 3-B | WHITE SMOKE C10-1 | 3-C | GREEN TEA LEAF D67-4 | 3-D | DUSTY TRAIL D13-3 | 3-E | COUNTRY BEIGE D18-1 |

NOTE: ALL PAINTINGS ARE OLYMPIC BRAND, OR SIMILAR.

NAME PROJECT
MCFALL RESIDENCE
OWNER NAME : MR. CHACON
ADDRESS : 932B MCFALL DR.
EL PASO, TEXAS 79925

PROARQ

SHEET TITLE
FLOOR PLAN
FINISH SCHEDULE
& DETAIL PLAN

IMPORTANT NOTE
ANY REPRODUCTION OF THESE PRINTES IS PROHIBITED BY FEDERAL COPYRIGHT LAWS ANY UNAUTHORIZED REPRODUCTION WILL BE ACCORDINGLY PURSUED TO THE FULLEST EXTENT OF THE COPYRIGHT LAW.

INFORMATION
SCALE: AS NOTED
PROJECT NO. 17-027
DESIGNED: CHAVEZ

DATE: 08-20-2017



AARB-1:133



**A.2**

SHEET
3 OF 6

**6 FRONT ELEVATION**
SCALE: 3/16" = 1'-0"

**7 LEFT ELEVATION**
SCALE: 3/16" = 1'-0"

**8 REAR ELEVATION**
SCALE: 3/16" = 1'-0"

**9 RIGHT ELEVATION**
SCALE: 3/16" = 1'-0"

**10 TYPICAL SECTION WALL**
SCALE: 1/4" = 1'-0"

**11 TYPICAL SECTION WALL**
SCALE: NTS

**12 COLUMN DETAIL**
SCALE: 1/2" = 1'-0"

**13 ROOF PLAN**
SCALE: 1/8" = 1'-0"

NAME PROJECT
**MCFALL RESIDENCE**
OWNER NAME : MR. CHACON

ADDRESS : 9328 MCFALL DR.
EL PASO, TEXAS 79925

Labels in Front Elevation: SHINGLE ROOF, WOOD SIDING TO MATCH EXISTING, TOP ROOF, CEILING LINE, HEADER LINE, F.F. LINE, EXISTING BRICK, POLYURETHANE DECORATIVE MOLDING

Labels in Left Elevation: WOOD SIDING TO MATCH EXISTING, SHINGLE ROOF, ROOF GUTTER, TO MATCH EXISTING BRICK WHEN CLOSING OPENINGS, EXISTING BRICK, 3 COAT STUCCO SYSTEM COLOR SELECT BY OWNER

Labels in Rear Elevation: PROPOSED CANTILEVER PERGOLA 4X4 WOOD, SHINGLE ROOF, WOOD SIDING TO MATCH EXISTING, 3 COAT STUCCO SYSTEM COLOR SELECT BY OWNER, TO MATCH EXISTING BRICK WHEN CLOSING OPENINGS, POLYURETHANE DECORATIVE MOLDING

Labels in Right Elevation: 3" 12", SHINGLE ROOF, WOOD SIDING TO MATCH EXISTING, ROOF GUTTER, EXISTING BRICK, TO MATCH EXISTING BRICK WHEN CLOSING OPENINGS

Typical Section Wall (10): 12", 3", SHINGLE, 5/8" PLYWOOD ROOF, SEE FRAMING ROOF PLAN, R 30 INSULATION, 1/2" DRYWALL, DBL. 2x6 PL. TOP PLATE, VENTED SOFFIT, SOLID BLOCKING, R 3.5 R BOARD FIBERGLASS OR EQUAL, 1/2" DRY WALL BOARD OR APPROVED THERMAL BARRIER, R -15, 3/4" 3-COAT STUCCO ON MTL. LATH. 1/2"EXT.SHEATING W/ELASTOMERIC STUCCO FINISH, PRESSURE TREATED WOOD BASE 2 X6, 1/2" o X 10" ANCHOR BOLT @ 48" O.C. MAX., SEE FOUNDATION PLAN

Typical Section Wall (11): ASPHALT-IMPREGNATED ROOFING FELT, 1/2" PLYWOOD W/8D NAILS AT EVERY 6", 12"OVERHANG, SHINGLE ROOF, 3/8" ROOF SHEATHING, ROOFING FELT, PRE-FAB WOOD TRUSS, R-30 BATT. INSULATION, BAFFLE TO CONTAIN & COMPRESS INSULATION WHERE SCREENED VENTS OCCUR, GALV. DRIP EDGE W/ SPACER, 2"x4" SUB-FASCIA, FASCIA, VENTED SOFFIT, 2-2"X6" DOUBLE PLATE, R-15 BATT. INSULATION, 1/2" WAFER BOARD W/8d NAILS @ 3", IMPREGNATED SHEATHING, 2"x6" BLOCKING 8'-0" H., 2"x6" STUD @ 16" O.C., 1/2" GYPSUM BOARD, SLOPE 12/3

Column Detail (12): 6"X 6" TYPICAL WOOD COLUMN, DECO BOX, METAL "U" WITH 3" ANCHOR BOLT, 4" CONCRETE SLAB, COMPACTED SOIL 95%, SEE FOUNDATION DETAIL

Roof Plan (13): SLOPE, WALL LINE, SOFFIT VENT @ 48 O.C., SHINGLE ROOF, 6"X16" MTL SCREEN, 12/3

| EXTERIORS COLOR PROPOSED | | | | | |
|---|---|---|---|---|---|
| OPTIONS | BASE COLOR | OPTIONS | MOLDING ROOF COLOR | OPTIONS | DECORATIVE MOLDING COLOR |
| 1-C | DRIFTING DUNE D21-2 | 1-D | STONINGTON D14-3 | 1-E | EARL GRAY D18-4 |
| 2-C | ADOBE WHITE C14-1 | 2-D | HITCHING POST C22-4 | 2-E | PONY TAIL C15-3 |
| 3-C | GREEN TEA LEAF D67-4 | 3-D | DUSTY TRAIL D13-3 | 3-E | COUNTRY BEIGE D18-1 |
| NOTE: ALL PAINTINGS ARE OLYMPIC BRAND, OR SIMILAR. | | | | | |

PROARQ
DRAFT & DESIGN STUDIO
DATE : 08-20-2017
PROJECT No. 17-027
DESIGNED : CHAIREZ

SHEET TITLE
EXTERIOR ELEVATIONS
TYPICAL SECTION WALL
ROOF PLAN & DETAILS

AARB-1:134



**KITCHEN**
15
SCALE: 3/8" = 1'-0"

4" GRANITE BACKSPLASH. 1X1 MOSAIC AT KITCHEN WALL, COLOR AS SELECTED BY OWNER.
WOOD CROWN MOLDING BY CABINET FABRICATOR.
UPPER CABINET TO SIT ON COUNTERTOP, AND EXTEND UP AS SHOWN.
GRANITE COUNTER TOP COLOR TO BE SELECTED BY OWNER.
WOOD CABINETS, WOOD TYPE AND COLOR AS SELECTED BY OWNER.

4'-2" | 1'-11" | 1'-11" | 1'-6" | 1'-6" | 1'-11" | 1'-11"
15'-5"



**LIVING ROOM**
16
SCALE: 3/8" = 1'-0"

STUCCO
EXISTING FIREPLACE
STONE FINISH ON EXTENDED HEARTH
NOTE: EXISTING FIRE PLACE TO BE IMPROVEMENT




**TYPICAL FRAMING ARCH DETAIL**
18
SCALE: NTS

2- 2"X6" HEADER
MIN. BRG EL. = + [7'-6"]
APEX OF FRAMED ARCH
SIMPSON H2.5A TIE EA. SIDE TYP.
2"X4" TOP PLATE
2- 2"X4" CRIPPLE STUD & 2 - KING STUDS
LOW EL. = + [6'-6"] OF FRAMED ARCH
2"X4" WALL STUD
2"X4" CORNER WALL STUD
SHEATH INTERIOR WALLS W/1/2" APA RATED SHTG/OSB MIN -8d NAILS @ 6" O.C. E.N. & 12" O.C. FIELD
2"X4" WALL STUD @ 16" O.C.
F.F. ELEV. = 0'-0"



**METHOD PFH: PORTAL FRAME**
19
WITH HOLD DOWNS
SCALE: NTS

EXTENT OF HEADER - DOUBLE PORTAL FRAME (TWO BRACED WALL PANELS)
SINGLE PORTAL FRAME (ONE BRACED WALL PANEL)

#### MINIMUM LENGTH REQUIREMENTS FOR BRACED WALL PANELS

| SEISMIC DESIGN CATEGORY AND WIND SPEED | BRACING METHOD | HEIGHT OF BRACED WALL PANEL | | | | |
|---|---|---|---|---|---|---|
| | | 8ft | 9ft | 10 ft | 11 ft | 12 ft |
| SDC A, B, C, D₀, D₁ and D₂ Wind speed < 110 mph | DWB, WSP, SFB, PBS, PCP, HPS and Method GB when double sided | 4' - 0" | 4' - 0" | 4' - 0" | 4' - 5" | 4' - 10" |
| | Method GB, single sided | 8' - 0" | 8' - 0" | 8' - 0" | 8' - 10" | 9' - 8" |

For SI: 1 inch = 25.4 mm, 1 foot = 304.8 mm.




**SECTION W-W**
16B
SCALE: 3/8" = 1'-0"

PRE-FAB TERMINATION CHASE CAP
NON-COMBUSTIBLE CHASE TOP
COLLAR
FIBERGLASS SHINGLE ROOF
7/16" OSB DECK
RAFTER SEE ROOF FRAMING FOR SPACING AND SIZE
2"X6" CLG. JTS
R.26 BATT. INSUL
1/2" GYP. BD.
2"x4" WD STUDS @ 16" O.C. W/ R-19 INSUL
WOOD MANTEL
HEADER SEE ROOF FRAMING NOTES
BRICK TRIM
PROVIDE 4"X3"X3/16" STEEL ANGLE
BRICK HEARTH
FL. FIN. AS SCHEDULE
SEE FOUNDATION
13" DIA. OR SQUARE FLUE
EXTERIOR FIN. TO BE STUCCO ON METAL LATH
1/2" IMPREG. SHT. BD.
R-13 INSUL OUTSIDE WALL OF CHASE
PRE-FAB FIRE BOX
2"X8" FRAME




**MASTER BATH**
17
SCALE: 3/8" = 1'-0"

4" GRANITE BACKSPLASH.
1X1 MOSAIC AT KITCHEN WALL, COLOR AS SELECTED BY OWNER.
WOOD CROWN MOLDING BY CABINET FABRICATOR.
UPPER CABINET TO SIT ON COUNTERTOP, AND EXTEND UP AS SHOWN.
GRANITE COUNTER TOP COLOR TO BE SELECTED BY OWNER.
WOOD CABINETS, WOOD TYPE AND COLOR AS SELECTED BY OWNER.

1'-10" | 3'-9" | 1'-3" | 1'-2" | 1'-2" | 1'-2" | 1'-2" | 1'-3"
12'-7"

### ELECTRICAL LOAD CALCULATIONS

| 5749 VALLEY LILAC LANE EL PASO TX 79932 | |
|---|---|
| GENERAL LOAD 3077*3VA | 9,231 VA |
| SMALL APPLIANCE KIT | 3,000 VA |
| LAUNDRY CIRCUIT | 1,500 VA |
| APPLIANCE LOADS | 4,248 VA |
| DRYER | 5,000 VA |
| SINGLE OVEN | 4,000 VA |
| GENERAL TOTAL | 26,979 VA |
| FIRST 10,VA AT 100% | 10,000 |
| REMAINDER=16,979 AT 40% | 6,791 |
| A/C LOAD 2 * 7,400 | 14,800 |
| GRAND TOTAL | 31,591 VA |
| 31,591/240V= 131 AMPS 200 AMPS MAIN SERVICE | |




### RISER DIAGRAM
N.T.S.

**ELECTRIC DIAGRAM & CALCULATION**
20
SCALE: NTS

ELEC. METER AS DIRECT BY E.P.E.C.
200 A MAIN DISC
2" COND. 3 #2/0
250V~200AMP (NEMA 3R ENCL) ISC SWITCH FUSED 200 AMPS
CONDUIT OR ENTRANCE CABLE TO SUB PANEL
INDOOR PANEL 20/40 CIRCUITS
200A SUB PANEL
#4 WRT GROUND
SPARE LOAD 76 AMPS



**SECTION 1**
24
SCALE: 3/16" = 1'-0"

RIDGE 2-2"x12" ( 70'-5")
SHINGLE
PRE-ENGINNERING TRUSSES @ 24" O.C.
CEILING HEIGHT = 10'-0"
FIREPLACE
PROJECTION OF FOUNDATION. SEE DETAIL IN A-5
8'-3"
10'
8' | 1'-5" | 2'-5" | 7'-11" | 5'-9"
25'-5"

A.3
SHEET 4 OF 6

NAME PROJECT
MCFALL RESIDENCE
OWNER NAME : MR. CHACON
ADDRESS : 9328 MCFALL DR. EL PASO, TEXAS 79925

DATE:
REVISIONS:

PROARQ
DRAFTING & DESIGN STUDIO

IMPORTANT NOTE: ANY REPRODUCTION OF THESE PRINTS IS PROHIBITED BY FEDERAL COPYRIGHT LAWS. ANY ILLEGAL REPRODUCTION WILL BE ACCORDINGLY PURSUED TO THE FULLEST EXTENT OF THE COPYRIGHT LAW.
INFORMATION:
SCALE: AS NOTED
PROJECT No. 17-037
DESIGNED: CHAIREZ
DATE: 08-20-2017

SHEET TITLE:
INTERIOR SECTION ELEVATIONS TYPICAL SECTION WALL, ELECTRICAL LOAD CALCULATIONS, RISER DIAGRAM, DETAILS PLAN.

AARB-1:135

MCFALL RESIDENCE

NAME PROJECT

OWNER NAME : MR. CHACON

ADDRESS : 932B MCFALL DR.
EL PASO, TEXAS 79925

## FRAMING ROOF PLAN

**25** SCALE: 3/16" = 1'-0"

PRE-ENGINNERING TRUSSES @ 24" O.C.

CEILING HEIGHT = 10'-0"

RIDGE 2-2"X12" (70'-5")

HIP 2-2"X12" (27'-6")

RIDGE 2-2"X12" (31'-3")

18" OVERHANG FROM FRAME WALL

3-2"X12" BEAM

2-2"X12" BEAM

6X6 TYPICAL WOOD COLUMN or EQUIVALENT

IMPORTANT NOTE:
EXTERIOR LOAD BEARING WALL SHALL BE 2x6 @ 16" o/c.
INTERIOR NON LOAD BEARING SHALL BE 2x4 @ 16" o/c.




## MECHANIC & PLUMBING PLAN

**26** SCALE: 3/16" = 1'-0"





### WOOD FASTENER CONNECTION:
1. JOIST TO SILL OR GIRDER
2. BRIDGING TO JOIST, TOE NAIL EACH END
3. TOP OR SOLE PLATE TO STUD, END NAILED
4. STUD TO SOLE PLATE, TOE NAIL
5. DOUBLED STUDS, FACE NAIL
6. TOP PLATES, LAP AND INTER-SECTIONS FACE NAIL
7. CONTINUOUS HEADER, TWO PIECES
8. CEILING JOISTS TO PLATE, TOE NAIL
9. CONTINUOUS HEADER TO STUD, TOE NAIL
10. CEILING JIOSTS, LAPS OVER PARTITIONS, FACE NAIL
11. CEILING JOISTS TO PARALLEL RAFTERS, FACE NAIL
12. RAFTER TO PLATE, TOE NAIL
13. STUDS TO SOLE PLATE, END NAIL
14. ½" PLYWOOD ROOF SHEATHING

### FASTENER:
TWIST STRAPS AS DETAILED
8d COMMON

16d COMMON

8d COMMON
10d COMMON

16d COMMON
8d COMMON
8d COMMON

8d COMMON OR TWIST STRAP AS DETAILED
16d COMMON
6d COMMON

### NUMBER OF SPACING:
AS DETAILED
2

2

4
24" O.C.
2-16d OR 3-10d COMMON

16" O.C. ALONG EACH EDGE
3
3
3-16d OR 4-10d COMMON

3-16d OR 4-10d COMMON

3
2 EACH END
6" O.C. EDGES AND 12" O.C. INTERMEDIATE

### FRAMING NOTES:
1.) ALL HEADERS TO FOLLOW SIZING AS LISTED:
1'-0"-2'-0"= 2-2X4
2'-0"-4'-0"= 2-2X6
4'-0"-6'-0"= 2-2X8
6'-0"-9'-0"= 2-2X10
9'-0"-(AS NOTED ON PLAN)
2X4's TO BE PINE #2 STD. OR BTR
2X6's-2X12'S TO BE HEM-FIR #2 STD. OR BTR
2.) ALL HEADERS TO HAVE 7/16" WAFERBOARD GLUED BETWEEN MEMBERS W/ 16d NAILS STAGGERED @ 6"o.c. BOTH SIDES

### GENERAL WOOD NOTES:
1. ALL JOISTS, BEAMS STUDS IN BEARING WALLS AND COLUMNS BE DOUGLAS FIR, SOUTHERN YELLOW PINE #2 OR BETTER.
2. PLYWOOD SHALL BE A MINIMUM 1/2" C-D WITH EXTERIOR GLUE OR AS INDICATED ON THE DRAWINGS. PLYWOOD SHALL BE PLACED IN A RUNNING BOND.
3. STUDS IN NON BEARING WALLS MAY BE STUD GRADE LUMBER.
4. LUMBER FOR CONSTRUCTION SHALL BE S4S, GRADE STAMPED, AND HAVE A MOISTURE CONTENT OF LESS THAN 19%.
5. WOOD SUBJECT TO MOISTURE EXPOSURE SHALL BE PRESSURE TREATED IN ACCORDANCE WITH APPLICABLE AWPB TREATMENT.
6. INSTALL ROUGH CARPENTRY WORK TO COMPLY WITH " MANUAL OF HOUSE FRAMING" BY NATIONAL FOREST PRODUCTS ASSOCIATION AND WITH RECOMMENDATIONS OF AMERICAN PLYWOOD ASSOCIATION, UNLESS OTHERWISE INDICATED. FOR SHEATHING, UNDERLAYMENT AND OTHER PRODUCTS NOT COVERED IN ABOVE STANDARDS , COMPLY WITH RECOMMENDED MANUFACTURER OF PRODUCT INVOLVED FOR USE INTENDED. SET CARPENTRY WORK TO REQUIRED LEVELS AND LINES, WITH MEMBERS PLUMB AND TRUE AND CUT TO FIT.
7. PRE-ENGINEERED WOOD TRUSSES SHALL BE DESIGNED BY AN ENGINEER REGISTERED IN THE STATE DE TEXAS, WHO IS LISTED IN THE TEXAS REGISTRATION BOARD'S LATEST ROSTER OF ENGINEERS AS A CIVIL, OR STRUCTURAL ENGINEER. THE TRUSSES SHALL BE DESIGNED TO RESIST THE FORCES ACTING ON THEM INCLUDING ALL LIVE, DEAD, AND LATERAL LOADS. SUBMIT DRAWINGS TO ARCHITECT SHOWING CHORD FORCES, CHORD SIZES, MATERIAL OF CONSTRUCTION AND BEARING THE SEAL OF THE DESIGN ENGINEER. THESE DRAWINGS SHALL SHOW ALL RECOMMENDED CHORD BRACING. THESE DRAWINGS MUST BE APPROVED BY THE ARCHITECT PRIOR TO INSTALLATION IN THE CONSTRUCTION AND WILL BE INSPECTED PRIOR TO INSTALLING ROOF DECK FOR CONSTRUCTION OR MATERIAL FLAWS.
8. CONTACT ARCHITECT FOR INSPECTION OF PRE-ENGINEERED WOOD TRUSSES AFTER THEY ARE DELIVERED TO JOB SITE.
9. LAMINATED VENEER LUMBER SHALL HAVE A MINIMUM ALLOWABLE DESIGN STRESS IN BENDING OF 2800 PSI AND MODULUS OF ELASTICITY OF 2,000 Ksi.
10. METAL CONNECTOR SHALL BE EQUAL THOSE MADE BY THE SIMPSON Co.
11. IF ALTERED CONDITIONS ARE PROPOSED REVIEW WITH ENGINEER PRIOR TO PROCEEDING.

### GENERAL NOTES:
1. PRE-ENGINEERING TRUSSES AS SPECIFIED SEE ATTACHMENTS
2. REPORT ALL DISCREPANCIES TO THE CONTRACTOR FOR CLARIFICATION BEFORE PROCEEDING WITH THE WORK.
3. BEFORE TRUSSES FABRICATION, GIVE A COPY OF ORIGINAL TRUSSES DESIGN PLAN TO MECHANIC CONTRACTOR FOR VERIFICATION.
4. BASED ON A 10-FOOT TRIBUTARY FLOOR AND ROOF LOADS: IN OTHER WORDS, HEADERS LOCATED IN EXTERIOR WALLS AND SUPPORTING JOISTS SPANNING 10-FOOT WIDE ROOMS ON EACH SIDE.
5. BASED ON HEADER PROVIDING SUPPORT FOR WALL HEIGHT EQUAL TO WIDTH OF OPENING.
6. NOMINAL 4-INCH WIDE SINGLE HEADERS MAY BE SUBSTITUTED FOR THE DOUBLE MEMBERS.
7. SPANS ARE BASED ON NO. 2 OR STANDARD GRADE LUMBER. NO. 3 GRADE LUMBER MAY BE USED WITH APPROPRIATE DESIGN.

IMPORTANT NOTE:
ANY REPRODUCTION OF THESE PRINTS IS PROHIBITED BY FEDERAL COPYRIGHT LAWS. ANY ILLEGAL REPRODUCTION WILL BE ACCORDINGLY PURSUED TO THE FULLEST EXTENT OF THE COPYRIGHT LAW.

INFORMATION:
SCALE: AS NOTED
PROJECT NO. : 17-027
DESIGNED: CHAIREZ

DATE : 08-20-2017

PROARQ
DRAFTING DESIGN STUDIO

SHEET TITLE:
FRAMING ROOF PLAN
MECHANIC AND
PLUMBING PLAN

REVISIONS :

DATE :

AARB-1:136



FOUNDATION PLAN

EXISTING CONCRETE SLAB

EXISTING CONCRETE SLAB

EXISTING CONCRETE SLAB

EXISTING CONCRETE SLAB

EXISTING CONCRETE SLAB

FOOTING 12"X20"

4" CONC SLAB W/6X6#16' W.W.M.

1
A.5

A.5

12'-7"     13'-8"

7'-7"

8'-8"

2'

25'-11"

28'

20'-4"

61'-5"

4'-7"

15'-3"

10'-8"

10'-6"     29'     27'-11"

22'-9"     16'-9"

67'-5"

27    **FOUNDATION PLAN**

SCALE: 3/16" = 1'-0"




EXINTING WALLS

EXINTING WALLS

27-B    **DEMOLITION PLAN**

SCALE: 3/16" = 1'-0"

## LEGENDS



0    DEMO FLOOR IDENTIFICATION

0    DEMO CEILING IDENTIFICATION

0    DEMO WALL IDENTIFICATION



R-13 BATT. INSUL. BETWEEN STUDS

2x4's WD. STUDS @ 16" o/c

½" GYP. BD.

2x4 PLATE w/ ½"~ A. BOLTS @ 4'-0"

STUCCO FINISH, OVER ½" SHEATING BOARD

FIN. FLR.

**BASE FLASHING**

FIN. GR.

4" CONC. SLAB W/6X6 6/6 W.W.M

4-#4 REBAR

28    **SECTION 1**

SCALE: 3/4" = 1'-0"




4" CONCRETE SLAB WITH W6X6#10

4" CONC. SLAB W/6X6 6/6 W.W.M

#3 BAR EPOXY 6" INTO EXIST. FOOTING @ 32" O.C.

EXISTING FOOTING

STRUCTURAL FILL COMPACTED @ 95% ASTM D1557, SEE GEOTECNICAL STUDY

1'-0"

34    **SECTION 5**

SCALE: 3/4" = 1'-0"

## FOUNDATION KEY NOTES

1. IT IS THE OWNER AND THE GENERAL CONTRACTOR'S JOINT RESPONSIBILITY TO OBTAIN A GEOTECHNICAL SOIL'S REPORT BEFORE COMMENCING FOUNDATION CONSTRUCTION
2. FOUNDATION DESIGN IS BASED ON A SOIL BEARING VALUE OF 1,500 psf WITH THE BOTTOM OF FOOTINGS TO BE PLACED AT 18" MINIMUM INTO PROPERLY COMPACTED FILL.
3. THE SOILS REPORT IS TO BE CONSIDERED A PART OF THESE PLANS AND SHALL BE COMPLIED WITH THE CONTRACTOR.
4. FOUNDATION CONCRETE: PORTLAND CEMENT ASTM C 150, WITH 3,000 psi 28-DAY STRENGTH
5. REINFORCING BARS: ASTM A 615, DEFORMED, GRADE 40 FOR #3 REBARS, AND GRADE 60 FOR #4 ND LARGER.
6. SLAB-ON-GRADE WITH TURNDOWN FOOTING SHALL BE PLACED MONOLITHICALLY WITHOUT CONTRUCTION OR CONTROL JOINTS.
7. IN THE EVENT FOUNDATION EXCAVATIONS ARE CARRIED TO A DEPTH GREATER THEN REQUIRED. THE ADDITIONAL DEPTH SHALL BE FILLED WITH THE SAME CONCRETE AS THAT USED FOR FOOTING AT NO ADDITIONAL EXPENSE TO THE OWNER. NO UNCONTROLLED FILL WILL BE PERMITTED.
8. THE FOOTING EXCAVATIONS SHALL BE KEPT FREE FROM LOOSE MATERIAL AND STANDING WATER. SEE GEOTECHNICAL REPORT FOR MORE INFORMATION CONCERNING SOIL PREPERATION.
9. UNLESS SPECIFICALLY REQUIRED OTHERWISE BY THE SOILS REPORT, ALL REQUIRED BACK FILL SHALL BE COMPACTED TO AT LEAST (90%) OF THE MAXIMUM DENSITY OBTAINABLE BY THE A.S.T.M. DESIGNATION D-1557 (LATEST EDITION) METHOD OF COMPACTION.
10. UNLESS SPECIFICALLY REQUIRED OTHERWISE BY THE SOILS REPORT, ALL UTILITY TRENCHES SHALL BE COMPACTED TO A MINIMUM OF 90% RELATIVE DENSITY.
11. FINISH GRADES SHALL BE SLOPED TO DRAIN SURFACE WATER FROM BUILDINGS.
12. PROVIDE MINIMUM CONCRETE COVER FOR REINFORCING BARS AS PER ACI 7.7.1:
    CONCRETE CAST AGAINST EARTH:        3 INCHES
    CONCRETE EXPOSED TO EARTH OR WEATHER:  2 INCHES
13. PRESUMPTIVE DESIGN SOIL PARAMETERS AS PER TABLE 1804.2 OF THE IBC 2000:
    A. ALLOW SOIL BEARING PRESS. 1,500 P.S.F.
    B. EFFECTIVE P.I.        16

## DEMOLITION KEY NOTES

1    REMOVE EXISTING WALL FOR NEW OPENING, VERIFY IS NOT A BEARING WALL, IN THIS CASE PROVIDE TEMPORARY SHORING TO INSTALL NEW STRUCTURAL ELEMENTS, AND REPAIR ALL ADJACENCIES AS TO MEET EXISTING CONDITIONS , SEE NEW PROPOSED FLOOR PLAN.

2    REMOVE GARAGE DOOR AND REPLACED FOR NEW GARAGE DOOR SELECT BY OWNER, AND REPAIR ALL ADJACENCIES AS TO MEET EXISTING CONDITIONS, SEE NEW PROPOSED FLOOR PLAN.

3    REMOVE WINDOW/FRAME AND ALL ASSOCIATED EQUIPMENT AND REPAIR ALL ADJACENCIES AS TO MEET EXISTING CONDITIONS, SEE NEW PROPOSED FLOOR PLAN.

4    REMOVE DOOR/FRAME AND ALL HARDWARE, AND REPAIR ALL ADJACENCIES AS TO MEET EXISTING CONDITIONS, SEE NEW PROPOSED FLOOR PLAN.

5    REMOVE EXISTING CERAMIC TILE, SEE NEW PROPOSED FLOOR PLAN.

6    REMOVE EXISTING WALL MOUNTED PLUMBING CAP AND REPLACED AS SELECT BY OWNER.

## DEMOLITION GENERAL NOTES

A. CONTRACTOR SHALL VERIFY ALL EXISTING CONDITIONS OF CONSTRUCTION AND NOTIFY THE ARCHITECT OR OWNER OF ANY OUTSTANDING DISCREPANCIES WHICH COULD IMPACT CONSTRUCTION COST, MEANS AND OR SCHEDULE.

B. IF DEMOLITION IS REQUIRED TO INSTALL AN ITEM, THE CONTRACTOR SHALL RESTORE THE AREA TO PREVIOUS CONDITION, OR REPLACE DAMAGED ITEMS WITH NEW ITEMS TO MATCH EXISTING CONDITIONS.

C. THE CONTRACTOR SHALL VERIFY ALL DIMENSIONS OF ANY EXISTING AND NEW WORK AND SHALL BE RESPONSIBLE FOR THEIR ACCURACY, ANY DIFFERENCES FOUND SHALL BE SUBMITTED TO CONTRACTOR FOR CONSIDERATION BEFORE PROCEEDING WITH THE WORK.

D. THE CONTRACTOR SHALL BE SOLELY RESPONSIBLE FOR COORDINATION AND SCHEDULING OF CONSTRUCTION WORK, PROVISION AND CONTROL OF ALL MEANS AND METHODS OF CONSTRUCTION, FIRE PREVENTION, COORDINATION, ORDERING, DELIVERY AND STORAGE OF MATERIALS, REMOVAL OF DEBRIS AND ALL ASPECTS OF JOB SAFETY.

E. THE CONTRACTOR SHALL VERIFY WITH OWNER REPRESENTATIVE THE NEED FOR DUST CONTAINMENT BARRIERS AT CONSTRUCTION / DEMOLITION OF GYPSUM BOARD WALL SYSTEMS.

NAME PROJECT

# MCFALL RESIDENCE

OWNER NAME : MR. CHACON

ADDRESS : 932B MCFALL DR.
EL PASO, TEXAS 79925

DATE:

REVISIONS :

IMPORTANT NOTE:
ANY REPRODUCTION OF THESE PRINTS IS PROHIBITED BY FEDERAL COPYRIGHT LAWS, ANY ILLEGAL REPRODUCTION WILL BE ACCORDINGLY PURSUED TO THE FULLEST EXTENT OF THE COPYRIGHT LAW.

INFORMATION:
SCALE: AS NOTED
PROJECT NO.: 17-027
DESIGNED: CHAREZ
DATE : 08-20-20.17



PROARQ

SHEET TITLE
FOUNDATION AND DETAILS PLAN



**MiTek USA, Inc.**

16023 Swingley Ridge Rd
Chesterfield, MO 63017
314-434-1200

Re: SYNE-9328
9328 McFall

The truss drawing(s) referenced below have been prepared by MiTek USA, Inc. under my direct supervision based on the parameters provided by El Paso Truss.

Pages or sheets covered by this seal: I31070952 thru I31070967

My license renewal date for the state of Texas is March 31, 2018.

Texas COA: F-12513



COA F-12513

September 15,2017

Komnick, Chad

**IMPORTANT NOTE:** Truss Engineer's responsibility is solely for design of individual trusses based upon design parameters shown on referenced truss drawings. Parameters have not been verified as appropriate for any use. Any location identification specified is for file reference only and has not been used in preparing design. Suitability of truss designs for any particular building is the responsibility of the building designer, not the Truss Engineer, per ANSI/TPI-1, Chapter 2.

AARB-1:138

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|---|---|---|---|---|---|---|
| SYNE-9328 | A1 | Common | 5 | 1 | | I31070952 |
| | | | | | Job Reference (optional) | |
| El paso truss, El Paso Texas, . | | | | | 7.640 s Aug 16 2017 MiTek Industries, Inc. Fri Sep 15 11:19:54 2017 Page 1 | |
| | | | | | ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-74z9AvwkI3AiXaCv9?bxdK7o6XEHpYnTXrkEJNydP3J | |



Scale = 1:74.1

| | 5-2-7 | 10-5-8 | 15-3-2 | 20-7-6 | 26-4-9 | 31-9-8 | 38-1-1 | 42-5-0 |
|---|---|---|---|---|---|---|---|---|
| | 5-2-7 | 5-3-1 | 4-9-10 | 5-4-3 | 5-9-3 | 5-4-15 | 6-3-9 | 4-3-15 |

Plate Offsets (X,Y)-- [3:0-1-12,0-2-8], [9:0-2-8,0-2-9], [11:0-1-0,0-1-12], [14:0-2-4,0-1-8], [15:0-0-0,0-1-12], [16:0-2-8,0-0-4], [17:0-0-0,0-2-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.41 | Vert(LL) | -0.33 | 19 | >999 | 360 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.71 | Vert(CT) | -0.67 | 18-19 | >760 | 240 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.92 | Horz(CT) | 0.19 | 14 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 198 lb | FT = 0% |

LUMBER-
TOP CHORD    2x4 SPF 1650F 1.5E
BOT CHORD    2x4 SPF 1650F 1.5E
WEBS    2x4 SPF Stud
SLIDER    Left 2x4 SPF Stud 2-3-3

BRACING-
TOP CHORD    Structural wood sheathing directly applied or 2-11-11 oc purlins, except end verticals.
BOT CHORD    Rigid ceiling directly applied or 7-7-5 oc bracing.
WEBS    1 Row at midpt    8-17, 9-16

REACTIONS.    (lb/size)    2=1813/0-5-8    (min. 0-2-13), 14=1822/0-5-8    (min. 0-2-14)
Max Horz    2=124(LC 8)
Max Uplift    2=-402(LC 4), 14=-323(LC 5)

FORCES.    (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD    2-3=-4163/792, 3-4=-4591/823, 4-5=-4457/828, 5-6=-4390/835, 6-7=-3973/757,
7-8=-3294/639, 8-9=-2474/487, 9-10=-2092/392, 10-11=-1300/231
BOT CHORD    2-21=-832/3831, 20-21=-894/4445, 19-20=-804/4200, 18-19=-645/3591, 17-18=-483/2945,
16-17=-277/2126, 15-16=-243/1703, 14-15=-102/610
WEBS    3-21=-42/587, 6-20=-9/272, 6-19=-572/182, 7-19=-92/561, 7-18=-779/227,
8-18=-139/794, 8-17=-1074/292, 9-17=-196/1029, 9-16=-396/131, 10-16=-72/570,
10-15=-1120/197, 11-15=-146/1288, 11-14=-1668/226

NOTES-
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
4) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 402 lb uplift at joint 2 and 323 lb uplift at joint 14.
5) This truss is designed in accordance with the 2015 International Residential Code sections R502.11.1 and R802.10.2 and referenced standard ANSI/TPI 1.

LOAD CASE(S) Standard



COR F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall building design. Bracing indicated is to prevent buckling of individual truss web and/or chord members only. Additional temporary and permanent bracing is always required for stability and to prevent collapse with possible personal injury and property damage. For general guidance regarding the fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component Safety Information** available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.



MiTek®

16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:139

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | A2 | Common | 6 | 1 | | I31070953 |
| | | | | | Job Reference (optional) | |

El paso truss, El Paso Texas, .  7.640 s Aug 16 2017 MiTek Industries, Inc. Fri Sep 15 11:21:35 2017 Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-gVZLNS84W5vN96QJZivdDdp1kEivzDnKl2i4M1ydP1k



Scale = 1:74.1

| | 5-2-7 | 10-5-8 | 15-3-2 | 20-7-6 | 26-4-9 | 31-9-8 | 38-1-1 | 42-5-0 |
|---|-------|--------|--------|--------|--------|--------|--------|--------|
| | 5-2-7 | 5-3-1 | 4-9-10 | 5-4-3 | 5-9-3 | 5-4-15 | 6-3-9 | 4-3-15 |

Plate Offsets (X,Y)-- [3:0-1-12,0-2-8], [9:0-2-8,0-2-9], [11:0-1-0,0-1-12], [14:0-2-4,0-1-8], [15:0-0-0,0-1-12], [16:0-2-8,0-0-4], [17:0-0-0,0-2-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---------------|--|----------|-------|------|--|-------|-----|-------|--------|-----|--------|------|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.47 | Vert(LL) | -0.33 | 19 | >999 | 360 | MT20 | 185/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.71 | Vert(CT) | -0.67 | 18-19 | >760 | 240 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.92 | Horz(CT) | 0.19 | 14 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 198 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E *Except*
1-5: 2x4 HF No.1&Btr
BOT CHORD   2x4 SPF 1650F 1.5E
WEBS        2x4 SPF Stud
SLIDER      Left 2x4 SPF Stud 2-3-3

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 2-5-14 oc purlins, except end verticals.
BOT CHORD   Rigid ceiling directly applied or 7-7-5 oc bracing.
WEBS        1 Row at midpt        8-17, 9-16

**REACTIONS.**   (lb/size)   2=1813/0-5-8  (min. 0-2-13), 14=1822/0-5-8  (min. 0-2-14)
Max Horz   2=124(LC 8)
Max Uplift   2=-402(LC 4), 14=-323(LC 5)

**FORCES.**   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD   2-3=-4163/792, 3-4=-4591/823, 4-5=-4457/828, 5-6=-4390/835, 6-7=-3973/757,
7-8=-3294/639, 8-9=-2474/487, 9-10=-2092/392, 10-11=-1300/231
BOT CHORD   2-21=-832/3831, 20-21=-894/4445, 19-20=-804/4200, 18-19=-645/3591, 17-18=-483/2945,
16-17=-277/2126, 15-16=-243/1703, 14-15=-102/610
WEBS        3-21=-42/587, 6-20=-9/272, 6-19=-572/182, 7-19=-92/561, 7-18=-779/227,
8-18=-139/794, 8-17=-1074/292, 9-17=-196/1029, 9-16=-396/131, 10-16=-72/570,
10-15=-1120/197, 11-15=-146/1288, 11-14=-1668/226

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
4) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 402 lb uplift at joint 2 and 323 lb uplift at joint 14.
5) This truss is designed in accordance with the 2015 International Residential Code sections R502.11.1 and R802.10.2 and referenced standard ANSI/TPI 1.

**LOAD CASE(S)**  Standard



COR F-12513
September 15,2017

⚠ *WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.*
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall building design. Bracing indicated is to prevent buckling of individual truss web and/or chord members only. Additional temporary and permanent bracing is always required for stability and to prevent collapse with possible personal injury and property damage. For general guidance regarding the fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component Safety Information** available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:140

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|------------|-----|-----|-------------|--|
| SYNE-9328 | A3 | ROOF SPECIAL | 5 | 1 | | I31070954 |
| | | | | | Job Reference (optional) | |

El paso truss,    El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:37 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-r9TsTe_RfR2BMcqYnRXjwHT3W62o9TbTDhWIvIydP6O



Scale = 1:89.7

Plate Offsets (X,Y)--  [2:0-1-3,0-2-0], [5:0-2-8,0-1-12], [6:0-3-0,0-2-12], [7:0-2-8,0-2-0], [13:0-4-2,0-1-3], [17:0-5-0,0-1-4], [18:0-1-11,0-2-2], [19:0-2-12,0-2-8], [21:0-2-0,0-1-12]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.69 | Vert(LL) | -0.22 | 19-20 | >999 | 360 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.54 | Vert(CT) | -0.49 | 19-20 | >770 | 240 | M18SHS | 197/144 |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.82 | Horz(CT) | 0.25 | 17 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 198 lb | FT = 0% |

LUMBER-
TOP CHORD    2x4 SPF 1650F 1.5E
BOT CHORD    2x4 SPF 1650F 1.5E
WEBS         2x4 SPF Stud
SLIDER       Right 2x4 SPF Stud 1-6-12

BRACING-
TOP CHORD    Structural wood sheathing directly applied or 4-2-4 oc purlins,  except
             end verticals.
BOT CHORD    Rigid ceiling directly applied or 5-0-7 oc bracing.
WEBS         1 Row at midpt        5-18, 7-17

REACTIONS.  (lb/size)   21=862/0-5-8, 13=173/0-5-8, 17=3109/0-3-8  (req. 0-4-14)
            Max Horz 21=-126(LC 13)
            Max Uplift21=-181(LC 4), 13=-204(LC 5), 17=-377(LC 4)
            Max Grav 21=864(LC 19), 13=417(LC 20), 17=3109(LC 1)

FORCES.  (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD    2-3=-2218/439, 3-4=-1898/385, 4-5=-1831/396, 7-8=-368/2659, 8-9=-323/1661,
             9-10=-336/1636, 10-11=-322/1096, 11-12=-482/611, 12-13=-509/629
BOT CHORD    20-21=-395/1442, 19-20=-541/2409, 18-19=-316/1868, 17-18=-1746/349,
             16-17=-1872/388, 15-16=-1306/329, 13-15=-549/461
WEBS         2-21=-1662/459, 2-20=-21/743, 3-20=-313/173, 3-19=-544/221, 5-19=-178/1222,
             5-18=-2125/459, 6-18=-419/110, 7-18=-245/1830, 7-17=-2032/327, 8-17=-940/263,
             8-16=-86/657, 10-16=-716/198, 10-15=0/476, 11-15=-655/190

NOTES-
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) All plates are MT20 plates unless otherwise indicated.
4) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
5) WARNING: Required bearing size at joint(s) 17 greater than input bearing size.
6) Bearing at joint(s) 21 considers parallel to grain value using ANSI/TPI 1 angle to grain formula.  Building designer should verify capacity
   of bearing surface.
7) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) except (jt=lb) 21=181,
   13=204, 17=377.



COR  F-12513
September 15,2017

⚠ WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see  ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component
Safety Information  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.



MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:141

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | A4 | ROOF SPECIAL | 3 | 1 | | I31070955 |
| | | | | | Job Reference (optional) | |

El paso truss,   El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:38 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-JL1Eh__3QIA2zlPkL82yTV?AWWIJutIcSLGsRkydP6N



Scale = 1:61.0

Plate Offsets (X,Y)-- [2:0-1-7,0-1-8], [3:0-0-7,0-2-0], [6:0-2-8,0-2-8], [7:0-2-0,0-2-8], [8:0-2-8,0-1-12], [10:0-3-2,Edge], [11:0-2-3,0-2-10], [12:0-4-12,0-3-4], [14:0-0-7,0-1-12], [15:0-2-0,0-1-12]

| LOADING (psf) | | SPACING- | | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---------------|--|----------|--|------|--|-------|-----|-------|--------|-----|--------|------|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.93 | Vert(LL) | -0.46 | 12-13 | >829 | 360 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.91 | Vert(CT) | -0.93 | 12-13 | >412 | 240 | M18SHS | 197/144 |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.98 | Horz(CT) | 0.61 | 10 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 135 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 SPF 1650F 1.5E
WEBS        2x4 SPF Stud

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 2-11-13 oc purlins, except end verticals.
BOT CHORD   Rigid ceiling directly applied or 2-2-0 oc bracing.
WEBS        1 Row at midpt       8-10
            2 Rows at 1/3 pts    6-11

**REACTIONS.** (lb/size)   15=1275/0-5-8, 10=1275/0-3-8
Max Horz 15=156(LC 5)
Max Uplift15=-242(LC 4), 10=-182(LC 5)

**FORCES.** (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD   2-3=-3137/600, 3-4=-4592/866, 4-5=-4544/871, 5-6=-5087/920, 6-7=-1867/334,
            7-8=-1860/344
BOT CHORD   14-15=-448/1917, 13-14=-781/3917, 12-13=-873/4823, 11-12=-839/5065,
            10-11=-229/1088
WEBS        2-15=-2348/513, 2-14=-172/1296, 3-14=-1237/280, 3-13=-48/706, 5-13=-485/102,
            5-12=-38/251, 6-12=-373/2373, 6-11=-3645/718, 7-11=-33/531, 8-11=-125/942,
            8-10=-1616/298

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) All plates are MT20 plates unless otherwise indicated.
4) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
5) Bearing at joint(s) 15, 10 considers parallel to grain value using ANSI/TPI 1 angle to grain formula.  Building designer should verify capacity of bearing surface.
6) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) except (jt=lb) 15=242, 10=182.

COR F-12513
September 15,2017

⚠ WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component Safety Information** available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:142

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | A5 | MONO TRUSS | 3 | 1 | | I31070956 |
| | | | | | Job Reference (optional) | |

El paso truss,   El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:38 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-JL1Eh__3QlA2zlPkL82yTV?EgWQyuypcSLGsRkydP6N



Plate Offsets (X,Y)--  [2:0-3-8,Edge], [7:0-1-12,0-2-0], [8:0-0-8,0-1-8]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---------------|---|----------|-------|------|---|-------|----|-----|--------|-----|--------|------|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.66 | Vert(LL) | -0.11 | 7-8 | >999 | 360 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.42 | Vert(CT) | -0.24 | 7-8 | >807 | 240 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.69 | Horz(CT) | 0.02 | 7 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 61 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 SPF 1650F 1.5E
WEBS        2x4 SPF Stud
SLIDER      Left 2x4 SPF Stud 2-3-5

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 5-8-13 oc purlins,  except
            end verticals.
BOT CHORD   Rigid ceiling directly applied or 10-0-0 oc bracing.

**REACTIONS.**  (lb/size)   2=762/0-3-8, 7=625/0-3-8
Max Horz 2=171(LC 7)
Max Uplift 2=-208(LC 4), 7=-143(LC 8)

**FORCES.**   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD    2-3=-1352/276, 3-4=-1309/287, 4-5=-1104/183
BOT CHORD    2-8=-312/1240, 7-8=-183/785
WEBS         5-8=0/483, 5-7=-843/252

**NOTES-**
1) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
2) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
3) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) except (jt=lb) 2=208,
   7=143.



COR F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:143

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|---|---|---|---|---|---|---|
| SYNE-9328 | A6 | Common | 1 | 1 | | I31070957 |
| | | | | | Job Reference (optional) | |

El paso truss, El Paso Texas, .
7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:27:30 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-noWYtqRmvAd0Ff3Ysmnt6U0dpLsjemuaNnCMKyydOyB



-2-0-0 | 4-4-6 | 10-6-3 | 18-0-8 | 25-2-10 | 30-11-7 | 38-0-0 | 44-2-10 | 46-3-0 48-3-0
2-0-0 | 4-4-6 | 6-1-13 | 7-6-5 | 7-2-2 | 5-8-13 | 7-0-9 | 6-2-11 | 2-0-6 2-0-0

Scale = 1:80.7

| | 7-7-11 | 14-5-8 | 21-7-8 | 27-11-1 | 34-1-0 | 40-1-6 | 46-3-0 |
|---|---|---|---|---|---|---|---|
| | 7-7-11 | 6-9-12 | 7-2-1 | 6-3-9 | 6-1-15 | 6-0-5 | 6-1-10 |

Plate Offsets (X,Y)--  [3:0-1-7,0-1-8], [6:0-2-13,0-2-8], [11:0-1-8,0-2-8], [12:Edge,0-6-14], [16:0-5-0,0-0-4], [18:0-2-8,0-0-4]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.81 | Vert(LL) | -0.41 | 15-16 | >999 | 360 | MT20 | 185/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.79 | Vert(CT) | -0.84 | 15-16 | >662 | 240 | M18SHS | 197/144 |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.97 | Horz(CT) | 0.24 | 12 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 200 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E *Except*
9-13: 2x4 HF No.1&Btr
BOT CHORD   2x4 SPF 1650F 1.5E
WEBS        2x4 SPF Stud
SLIDER      Right 2x4 SPF Stud 2-1-9

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 2-2-0 oc purlins,  except
end verticals.
BOT CHORD   Rigid ceiling directly applied or 7-9-4 oc bracing.
WEBS        1 Row at midpt       6-18, 3-20

**REACTIONS.**   (lb/size)   20=1975/0-5-8  (min. 0-3-2), 12=1966/0-5-8  (min. 0-3-1)
Max Horz  20=-121(LC 13)
Max Uplift 20=-363(LC 4), 12=-420(LC 5)

**FORCES.**   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD   3-4=-2437/352, 4-5=-2357/360, 5-6=-2858/483, 6-7=-3316/606, 7-8=-4180/766,
8-9=-4785/869, 9-10=-4851/860, 10-11=-5166/899, 11-12=-4552/857, 2-20=-276/141
BOT CHORD   19-20=-230/1705, 18-19=-323/2643, 17-18=-246/2705, 16-17=-498/3706, 15-16=-681/4416,
14-15=-856/4981, 12-14=-770/4190
WEBS        3-19=-84/995, 5-19=-708/153, 5-18=-80/312, 6-17=-211/1106, 7-17=-1023/305,
7-16=-132/745, 8-16=-689/221, 8-15=-50/433, 10-15=-422/184, 11-14=-42/777,
3-20=-2334/367

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed;
MWFRS (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate
grip DOL=1.25
3) All plates are MT20 plates unless otherwise indicated.
4) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
5) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 363 lb uplift at joint 20 and 420 lb uplift at
joint 12.
6) This truss is designed in accordance with the 2015 International Residential Code sections R502.11.1 and R802.10.2 and referenced
standard ANSI/TPI 1.

**LOAD CASE(S)**  Standard



COR F-12513
September 15,2017



WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

**MiTek®**
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:144

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|---|---|---|---|---|---|---|
| SYNE-9328 | A7 | Common | 6 | 1 | | I31070958 |
| | | | | | Job Reference (optional) | |

El paso truss,  El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:40 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-Gk9_6g0KyMQmD3Z7SZ5QYw5daK6?MtrvvflyVdydP6L



5x10 M18SHS

Scale = 1:70.3

Plate Offsets (X,Y)--  [3:0-1-3,0-1-12], [7:0-0-8,0-1-8], [10:0-0-15,0-1-12], [13:0-2-8,0-1-12], [14:0-0-0,0-2-0], [16:0-2-8,0-0-4], [17:0-2-8,0-0-4], [19:0-3-0,0-1-12]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.51 | Vert(LL) | -0.12 | 16 | >999 | 360 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.45 | Vert(CT) | -0.28 | 16-17 | >999 | 240 | M18SHS | 197/144 |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.59 | Horz(CT) | 0.11 | 13 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 177 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 SPF 1650F 1.5E
WEBS        2x4 SPF Stud

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 4-2-4 oc purlins,  except
            end verticals.
BOT CHORD   Rigid ceiling directly applied or 10-0-0 oc bracing.
WEBS        1 Row at midpt      3-19

**REACTIONS.** (lb/size)   19=1666/0-5-8, 13=1666/0-5-8
            Max Horz 19=-41(LC 6)
            Max Uplift 19=-337(LC 4), 13=-352(LC 5)

**FORCES.** (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD   3-4=-1947/312, 4-5=-1876/320, 5-6=-2166/358, 6-7=-2281/412, 7-8=-2339/434, 8-9=-2414/422, 9-10=-1939/332,
            2-19=-285/146
BOT CHORD   18-19=-202/1338, 17-18=-282/2049, 16-17=-207/1973, 15-16=-342/2338, 14-15=-351/2167, 13-14=-198/1106
WEBS        3-18=-66/823, 5-18=-526/132, 6-17=-39/287, 6-16=-99/541, 7-16=-415/186, 9-14=-709/155, 10-14=-123/1047,
            3-19=-1853/317, 10-13=-1774/331

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) All plates are MT20 plates unless otherwise indicated.
4) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
5) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) except (jt=lb) 19=337,
   13=352.



COR  F-12513
September 15,2017



**WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design. Bracing indicated is to prevent buckling of individual truss web and/or chord members only. Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage. For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information** available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:145

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | A8 | Common | 7 | 1 | | I31070959 |
| | | | | | Job Reference (optional) | |

El paso truss, El Paso Texas, .
7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:30:15 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-RY_wWFRG2sQbY0AG1wEZIHLu5sAFpOetKyfacuydOvc



Scale = 1:80.2

| 3-1-7 | 9-6-7 | 15-10-10 | 21-7-8 | 27-11-1 | 34-1-0 | 39-11-4 | 46-3-0 |
|-------|-------|----------|--------|---------|--------|---------|--------|
| 3-1-7 | 6-5-0 | 6-4-3 | 5-8-14 | 6-3-9 | 6-1-15 | 5-10-4 | 6-3-12 |

Plate Offsets (X,Y)--  [2:0-2-8,0-1-8], [6:0-2-8,0-2-9], [11:0-1-8,0-2-8], [12:0-3-8,Edge], [16:0-5-0,0-0-4], [18:0-2-8,0-0-8], [20:0-1-0,0-1-8]

| LOADING (psf) | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---------------|----------|-------|------|---|-------|-----|-------|--------|-----|--------|------|
| TCLL 20.0 | Plate Grip DOL | 1.25 | TC | 0.49 | Vert(LL) | -0.42 | 15-16 | >999 | 360 | MT20 | 197/144 |
| TCDL 10.0 | Lumber DOL | 1.25 | BC | 0.79 | Vert(CT) | -0.85 | 15-16 | >652 | 240 | M18SHS | 197/144 |
| BCLL 0.0 | Rep Stress Incr | YES | WB | 0.97 | Horz(CT) | 0.24 | 12 | n/a | n/a | | |
| BCDL 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 205 lb | FT = 0% |

LUMBER-
TOP CHORD    2x4 SPF 1650F 1.5E
BOT CHORD    2x4 SPF 1650F 1.5E
WEBS         2x4 SPF Stud
SLIDER       Right 2x4 SPF Stud 3-6-10

BRACING-
TOP CHORD    Structural wood sheathing directly applied or 2-8-8 oc purlins,  except
             end verticals.
BOT CHORD    Rigid ceiling directly applied or 7-8-15 oc bracing.

REACTIONS.  (lb/size)    21=1975/0-5-8  (min. 0-3-2), 12=1966/0-5-8  (min. 0-3-1)
Max Horz  21=-121(LC 13)
Max Uplift  21=-363(LC 4), 12=-420(LC 5)

FORCES.   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD    2-3=-1392/204, 3-4=-2656/402, 4-5=-2852/484, 5-6=-2768/498, 6-7=-3313/608,
             7-8=-4178/764, 8-9=-4798/876, 9-10=-4854/868, 10-11=-5200/909, 11-12=-5146/948,
             2-21=-1946/364
BOT CHORD    19-20=-272/2066, 18-19=-312/2695, 17-18=-243/2703, 16-17=-499/3708, 15-16=-678/4409,
             14-15=-837/4943, 12-14=-861/4833
WEBS         2-20=-217/1838, 3-20=-1437/249, 3-19=-70/745, 4-19=-470/126, 4-18=-154/253,
             6-18=-90/254, 6-17=-221/1092, 7-17=-1030/305, 7-16=-126/742, 8-16=-678/218,
             8-15=-63/459, 10-15=-391/168

NOTES-
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed;
   MWFRS (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate
   grip DOL=1.25
3) All plates are MT20 plates unless otherwise indicated.
4) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
5) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 363 lb uplift at joint 21 and 420 lb uplift at
   joint 12.
6) This truss is designed in accordance with the 2015 International Residential Code sections R502.11.1 and R802.10.2 and referenced
   standard ANSI/TPI 1.

LOAD CASE(S)  Standard



COR  F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component
Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.



**MiTek®**
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:146

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|---|---|---|---|---|---|---|
| SYNE-9328 | AG | COMMON SUPPORTED GAB | 1 | 1 | | I31070960 |
| | | | | | Job Reference (optional) | |

El paso truss,  El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:42 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-C7GlWM1aU_gUSNjVa_7udLA117rqpuaCNzE3aWydP6J



Scale = 1:80.5

Plate Offsets (X,Y)-- [2:0-3-8,Edge], [23:0-5-3,0-0-0], [24:0-5-7,0-0-0], [32:0-2-8,0-3-0], [38:0-2-8,0-3-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.25 | Vert(LL) | -0.02 | 25 | n/r | 180 | MT20 | 185/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.17 | Vert(CT) | -0.04 | 24-25 | n/r | 80 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.13 | Horz(CT) | -0.00 | 26 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 207 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 SPF 1650F 1.5E *Except*
  2-38: 2x4 HF No.1&Btr
WEBS        2x4 SPF Stud
OTHERS      2x4 SPF Stud

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 6-0-0 oc purlins,  except
            end verticals.
BOT CHORD   Rigid ceiling directly applied or 6-0-0 oc bracing.

**REACTIONS.**   All bearings 42-5-0.
  (lb) -  Max Horz 2=121(LC 12)
          Max Uplift  All uplift 100 lb or less at joint(s) 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 32, 31, 30, 29, 28, 27
                      except 26=-132(LC 5), 2=-108(LC 4), 44=-117(LC 8)
          Max Grav   All reactions 250 lb or less at joint(s) 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 32, 31, 30, 29, 28, 27
                      except 26=266(LC 1), 2=353(LC 19), 44=478(LC 1)

**FORCES.**   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
WEBS        4-44=-341/156

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) Truss designed for wind loads in the plane of the truss only.  For studs exposed to wind (normal to the face), see Standard Industry
   Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
4) All plates are 2x4 MT20 unless otherwise indicated.
5) Gable requires continuous bottom chord bearing.
6) Gable studs spaced at 2-0-0 oc.
7) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
8) Solid blocking is required on both sides of the truss at joint(s), 2.
9) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) 34, 35, 36, 37, 38, 39,
   40, 41, 42, 43, 32, 31, 30, 29, 28, 27 except (jt=lb) 26=132, 2=108, 44=117.



COR F-12513
September 15,2017


**WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component
Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:147

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | AG1 | MONOPITCH SUPPORTED | 1 | 1 | | I31070961 |
| | | | | | Job Reference (optional) | |

El paso truss,　　　　El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:43 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-gJq7ki2CFHoL4XHi7ie7AYjA7XBfYN_Mcdzd6yydP6I



Scale: 3/8"=1'

Plate Offsets (X,Y)-- [2:0-2-8,0-2-7]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.36 | Vert(LL) | 0.02 | 1 | n/r | 180 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.13 | Vert(CT) | 0.00 | 1 | n/r | 80 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.06 | Horz(CT) | -0.00 | 10 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 57 lb | FT = 0% |

**LUMBER-**
TOP CHORD　2x4 SPF 1650F 1.5E
BOT CHORD　2x4 SPF 1650F 1.5E
WEBS　　　　2x4 SPF Stud
OTHERS　　　2x4 SPF Stud
SLIDER　　　Left 2x4 SPF Stud 2-7-14

**BRACING-**
TOP CHORD　Structural wood sheathing directly applied or 6-0-0 oc purlins,  except end verticals.
BOT CHORD　Rigid ceiling directly applied or 10-0-0 oc bracing.

**REACTIONS.**　All bearings 14-5-8.
(lb) -　Max Horz 2=147(LC 7)
　　　　Max Uplift  All uplift 100 lb or less at joint(s) 10, 11, 12, 13, 14 except 2=-169(LC 4)
　　　　Max Grav  All reactions 250 lb or less at joint(s) 10, 11, 12, 13 except 2=413(LC 1), 14=371(LC 1)

**FORCES.**　(lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
WEBS　　　　5-14=-260/116

**NOTES-**
1) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
2) Truss designed for wind loads in the plane of the truss only.  For studs exposed to wind (normal to the face), see Standard Industry Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
3) Gable requires continuous bottom chord bearing.
4) Gable studs spaced at 2-0-0 oc.
5) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
6) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) 10, 11, 12, 13, 14 except (jt=lb) 2=169.



COR  F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component Safety Information** available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

**MiTek®**
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:148

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | AG2 | MONOPITCH SUPPORTED | 1 | 1 | | I31070962 |
| | | | | | Job Reference (optional) | |

El paso truss,    El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:43 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-gJq7ki2CFHoL4XHi7ie7AYjC5XARYMoMcdzd6yydP6I



Scale = 1:19.2

Plate Offsets (X,Y)--  [2:0-3-4,0-0-3]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.23 | Vert(LL) | 0.00 | 1 | n/r | 180 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.21 | Vert(CT) | 0.01 | 1 | n/r | 80 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.07 | Horz(CT) | -0.00 | 6 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 28 lb | FT = 0% |

LUMBER-
TOP CHORD  2x4 SPF 1650F 1.5E
BOT CHORD  2x4 SPF 1650F 1.5E
WEBS       2x4 SPF Stud
OTHERS     2x4 SPF Stud

BRACING-
TOP CHORD    Structural wood sheathing directly applied or 6-0-0 oc purlins,  except
             end verticals.
BOT CHORD    Rigid ceiling directly applied or 10-0-0 oc bracing.

REACTIONS.  (lb/size)   2=348/8-0-8, 6=-44/8-0-8, 7=450/8-0-8
            Max Horz 2=83(LC 5)
            Max Uplift2=-131(LC 4), 6=-48(LC 3), 7=-101(LC 8)
            Max Grav 2=348(LC 1), 6=10(LC 8), 7=450(LC 1)

FORCES.  (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
WEBS          4-7=-320/163

NOTES-
1) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
2) Truss designed for wind loads in the plane of the truss only.  For studs exposed to wind (normal to the face), see Standard Industry
   Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
3) Gable requires continuous bottom chord bearing.
4) Gable studs spaced at 2-0-0 oc.
5) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
6) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) 6 except (jt=lb) 2=131
   , 7=101.
7) Beveled plate or shim required to provide full bearing surface with truss chord at joint(s) 2.



COR  F-12513
September 15,2017



⚠ WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design. Bracing indicated is to prevent buckling of individual truss web and/or chord members only. Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage. For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see  ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component
Safety Information  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:149

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|--|
| SYNE-9328 | AG3 | MONOPITCH SUPPORTED | 1 | 1 | | I31070963 |
| | | | | | Job Reference (optional) | |

El paso truss,    El Paso Texas
7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:44 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-8VOVx13q0bwCigsuhP9MjmFMrxWgHp2VqHjAeOydP6H



Scale = 1:19.2

Plate Offsets (X,Y)-- [2:0-3-4,0-0-3]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---------------|--|----------|-------|------|--|-------|----|----|--------|-----|--------|------|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.23 | Vert(LL) | 0.00 | 1 | n/r | 180 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.21 | Vert(CT) | 0.01 | 1 | n/r | 80 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.07 | Horz(CT) | -0.00 | 6 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 28 lb | FT = 0% |

**LUMBER-**
TOP CHORD  2x4 SPF 1650F 1.5E
BOT CHORD  2x4 SPF 1650F 1.5E
WEBS        2x4 SPF Stud
OTHERS     2x4 SPF Stud

**BRACING-**
TOP CHORD    Structural wood sheathing directly applied or 6-0-0 oc purlins,  except
                    end verticals.
BOT CHORD    Rigid ceiling directly applied or 10-0-0 oc bracing.

**REACTIONS.**  (lb/size)  2=348/8-0-8, 6=-44/8-0-8, 7=450/8-0-8
                Max Horz 2=83(LC 5)
                Max Uplift2=-131(LC 4), 6=-48(LC 3), 7=-101(LC 8)
                Max Grav 2=348(LC 1), 6=10(LC 8), 7=450(LC 1)

**FORCES.**  (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
WEBS          4-7=-320/163

**NOTES-**
1) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
2) Truss designed for wind loads in the plane of the truss only.  For studs exposed to wind (normal to the face), see Standard Industry
   Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
3) Gable requires continuous bottom chord bearing.
4) Gable studs spaced at 2-0-0 oc.
5) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
6) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) 6 except (jt=lb) 2=131
  , 7=101.
7) Beveled plate or shim required to provide full bearing surface with truss chord at joint(s) 2.



COR  F-12513
September 15,2017

⚠ *WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.*
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

**MiTek®**
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:150

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|---|---|---|---|---|---|---|
| SYNE-9328 | AG4 | GABLE | 1 | 1 | | I31070964 |
| | | | | | Job Reference (optional) | |

El paso truss,    El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.   Fri Sep 15 11:16:45 2017   Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-ciyt9N4Snv23JqR4F7gbFzoXHLtX0FKe3xSjBqydP6G



Scale = 1:85.6

Plate Offsets (X,Y)--   [2:0-5-7,0-0-0], [3:0-5-3,0-0-0], [26:0-2-0,0-2-11], [34:0-2-8,0-3-0], [41:0-2-8,0-3-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.25 | Vert(LL) | 0.00 | 27 | n/r | 180 | MT20 | 185/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.17 | Vert(CT) | 0.02 | 27 | n/r | 80 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.13 | Horz(CT) | 0.01 | 26 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 222 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 SPF 1650F 1.5E *Except*
           26-34: 2x4 HF No.1&Btr
WEBS          2x4 SPF Stud
OTHERS       2x4 SPF Stud

**BRACING-**
TOP CHORD     Structural wood sheathing directly applied or 6-0-0 oc purlins, except
                       end verticals.
BOT CHORD     Rigid ceiling directly applied or 6-0-0 oc bracing.

**REACTIONS.**    All bearings 46-3-0.
     (lb) -   Max Horz 48=-118(LC 9)
           Max Uplift   All uplift 100 lb or less at joint(s) 40, 41, 42, 43, 44, 45, 46, 47, 38, 37, 36, 35, 34, 33, 32, 31,
                 30, 29 except 48=-132(LC 4), 26=-113(LC 5), 28=-116(LC 9)
           Max Grav   All reactions 250 lb or less at joint(s) 39, 40, 41, 42, 43, 44, 45, 46, 47, 38, 37, 36, 35, 34, 33,
                 32, 31, 30 except 48=268(LC 1), 26=353(LC 20), 28=478(LC 1)

**FORCES.**   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD     2-48=-251/141
WEBS          24-28=-341/155

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) Truss designed for wind loads in the plane of the truss only. For studs exposed to wind (normal to the face), see Standard Industry
   Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
4) All plates are 2x4 MT20 unless otherwise indicated.
5) Gable requires continuous bottom chord bearing.
6) Gable studs spaced at 2-0-0 oc.
7) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
8) Solid blocking is required on both sides of the truss at joint(s), 26.
9) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) 40, 41, 42, 43, 44, 45,
   46, 47, 38, 37, 36, 35, 34, 33, 32, 31, 30, 29 except (jt=lb) 48=132, 26=113, 28=116.





COR F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design. Bracing indicated is to prevent buckling of individual truss web and/or chord members only. Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage. For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information** available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:151

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | AG5 | MONOPITCH SUPPORTED | 1 | 1 | | I31070965 |
| | | | | | Job Reference (optional) | |

El paso truss,     El Paso Texas
7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:46 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-4uWGMj44YCAwx_0HpqBqoBLipkEEIkEoIbCHjHydP6F



Scale = 1:22.1

Plate Offsets (X,Y)--  [2:0-2-5,0-5-0], [4:0-5-3,0-0-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.20 | Vert(LL) | 0.01 | 1 | n/r | 180 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.07 | Vert(CT) | -0.01 | 1 | n/r | 80 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.02 | Horz(CT) | -0.00 | 7 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 25 lb | FT = 0% |

**LUMBER-**
TOP CHORD  2x4 SPF 1650F 1.5E
BOT CHORD  2x4 SPF 1650F 1.5E
WEBS       2x4 SPF Stud
OTHERS     2x4 SPF Stud

**BRACING-**
TOP CHORD    Structural wood sheathing directly applied or 4-7-8 oc purlins,  except
             end verticals.
BOT CHORD    Rigid ceiling directly applied or 10-0-0 oc bracing.

**REACTIONS.**    All bearings 4-7-8.
       (lb) -  Max Horz 10=106(LC 5)
               Max Uplift  All uplift 100 lb or less at joint(s) 7, 8 except 10=-164(LC 4), 9=-177(LC 5)
               Max Grav  All reactions 250 lb or less at joint(s) 7, 8, 9 except 10=314(LC 16)

**FORCES.**   (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD      2-10=-280/164

**NOTES-**
1) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
2) Truss designed for wind loads in the plane of the truss only.  For studs exposed to wind (normal to the face), see Standard Industry
   Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
3) Gable requires continuous bottom chord bearing.
4) Truss to be fully sheathed from one face or securely braced against lateral movement (i.e. diagonal web).
5) Gable studs spaced at 2-0-0 oc.
6) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
7) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) 7, 8 except (jt=lb)
   10=164, 9=177.

CHAD M. KOMNICK
111039
COR  F-12513
September 15,2017



⚠ WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:152

El paso truss,  El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:47 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-Z44ea35jJWInZ8bTMXj3KOtmy8TnU50xWFxqFjydP6E





Scale = 1:52.0

Plate Offsets (X,Y)-- [2:0-3-4,0-1-3], [10:0-5-2,0-1-3], [13:0-4-0,0-3-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.69 | Vert(LL) | -0.18 | 12-13 | >999 | 360 | MT20 | 197/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.57 | Vert(CT) | -0.40 | 12-13 | >819 | 240 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.44 | Horz(CT) | 0.10 | 10 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 102 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 SPF 1650F 1.5E
WEBS          2x4 SPF Stud
SLIDER        Left 2x4 SPF Stud 1-9-2, Right 2x4 SPF Stud 1-9-2

**BRACING-**
TOP CHORD      Structural wood sheathing directly applied or 3-1-9 oc purlins.
BOT CHORD      Rigid ceiling directly applied or 10-0-0 oc bracing.

**REACTIONS.**  (lb/size)  2=1222/0-3-8, 10=1222/0-3-8
Max Horz 2=-62(LC 9)
Max Uplift 2=-267(LC 4), 10=-267(LC 5)

**FORCES.**  (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD    2-3=-2526/409, 3-4=-2481/408, 4-5=-2599/375, 5-6=-2076/300, 6-7=-2076/300, 7-8=-2599/375, 8-9=-2481/408,
9-10=-2525/409
BOT CHORD    2-14=-405/2326, 13-14=-388/2487, 12-13=-336/2487, 10-12=-343/2326
WEBS          4-14=0/269, 5-13=-626/211, 6-13=-41/696, 7-13=-626/211, 8-12=0/269

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
(envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
4) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) except (jt=lb) 2=267,
10=267.





COR F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.

MiTek®
16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:153

| Job | Truss | Truss Type | Qty | Ply | 9328 McFall | |
|-----|-------|-----------|-----|-----|-------------|---|
| SYNE-9328 | BG | GABLE | 1 | 1 | | I31070967 |
| | | | | | Job Reference (optional) | |

El paso truss,    El Paso Texas

7.640 s Aug 16 2017 MiTek Industries, Inc.  Fri Sep 15 11:16:47 2017  Page 1
ID:XEqBKFYfxsKWEe0?8PIIEYydQuK-Z44ea35jJWInZ8bTMXj3KOts18UeU5BxWFxqFjydP6E



Scale = 1:53.8



-2-0-0 / 2-0-0 | 4-6-4 / 4-6-4 | 9-1-1 / 4-6-13 | 13-9-0 / 4-7-15 | 18-4-15 / 4-7-15 | 22-11-12 / 4-6-13 | 27-6-0 / 4-6-4 | 29-6-0 / 2-0-0

6-10-9 / 6-10-9 | 13-9-0 / 6-10-7 | 20-7-7 / 6-10-7 | 27-6-0 / 6-10-9

Plate Offsets (X,Y)--  [10:Edge,0-6-15], [13:0-4-0,0-3-0]

| LOADING (psf) | | SPACING- | 2-0-0 | CSI. | | DEFL. | in | (loc) | l/defl | L/d | PLATES | GRIP |
|---------------|---|----------|-------|------|---|-------|-----|-------|--------|-----|--------|------|
| TCLL | 20.0 | Plate Grip DOL | 1.25 | TC | 0.30 | Vert(LL) | -0.21 | 12-13 | >999 | 360 | MT20 | 185/144 |
| TCDL | 10.0 | Lumber DOL | 1.25 | BC | 0.51 | Vert(CT) | -0.45 | 13-14 | >730 | 240 | | |
| BCLL | 0.0 | Rep Stress Incr | YES | WB | 0.43 | Horz(CT) | 0.12 | 10 | n/a | n/a | | |
| BCDL | 10.0 | Code IRC2015/TPI2014 | | (Matrix) | | | | | | | Weight: 111 lb | FT = 0% |

**LUMBER-**
TOP CHORD   2x4 SPF 1650F 1.5E
BOT CHORD   2x4 HF No.1&Btr
WEBS        2x4 SPF Stud
OTHERS      2x4 SPF Stud

**BRACING-**
TOP CHORD   Structural wood sheathing directly applied or 3-9-11 oc purlins.
BOT CHORD   Rigid ceiling directly applied or 8-5-15 oc bracing.

**REACTIONS.** (lb/size)  2=1222/0-3-8, 10=1222/0-3-8
Max Horz 2=58(LC 12)
Max Uplift 2=-268(LC 4), 10=-268(LC 5)

**FORCES.** (lb) - Max. Comp./Max. Ten. - All forces 250 (lb) or less except when shown.
TOP CHORD    2-3=-3250/515, 3-4=-3199/525, 4-5=-3031/438, 5-6=-2228/320, 6-7=-2228/320, 7-8=-3031/438, 8-9=-3199/526,
             9-10=-3250/516
BOT CHORD    2-14=-518/3085, 13-14=-416/2745, 12-13=-367/2745, 10-12=-469/3085
WEBS         5-14=0/363, 5-13=-724/212, 6-13=-58/782, 7-13=-724/213, 7-12=0/363

**NOTES-**
1) Unbalanced roof live loads have been considered for this design.
2) Wind: ASCE 7-10; Vult=115mph (3-second gust) Vasd=91mph; TCDL=5.0psf; BCDL=4.8psf; h=15ft; Cat. II; Exp C; enclosed; MWFRS
   (envelope) gable end zone; cantilever left and right exposed ; end vertical left and right exposed; Lumber DOL=1.25 plate grip DOL=1.25
3) Truss designed for wind loads in the plane of the truss only.  For studs exposed to wind (normal to the face), see Standard Industry
   Gable End Details as applicable, or consult qualified building designer as per ANSI/TPI 1.
4) Gable studs spaced at 2-0-0 oc.
5) This truss has been designed for a 10.0 psf bottom chord live load nonconcurrent with any other live loads.
6) Solid blocking is required on both sides of the truss at joint(s), 10.
7) Provide mechanical connection (by others) of truss to bearing plate capable of withstanding 100 lb uplift at joint(s) except (jt=lb) 2=268,
   10=268.



COR F-12513
September 15,2017

⚠ **WARNING - Verify design parameters and READ NOTES ON THIS AND INCLUDED MITEK REFERENCE PAGE MII-7473 rev. 10/03/2015 BEFORE USE.**
Design valid for use only with MiTek® connectors. This design is based only upon parameters shown, and is for an individual building component, not
a truss system. Before use, the building designer must verify the applicability of design parameters and properly incorporate this design into the overall
building design.  Bracing indicated is to prevent buckling of individual truss web and/or chord members only.  Additional temporary and permanent bracing
is always required for stability and to prevent collapse with possible personal injury and property damage.  For general guidance regarding the
fabrication, storage, delivery, erection and bracing of trusses and truss systems, see **ANSI/TPI1 Quality Criteria, DSB-89 and BCSI Building Component**
**Safety Information**  available from Truss Plate Institute, 218 N. Lee Street, Suite 312, Alexandria, VA 22314.


**MiTek®**

16023 Swingley Ridge Rd
Chesterfield, MO 63017

AARB-1:154

# Symbols

## PLATE LOCATION AND ORIENTATION



Center plate on joint unless x, y offsets are indicated.
Dimensions are in ft-in-sixteenths.
Apply plates to both sides of truss and fully embed teeth.

1 3/4"

0- 1/16"

For 4 x 2 orientation, locate plates 0- 1/16" from outside edge of truss.

This symbol indicates the required direction of slots in connector plates.

\* Plate location details available in MiTek 20/20 software or upon request.

## PLATE SIZE

### 4 X 4

The first dimension is the plate width measured perpendicular to slots. Second dimension is the length parallel to slots.

## LATERAL BRACING LOCATION

Indicated by symbol shown and/or by text in the bracing section of the output. Use T or I bracing if indicated.

## BEARING



Indicates location where bearings (supports) occur. Icons vary but reaction section indicates joint number where bearings occur. Min size shown is for crushing only.

## Industry Standards:

ANSI/TPI1: National Design Specification for Metal Plate Connected Wood Truss Construction.

DSB-89: Design Standard for Bracing.

BCSI: Building Component Safety Information, Guide to Good Practice for Handling, Installing & Bracing of Metal Plate Connected Wood Trusses.



---

# Numbering System



6-4-8

dimensions shown in ft-in-sixteenths
(Drawings shown not to scale)

TOP CHORD

C1-8

C1-2

W1-7

1    2                TOP CHORDS    3

W2-7    WEBS

C7-8    BOTTOM CHORDS    C6-7    W3-7    C2-3

8        7            W3-6

C5-6    W4-6    C3-4

C4-5

5    6    4

TOP CHORD

**JOINTS ARE GENERALLY NUMBERED/LETTERED AROUND THE TRUSS STARTING AT THE JOINT FARTHEST TO THE LEFT.**

**CHORDS AND WEBS ARE IDENTIFIED BY END JOINT NUMBERS/LETTERS.**

## PRODUCT CODE APPROVALS

ICC-ES Reports:

ESR-1311, ESR-1352, ESR1988
ER-3907, ESR-2362, ESR-1397, ESR-3282

Trusses are designed for wind loads in the plane of the truss unless otherwise shown.

Lumber design values are in accordance with ANSI/TPI 1 section 6.3 These truss designs rely on lumber values established by others.

© 2012 MiTek® All Rights Reserved

---



# ⚠ General Safety Notes

## Failure to Follow Could Cause Property Damage or Personal Injury

1. Additional stability bracing for truss system, e.g. diagonal or X-bracing, is always required. See BCSI.

2. Truss bracing must be designed by an engineer. For wide truss spacing, individual lateral braces themselves may require bracing, or alternative T or I bracing should be considered.

3. Never exceed the design loading shown and never stack materials on inadequately braced trusses.

4. Provide copies of this truss design to the building designer, erection supervisor, property owner and all other interested parties.

5. Cut members to bear tightly against each other.

6. Place plates on each face of truss at each joint and embed fully. Knots and wane at joint locations are regulated by ANSI/TPI 1.

7. Design assumes trusses will be suitably protected from the environment in accord with ANSI/TPI 1.

8. Unless otherwise noted, moisture content of lumber shall not exceed 19% at time of fabrication.

9. Unless expressly noted, this design is not applicable for use with fire retardant, preservative treated, or green lumber.

10. Camber is a non-structural consideration and is the responsibility of truss fabricator. General practice is to camber for dead load deflection.

11. Plate type, size, orientation and location dimensions indicated are minimum plating requirements.

12. Lumber used shall be of the species and size, and in all respects, equal to or better than that specified.

13. Top chords must be sheathed or purlins provided at spacing indicated on design.

14. Bottom chords require lateral bracing at 10 ft. spacing, or less, if no ceiling is installed, unless otherwise noted.

15. Connections not shown are the responsibility of others.

16. Do not cut or alter truss member or plate without prior approval of an engineer.

17. Install and load vertically unless indicated otherwise.

18. Use of green or treated lumber may pose unacceptable environmental, health or performance risks. Consult with project engineer before use.

19. Review all portions of this design (front, back, words and pictures) before use. Reviewing pictures alone is not sufficient.

20. Design assumes manufacture in accordance with ANSI/TPI 1 Quality Criteria.

---



MiTek Engineering Reference Sheet: MII-7473 rev. 10/03/2015

---

| | |
|---|---|
| **From:** | no-reply@efilingmail.tylertech.cloud |
| **Sent:** | Monday, November 13, 2023 10:05 AM |
| **To:** | MRN@MRN4Law.com |
| **Subject:** | Filing Accepted for Case: 2021DCV2346; Eldon Rodriguez and Maria RodriguezVSHeather Harmston, Jaime Gardea, Synergy Construct LLC, GC RENTALS AND MANAGEMENT LLC, Megan Tara Harris; Envelope Number: 81539749 |



# Filing Accepted

Envelope Number: 81539749
Case Number: 2021DCV2346
Case Style: Eldon Rodriguez and Maria
RodriguezVSHeather Harmston, Jaime Gardea,
Synergy Construct LLC, GC RENTALS AND
MANAGEMENT LLC, Megan Tara Harris

The filing below was reviewed and has been accepted by the clerk's office. You may access the file stamped copy of the document filed by clicking on the below link.If the link does not work, please copy the link and paste into your browser. You can also obtain this document by following the steps on this article.

| **Filing Details** | |
|---|---|
| **Court** | El Paso County - District Clerk |
| **Case Number** | 2021DCV2346 |
| **Case Style** | Eldon Rodriguez and Maria RodriguezVSHeather Harmston, Jaime Gardea, Synergy Construct LLC, GC RENTALS AND MANAGEMENT LLC, Megan Tara Harris |
| **Date/Time Submitted** | 11/10/2023 8:33 PM MST |
| **Date/Time Accepted** | 11/13/2023 10:04 AM MST |
| **Accepted Comments** | THANK YOU FOR E-FILING / VCABLES |
| **Filing Type** | EFileAndServe |
| **Filing Description** | Amended witness list |
| **Activity Requested** | Amended Filing |
| **Filed By** | Michael Nevarez |
| **Filing Attorney** | Michael Nevarez |

| **Document Details** | |
|---|---|
| **Lead Document** | Plaintiffs' 3rd Amended List of Experts.pdf |
| **Lead Document Page Count** | 7 |

| File Stamped Copy | [Download Document](#) |
|---|---|
| This link is active for 30 days. | |

**Please Note:** If you have not already done so, be sure to add yourself as a service contact on this case in order to receive eService.

For technical assistance, contact your service provider



Online: https://prodocefile.com
Phone: (800) 759-5418
Available 24x7 and online with chat

Please do not reply to this email. It was automatically generated.

| | |
|---|---|
| **From:** | TERRY SILVA <tsilva@MGMSG.com> |
| **Sent:** | Monday, November 13, 2023 10:46 AM |
| **To:** | mnevarez@lawofficesmrn.com; Blake Downey; Mario Gonzalez |
| **Cc:** | VIRGINIA MUNOZ; HALA ABDEL-JABER; James A. Martinez |
| **Subject:** | Eldon Rodriguez, et al v. GC Rentals and Management, LLC, et al (Cause No. 2021DCV2346) |
| **Attachments:** | Objections to Plaintiffs' Third Amended Notice of Deposition of Corporate Representative of GC Rentals and Management.pdf |

Good morning counsel, attached is our Objections to Plaintiffs' Third Amended Notice of Deposition of Corporate Representative of GC Rentals and Management. I appreciate your time and consideration. Thank you and have a great day.



Terry Silva
Legal Secretary to Hala Abdel-Jaber, Michael Garcia and Elena Esparza
MOUNCE, GREEN, MYERS,
SAFI, PAXSON & GALATZAN, PC
100 N. Stanton, Suite 1000
El Paso, TX 79901

P.O. Box 1977
El Paso, TX 79999-1977
(915)532-2000 ext. 201
(915)541-1526 fax
tsilva@mgmsg.com

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
171st JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELDON RODRIGUEZ and MARIA RODRIGUEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 2021DCV2346 |
| HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and MEGAN TARA HARRIS, | § § § § § § § § | |
| Defendants. | § § | |

**OBJECTIONS TO PLAINTIFFS' THIRD AMENDED NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF GC RENTALS AND MANAGEMENT, LLC d/b/a REALTY ONE GROUP MENDEZ BURK**

TO:   ELDON RODRIGUEZ and MARIA RODRIGUEZ, by and through their attorney of record, Michael Nevarez, 7362 Remcon Circle, El Paso, Texas 79912.

COMES NOW GC RENTALS AND MANAGEMENT, LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and serves its Responses and Objections to Plaintiffs' Third Amended Notice of Deposition of corporate representative of GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk, served on October 16, 2023.

1

1939-407/HABD/1754930

AARB-1:159

Respectfully submitted,

**MOUNCE, GREEN, MYERS,**
**SAFI, PAXSON & GALATZAN**
A Professional Corporation
P.O. Box 1977
El Paso, Texas 79999-1977
(915) 532-2000
(915) 541-1597 (fax)

By: _____

**James A. Martinez**
State Bar No. 00791192
**martinezja@jmeplaw.com**
**Hala A. Abdel-Jaber**
State Bar No. 24133142
abdel-jaber@mgmsg.com

*Attorneys for Defendants GC Rentals and Megan Tara Harris*

## CERTIFICATE OF SERVICE

In compliance with Texas Rule of Civil Procedure 21a (e), I, **Hala A. Abdel-Jaber** hereby certify that on the 13th day of November, 2023, a true and correct copy of the foregoing document filed electronically with the clerk of the court in accordance with Texas Rule of Civil Procedure 21a (f)(1) is served on the following parties or attorney(s): Michael Nevarez, 7362 Remcon Circle, El Paso, Texas 79912, mnevarez@lawofficesmrn.com, M. Blake Downey, One San Jacinto Plaza, 201 N. Main Drive, Suite 1100, El Paso, Texas 79901, bdow@scotthulse.com, and Mario A. Gonzalez, 1522 Montana Avenue #100, El Paso, Texas 79902, mario@gonzalezlawfirm.com.

_____

**HALA A. ABDEL-JABER**

2

1939-407/HABD/1754930

AARB-1:160

# OBJECTIONS TO THE TOPICS OF CORPORATE REPRESENTATIVE

**A.     Identity of Clients in this Matter.**

**OBJECTION:**     This Defendant objects to the extent this is overly broad, unduly burdensome and vague as to Plaintiffs use of the phrase "Identity of Clients." Use of such phrase is vague and ambiguous as such phrase fails to identify with reasonable particularity the information requested. This Defendant should not be required to guess the level of specificity that Plaintiffs so requests. Defendant further objects to the extent this calls for legal conclusion this Defendant is not qualified to give.

**B.     Authority to Represent.**

**OBJECTION:**     This Defendant objects to the extent this is vague and ambiguous as written, overly broad, unduly burdensome and completely unlimited in time and scope nor reasonably calculated to lead to the discovery of admissible evidence.

**C.     Contracts/Agreements for Representation.**

**OBJECTION:**     This Defendant objects to the extent this is vague and ambiguous as written, overly broad and unduly burdensome and contains no reasonable limitations.

**D.     History of Representation.**

**OBJECTION:**     This Defendant objects to the extent this is vague, ambiguous, overly broad and unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

**E.     Fiduciary Duty to Clients.**

**OBJECTION:**     This Defendant objects to the extent this is overly broad, vague and ambiguous as to the phrase "Clients" and calls for legal conclusion this Defendant is not qualified to give.

**F.     Entity Structure and Hierarchy.**

**OBJECTION:**     This Defendant objects to the extent this is overly broad and seeks information that is not limited to any claim or defense nor reasonably calculated to lead to any discovery of admissible evidence.

3

**G.      Ethics and Principles of the Company and Duties Owed to Clients.**

**OBJECTION:**          This Defendant objects to the extent this is vague, overly broad and unduly burdensome. Defendant objects to this to the extent that it requires Defendant to describe the conditions and/or actions of another Defendant and calls for legal conclusion.

**H.      Earnings, Commissions and Expenses.**

**OBJECTION:**          This Defendant objects to the extent this is vague, ambiguous, overly broad, unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

**I.      Insurance, Indemnity and Surety Coverage.**

**ASSERTION OF PRIVILEGE:**      To the extent that this seeks information that is protected by the attorney-client and work product privileges, such information will be withheld.

**OBJECTION:**          This Defendant objects to the extent this is vague and ambiguous and exceeds the scope of insurance discovery pursuant to Texas Rule of Civil Procedure 192.3(f).

**J.      Employment-Contract Personnel Matters.**

**OBJECTION:**          This Defendant objects to the extent this is vague and ambiguous, fails to identify parties and completed unlimited in time and scope.

**K.      Training and Education.**

**OBJECTION:**          This Defendant objects to the extent this is vague and ambiguous as written, overly broad and unduly burdensome and contains no reasonable limitations.

**L.      Complaints.**

**OBJECTION:**          This Defendant objects to the extent this is vague and ambiguous, fails to identify specific witnesses, overly broad and unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

**M.      Disciplinary Matters.**

**OBJECTION:**          This Defendant objects to the extent this is vague and ambiguous, fails to identify specific witnesses, overly broad and unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

4

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
171st JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELDON RODRIGUEZ and MARIA RODRIGUEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 2021DCV2346 |
| HEATHER HARMSTON, JAIME GARDEA, SYNERGY CONSTRUCT LLC, GC RENTALS AND MANAGEMENT LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and MEGAN TARA HARRIS, | § § § § § § § § | |
| Defendants. | § § | |

**OBJECTIONS TO PLAINTIFFS' THIRD AMENDED NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF GC RENTALS AND MANAGEMENT, LLC d/b/a REALTY ONE GROUP MENDEZ BURK**

TO:  ELDON RODRIGUEZ and MARIA RODRIGUEZ, by and through their attorney of record, Michael Nevarez, 7362 Remcon Circle, El Paso, Texas 79912.

COMES NOW GC RENTALS AND MANAGEMENT, LLC d/b/a REALTY ONE GROUP MENDEZ BURK, and serves its Responses and Objections to Plaintiffs' Third Amended Notice of Deposition of corporate representative of GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk, served on October 16, 2023.

1

Respectfully submitted,

**MOUNCE, GREEN, MYERS,**
**SAFI, PAXSON & GALATZAN**
A Professional Corporation
P.O. Box 1977
El Paso, Texas 79999-1977
(915) 532-2000
(915) 541-1597 (fax)

By: _____

**James A. Martinez**
State Bar No. 00791192
**martinezja@jmeplaw.com**
**Hala A. Abdel-Jaber**
State Bar No. 24133142
abdel-jaber@mgmsg.com

*Attorneys for Defendants GC Rentals and Megan*
*Tara Harris*

## CERTIFICATE OF SERVICE

In compliance with Texas Rule of Civil Procedure 21a (e), I, **Hala A. Abdel-Jaber** hereby certify that on the 13th day of November, 2023, a true and correct copy of the foregoing document filed electronically with the clerk of the court in accordance with Texas Rule of Civil Procedure 21a (f)(1) is served on the following parties or attorney(s): Michael Nevarez, 7362 Remcon Circle, El Paso, Texas 79912, mnevarez@lawofficesmrn.com, M. Blake Downey, One San Jacinto Plaza, 201 N. Main Drive, Suite 1100, El Paso, Texas 79901, bdow@scotthulse.com, and Mario A. Gonzalez, 1522 Montana Avenue #100, El Paso, Texas 79902, mario@gonzalezlawfirm.com.

_____

**HALA A. ABDEL-JABER**

2

# OBJECTIONS TO THE TOPICS OF CORPORATE REPRESENTATIVE

**A.      Identity of Clients in this Matter.**

**OBJECTION:**      This Defendant objects to the extent this is overly broad, unduly burdensome and vague as to Plaintiffs use of the phrase "Identity of Clients." Use of such phrase is vague and ambiguous as such phrase fails to identify with reasonable particularity the information requested. This Defendant should not be required to guess the level of specificity that Plaintiffs so requests. Defendant further objects to the extent this calls for legal conclusion this Defendant is not qualified to give.

**B.      Authority to Represent.**

**OBJECTION:**      This Defendant objects to the extent this is vague and ambiguous as written, overly broad, unduly burdensome and completely unlimited in time and scope nor reasonably calculated to lead to the discovery of admissible evidence.

**C.      Contracts/Agreements for Representation.**

**OBJECTION:**      This Defendant objects to the extent this is vague and ambiguous as written, overly broad and unduly burdensome and contains no reasonable limitations.

**D.      History of Representation.**

**OBJECTION:**      This Defendant objects to the extent this is vague, ambiguous, overly broad and unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

**E.      Fiduciary Duty to Clients.**

**OBJECTION:**      This Defendant objects to the extent this is overly broad, vague and ambiguous as to the phrase "Clients" and calls for legal conclusion this Defendant is not qualified to give.

**F.      Entity Structure and Hierarchy.**

**OBJECTION:**      This Defendant objects to the extent this is overly broad and seeks information that is not limited to any claim or defense nor reasonably calculated to lead to any discovery of admissible evidence.

1939-407/HABD/1754930

**G.** **Ethics and Principles of the Company and Duties Owed to Clients.**

**OBJECTION:** This Defendant objects to the extent this is vague, overly broad and unduly burdensome. Defendant objects to this to the extent that it requires Defendant to describe the conditions and/or actions of another Defendant and calls for legal conclusion.

**H.** **Earnings, Commissions and Expenses.**

**OBJECTION:** This Defendant objects to the extent this is vague, ambiguous, overly broad, unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

**I.** **Insurance, Indemnity and Surety Coverage.**

**ASSERTION OF PRIVILEGE:** To the extent that this seeks information that is protected by the attorney-client and work product privileges, such information will be withheld.

**OBJECTION:** This Defendant objects to the extent this is vague and ambiguous and exceeds the scope of insurance discovery pursuant to Texas Rule of Civil Procedure 192.3(f).

**J.** **Employment-Contract Personnel Matters.**

**OBJECTION:** This Defendant objects to the extent this is vague and ambiguous, fails to identify parties and completed unlimited in time and scope.

**K.** **Training and Education.**

**OBJECTION:** This Defendant objects to the extent this is vague and ambiguous as written, overly broad and unduly burdensome and contains no reasonable limitations.

**L.** **Complaints.**

**OBJECTION:** This Defendant objects to the extent this is vague and ambiguous, fails to identify specific witnesses, overly broad and unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

**M.** **Disciplinary Matters.**

**OBJECTION:** This Defendant objects to the extent this is vague and ambiguous, fails to identify specific witnesses, overly broad and unduly burdensome as it is completely unlimited in time and contains no reasonable limitations.

4

 **.net**        FINANCIAL     FITNESS & HEALTH     MATH     OTHER

home / other / date calculator

# Date Calculator

## Days Between Two Dates

Find the number of years, months, weeks, and days between dates. Click "Settings" to define holidays.



| Start Date | Dec ∨ | 4 ∨ | 2023 | 📅 |
| End Date | Dec ∨ | 14 ∨ | 2023 | 📅 |

☐ include end day (add 1 day)

**Calculate**      **Settings**

[          ] Search

## Add to or Subtract from a Date

Result

## Jan 3, 2024, Wednesday

is the date 30 days after Dec 4, 2023

| **December 2023** | | | | | | | **January 2024** | | | | | | |
| S | M | T | W | T | F | S | S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |   | 1 | 2 | 3 | 4 | 5 | 6 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 | 28 | 29 | 30 | 31 |   |   |   |

### Other Calculators

| Age | Date |
| Time | Hours |
| GPA | Grade |
| Height | Concrete |
| IP Subnet | Bra Size |
| Password Generator | Dice Roller |
| Conversion | More Other Calculators |

Financial | Fitness and Health | Math | Other

31



**Related**

Time Calculator | Age Calculator

## History of the Gregorian Calendar

The Gregorian calendar is the most prevalently used calendar today. Within this calendar, a standard year consists of 365 days with a leap day being introduced to the month of February during a leap year. The months of April, June, September, and November have 30 days, while the rest have 31 days except for February, which has 28 days in a standard year, and 29 in a leap year.

The Gregorian calendar is a reformed version of the Julian calendar, which was itself a modification of the ancient Roman calendar. The ancient Roman calendar was believed to be an observational lunar calendar, based on the cycles of the moon's phases. The Romans were then believed to have adopted a 10-month calendar with 304 days, leaving the remaining 50 or so days as an unorganized winter. This calendar allowed the summer and winter months to become completely misplaced, leading to the adoption of more accurate calendars.

AARB-1:168

The Republican calendar later used by Rome followed Greek calendars in its assumptions of 29.5 days in a lunar cycle and 12.5 synodic months in a solar year, which align every fourth year upon the addition of the intercalary months of January and February. From this point, many attempts were made to align the Republican calendar with the solar year including the addition of an extra month to certain years to supplant the lack of days in a particular year. In 46 BC, the calendar was further reformed by Julius Caesar, introducing an algorithm that removed the dependence of calendars from the observation of the new moon. In order to accomplish this, Caesar inserted an additional 10 days into the Republican calendar, making the total number of days in a year 365. He also added the intercalation of a leap day every fourth year, all in an attempt to further synchronize the Roman calendar with the solar year.

Despite all efforts, the Julian calendar still required further reform, since the calendar drifted with respect to the equinoxes and solstices by approximately 11 minutes per year. By 1582, this resulted in a difference of 10 days from what was expected. Pope Gregory XIII addressed this by essentially skipping 10 days in the date, making the day after October 4, 1582, October 15. An adjustment was also made to the algorithm of the Julian calendar that changed which century years would be considered leap years. Under the Gregorian calendar, century years not divisible by 400 would not be leap years. These changes reduced the error from 1 day in 128 years, to 1 day in 3,030 years with respect to the current value of the mean solar year.

The adoption of the Gregorian calendar occurred slowly over a period of centuries, and despite many proposals to further reform the calendar, the Gregorian Calendar still prevails as the most commonly used dating system worldwide.

## Holidays

A holiday is a day that, either by custom or by law, is set aside such that regular activities like going to work or school are suspended, or at least reduced. The term "holiday" can be interpreted differently, depending on the region. In the U.S., paid leave is typically referred to as "vacation," while national, religious, or cultural days off are referred to exclusively as "holiday." In some regions, however, such as the United Kingdom or former British colonies, the term holiday can also refer to paid leave.

Generally, holidays are meant to commemorate some event, person, or group of cultural or religious significance. Although certain holidays, such as Christmas and New Year's Day, are widely celebrated worldwide, most countries have their own set of holidays that are specific to the country, and even the same holidays may be observed differently within countries: some may receive a full suspension of typical daily activities, while others may only get partial days off. Certain countries have holidays that essentially shut down almost

all businesses. As an example, in Brazil, Carnaval do Brasil results in almost a full week in which only industrial production, retail establishments, or carnival-related businesses, function.

This calculator is mainly geared towards U.S. holidays, but holidays specific to a given country can be entered manually. Certain holidays can also be excluded. For a further level of specificity, federal holidays in the U.S. refer to holidays that have been recognized by the U.S. government; on these days, non-essential federal government offices are closed, and all federal employees receive paid leave. This is not necessarily true in the private sector, however, and which federal holidays a private sector employee receives is largely dependent on the discretion of the company. In some cases, an employee who is required to work on a federal holiday may receive compensation in the form of holiday pay in addition to their regular wages.

Certain holidays such as New Year's Day are referred to as "fixed holidays," since they fall on the same date every year. Others, such as the birthday of Martin Luther King, Jr., don't have a fixed date, because they occur on a "floating Monday"; in this particular case, the holiday occurs on the third Monday of January. Another widely observed holiday in the U.S., Thanksgiving, occurs on a "floating Thursday," the fourth Thursday In November, hence the dates of these holidays vary by year. Below are two tables showing the dates of federal holidays in the U.S. for 2023 and 2024.

**2023 U.S. Federal Holidays**

| New Year's Day | Jan. 1, 2023 |
|---|---|
| Martin Luther King Jr. Day | Jan. 16, 2023 |
| President's Day | Feb. 20, 2023 |
| Memorial Day | May. 29, 2023 |
| Juneteenth Day | Jun. 19, 2023 |
| Independence Day | Jul. 4, 2023 |
| Labor Day | Sep. 4, 2023 |
| Columbus Day | Oct. 9, 2023 |
| Veteran's Day | Nov. 11, 2023 |
| Thanksgiving | Nov. 23, 2023 |
| Christmas | Dec. 25, 2023 |

**2024 U.S. Federal Holidays**

AARB-1:170

| | |
|---|---|
| New Year's Day | Jan. 1, 2024 |
| Martin Luther King Jr. Day | Jan. 15, 2024 |
| President's Day | Feb. 19, 2024 |
| Memorial Day | May. 27, 2024 |
| Juneteenth Day | Jun. 19, 2024 |
| Independence Day | Jul. 4, 2024 |
| Labor Day | Sep. 2, 2024 |
| Columbus Day | Oct. 14, 2024 |
| Veteran's Day | Nov. 11, 2024 |
| Thanksgiving | Nov. 28, 2024 |
| Christmas | Dec. 25, 2024 |

about us | sitemap | terms of use | privacy policy    © 2008 - 2023 calculator.net

AARB-1:171

# IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS

# 171ST JUDICIAL DISTRICT

| | | |
|---|---|---|
| **ELDON RODRIGUEZ, and** | § | |
| **MARIA RODRIGUEZ** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 2021-DCV-2346** |
| | § | |
| **HEATHER HARMSTON,** | § | |
| **JAIME GARDEA,** | § | |
| **SYNERGY CONSTRUCT LLC,** | § | |
| **GC RENTALS AND MANAGEMENT LLC** | § | |
| **  d/b/a REALTY ONE GROUP MENDEZ BURK,** | § | |
| **GABRIEL MENDEZ, and** | § | |
| **MIGUEL CHACON,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' MOTION TO RECONSIDER, MOTION TO MODIFY, MOTION TO CORRECT, MOTION TO REFORM, MOTION TO VACATE, MOTION TO SET ASIDE AND MOTION FOR NEW TRIAL

**TO JUDGE BONNIE RANGEL OF THIS COURT:**

**COME NOW** Plaintiffs ELDON RODRIGUEZ and MARIA RODRIGUEZ (hereinafter

individually and/or jointly referred to as "RODRIGUEZ" and/or "Plaintiffs"), by and through the

undersigned counsel, and hereby file this "Plaintiffs' Motion To Reconsider, Motion To Modify,

Motion To Correct, Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For

New Trial" ("Motion"), in accordance with Rules 320, 324, and 329b of the Texas Rules of Civil

Procedure ("TRCP"), and in support thereof, would respectfully show unto the Court as follows:

### I.    PRELIMINARY STATMENT.

1.      Plaintiffs ELDON RODRIGUEZ and MARIA RODRIGUEZ timely file this

Motion, within thirty (30) days after the "Order on Defendants' Joint Motion For Sanctions,

Motion To Show Cause and Motion For Emergency Hearing" ("Order") was signed and filed by this Court in the above-styled and -numbered cause of action on December 4, 2023, in full accordance with Rules 320, 324, and 329b of the Texas Rules of Civil Procedure.

2.     This Motion prays the Court to reconsider, modify, correct, reform, vacate, and set aside the Order, and to set a new trial, on the basis that the Order herein, dismissing and denying all of Plaintiffs' claims against Defendants, in their entirety and with prejudice, and assessing all costs against Plaintiffs, is (a) clearly erroneous in law and fact, (b) constitutes legal error, (c) is arbitrary and capricious, tantamount to an abuse of discretion, (d) contrary to the principles of equity and good conscience and equal protection, and (e) violates the substantive and procedural due process rights afforded Plaintiffs under the Constitution of the State of Texas, and that of the United States of America.[1]

## II.     FACTUAL AND PROCEDURAL BACKGROUND.

3.     On July 7, 2021, RODRIGUEZ filed their "Original Petition And Request For Disclosure" ("Petition").  Attached to the Petition as Exhibit C was Plaintiffs' May 7, 2020 Demand Letter, therein seeking *inter alia* damages in the following amounts:

a.     **$11,391.00**, as reimbursement for the cost of RODRIGUEZ' move to Texas;

b.     **$12,726.00**, as reimbursement for the cost of the structural repairs and improvements incurred by RODRIGUEZ, and

c.     **$5,151.00**, as reimbursement for the cost RODRIGUEZ moving back to California.

---

[1] Plaintiffs hereby incorporate by reference thereto, for all intents and purposes, as if fully set forth herein, "Plaintiffs' Response To Defendants, GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's, Joint Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing" ("Response"), and all the exhibits attached thereto, which were filed in this Court on November 28, 2023.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 2 of 28

AARB-1:173

4. On June 23, 2022, RODRIGUEZ served "Plaintiffs' Rule 194.2 Initial Disclosures" on Defendant GARDEA. (See Response, Exhibit A).

5. On same date, June 23, 2022, RODRIGUEZ filed "Plaintiffs' Certificate of Written Discovery" certifying the "Plaintiffs' Rule 194.2 Initial Disclosures" were served on HARMSTON, GARDEA, and SYNERGY. (See Response, Exhibits B – D).

6. On July 1, 2022, GC RENTALS filed its "Defendant GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk's Original Answer." (See Response, Exhibit E).

7. On April 5, 2023, Plaintiffs were served with "Defendant GC Rentals And Management LLC's First Set Of Interrogatories And Requests For Production To Plaintiffs" ("Discovery Requests"). Significantly, the only interrogatories or requests for production in GC RENTALS' Discovery Requests pertinent herein are requests for production Nos. 33 and 36, which request the following:

33. Please produce records that reflect all repairs you performed on the Property from January 1, 2018 to the present.

36. If you had to have any of the work any Defendant performed repaired or corrected, please produce records that reflect the nature and cost of the repair or corrective work.

(See Response, Exhibit F).[2]

8. On May 5, 2023, RODRIGUEZ served "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers To Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs" on Defendant GC RENTALS.

---

[2] It is also significant for purposes of subject Motion that GC RENTALS' Discovery Requests nowhere request copies of documents reflecting the moving expenses claimed by RODRIGUEZ.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346     Page 3 of 28

AARB-1:174

("First Discovery Responses"). (See Response, Exhibit G).

9. On same date, May 5, 2023, RODRIGUEZ filed "Plaintiffs' Certificate of Written Discovery" certifying the "Plaintiff Eldon Rodriguez and Maria Rodriguez's Responses and Answers To Defendant GC Rentals and Management LLC's First Set of Interrogatories and Requests For Production To Plaintiffs" was served on GC RENTALS. (See Response, Exhibit H).

10. On May 18, 2023, Defendant GC RENTALS filed a Motion to Compel Plaintiffs' Responses to Defendant's First Set of Interrogatories and Requests for Production ("Motion to Compel"). (See Response, Exhibit I).

11. On June 19, 2023, the oral deposition of Plaintiff Eldon Rodriguez ("ELDON") commenced, and ELDON was examined regarding Plaintiffs' repair and moving expenses. (See Exhibit 01 attached hereto, Transcript page 29, lines 13-25; Transcript page 30, lines 1-6; Transcript page 32, lines 11-19; and Transcript page 125, lines 1-25).

12. On June 20, 2023, the oral deposition of ELDON continued, including the continuing examination of ELDON regarding Plaintiffs' repair and moving expenses. (See Exhibit 02 attached hereto, Transcript page 7, lines 13-22; Transcript page 10, lines 22-25; Transcript page 11, lines 1-25; Transcript page 12, lines 1-10; Transcript page 15, lines 13-25; Transcript page 16, lines 1-25; Transcript page 17, lines 1-25; Transcript page 18, lines 1-25; Transcript page 19, lines 1-25; Transcript page 21, lines 20-25; Transcript page 22, lines 1-25; Transcript page 24, lines 20-25; and Transcript page 25, lines 1-12).

13. On or about July 21, 2023, this Court heard Defendant GC RENTALS' Motion to Compel, wherein the undersigned counsel for RODRIGUEZ voluntarily agreed to amend their responses and produce all non-privileged documents responsive to Defendant GC RENTALS'

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 4 of 28

AARB-1:175

Requests for Production on or before August 4, 2023.

14. On July 26, 2023, this Court signed an "Order Denying Plaintiffs' Motion For Sanctions." (See Exhibit 03 attached hereto).

15. On same date, July 26, 2023, this Court signed an "Order On Defendant's Motion To Compel Discovery Against Plaintiffs" ("Order On GC RENTALS' Motion To Compel") ruling in accordance with the above-mentioned voluntary agreement of undersigned counsel for RODRIGUEZ. (See Exhibit 04 attached hereto).

16. On August 4, 2023, RODRIGUEZ timely complied with subject Order, by providing GC RENTALS with "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers to Defendant GC Rentals and Management LLC's First Set Interrogatories and Requests For Production To Plaintiffs" ("Second Discovery Responses"), on Defendant GC RENTAL. Significantly, in response to GC RENTALS' Discovery Requests, RODRIGUEZ responded to Requests For Production ("RFP") Nos. 33 and 36 pertinent herein, as follows:

33. Please produce records that reflect all repairs you performed on the Property from January 1, 2018 to the present.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

As a Supplementary Response, and without waiving the foregoing objection, Plaintiffs respond as follows: No

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346            Page 5 of 28

AARB-1:176

change to the foregoing response, except to add:

1.  In accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4), Plaintiffs will produce for inspection and copying all documents responsive to this request on August 4, 2023, at 9 AM MST, at 7362 Remcon Circle, El Paso, Texas 79912.
2.  **None available at this time.**
3.  See deposition of Eldon Rodriguez.

(emphasis added). (See Response, Exhibit M).

36.  If you had to have any of the work any Defendant performed repaired or corrected, please produce records that reflect the nature and cost of the repair or corrective work.

*Response:*

Because this request requires the production of voluminous documents, they are not attached to this response. Instead, Plaintiffs will make available to Defendant all non-privileged documents in Plaintiffs' possession, custody and control, and provide the Defendant the reasonable opportunity to examine and copy the documents, at a mutually agreeable date, time and place, in accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4).

As a Supplementary Response, and without waiving the foregoing objection, Plaintiffs respond as follows: No change to the foregoing response, except to add:

4.  In accordance with Texas Rule of Civil Procedure 193.5, and 196.2(b)(4), Plaintiffs will produce for inspection and copying all documents responsive to this request on August 4, 2023, at 9 AM MST, at 7362 Remcon Circle, El Paso, Texas 79912.
5.  **None available at this time.**
6.  See deposition of Eldon Rodriguez.

(emphasis added) (See Response, Exhibit M).

17.  On August 4, 2023, RODRIGUEZ filed "Plaintiffs' Certificate of Written

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 6 of 28

AARB-1:177

Discovery" certifying that "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers to Defendant GC Rentals and Management LLC's First Set Interrogatories and Requests For Production To Plaintiffs" was served on GC RENTALS. (See Response, Exhibit N).

18.     On same date, August 4, 2023, RODRIGUEZ served "Plaintiffs' First Supplementary TRCP Rule 194 Required Disclosures" on HARMSTON, GARDEA, SYNERGY and GC RENTALS and filed "Plaintiffs' Certificate of Written Discovery." (See Response, Exhibits O and P).

19.     On August 4, 2023, GC RENTALS' counsel appeared at the undersigned's office in order to inspect and collect documents responsive to GC RENTALS' request for production. The documents responsive to said production were made available to Counsel for GC RENTALS for inspection and copying, in accordance with Plaintiffs' Second Discovery Responses. GC RENTALS' counsel was informed the documents could not be taken from undersigned's office for copying, but that copies could be made by the building receptionist at a cost. GC RENTALS' counsel did not agree with paying for copies, so undersigned's office offered to provide the documents via a DropBox link, to which GC RENTALS' Counsel agreed. Counsel for GARDEA and SYNERGY also appeared and requested copies of the complete file made available to Counsel for GC RENTALS for inspection and copying, and also agreed to receive documents via the DropBox link.[3]

20.     On August 4, 2023, the undersigned counsel produced to Counsel for GC

---

[3] The representation of Counsel for GC RENTALS, at Motion Page 2, claiming that "Plaintiffs' counsel *required* Defendants counsel to appear at his office in order to inspect and collect documents responsive to production", is thus false, as the undersigned had offered to provide Defendants' counsel electronic copies. (emphasis added).

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 7 of 28

AARB-1:178

RENTALS, HARMSTON, GARDEA and SYNERGY via DropBox all documents responsive to GC RENTALS' requests for production. (See Exhibit 05 attached hereto).

21.   On August 10, 2023, at 10:30 AM, undersigned counsel received a letter from Ms. Hala A. Abdel-Jaber ("ABDEL-JABER"), counsel for GC RENTALS, regarding the purported failure of Plaintiffs to fully respond to "Plaintiff Eldon Rodriguez and Maria Rodriguez's First Supplementary Responses and Answers to Defendant GC Rentals and Management LLC's First Set Interrogatories and Requests For Production To Plaintiffs."  (See Response, Exhibit Q).

22.   Significantly, said ABDEL-JABER letter did not at all raise or address the purported failure of Plaintiffs to (a) fully respond to RFP Nos. 33 and 36 pertinent herein, or (b) produce copies of documents reflecting the moving expenses claimed by RODRIGUEZ at issue herein.  (See Response, Exhibit Q).[4]

23.   On August 10, 2023, GC RENTALS served on Plaintiffs GC RENTALS' "Amended Notice Of Deposition", therein scheduling ELDON's deposition for October 17, 2023 at 10:00 a.m. (See Exhibit 06 attached hereto).

24.   On August 11, 2023, RODRIGUEZ filed their "Plaintiffs' Second Amended Petition" ("SAP"), therein seeking damages in the total amount of **$1,459,184.64**, not including interest, attorney's fees and costs, or other damages.  Attached to the SAP as Exhibit C was Plaintiffs' May 7, 2020 Demand Letter, therein seeking *inter alia* damages in the following amounts:

    a.   **$11,391.00**, as reimbursement for the cost of RODRIGUEZ' move to Texas;

---

[4] Therefore, there was no meet and confer regarding (a) subject responses to RFP Nos. 33 and 36, and (b) production of documents related to subject moving expenses, as required by Rule 191.2 of the Texas Rules of Civil Procedure, entitled "Conference", and Rule 3.11(I) of the Local Rules of the El Paso County, entitled "Hearings On Pre-Trial Motions, Exceptions, And Pleas— Pretrial Procedures (Civil Cases)."

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 8 of 28

AARB-1:179

b. **$12,726.00**, as reimbursement for the cost of the structural repairs and improvements incurred by RODRIGUEZ, and

c. **$5,151.00**, as reimbursement for the cost RODRIGUEZ moving back to California.

25. On November 8, 2023, the undersigned met with ELDON, in preparation for his upcoming deposition scheduled for November 9, 2023.[5] At the meeting, the question of Plaintiffs' repair and moving expenses arose again, to which ELDON informed the undersigned that an email previously had been sent to the undersigned by an unknown employee of ELDON's former company, "American Windows."

26. Consequently, that same day, November 8, 2023, the undersigned proceeded to examine the contents of his Microsoft Outlook client email folder for Plaintiffs, since the undersigned's Outlook Rules automatically forwards to the undersigned's Outlook folder for ELDON all of the emails sent from ELDON's personal email addresses: eldondr@att.net, or EldonDR9@gmail.com.

27. However, at first, the undersigned was unable to locate subject email, as subject email was NOT in the undersigned's Outlook folder for ELDON. Instead, after running a full search of all of the undersigned's Outlook folders, the undersigned discovered that subject email was in the undersigned's Outlook SPAM folder, because subject email had an unrecognizable email address of "Eldon Rodriguez <outlook_BAB554B1D5DBB81D@outlook.com>." (See subject "Exhibit No 1" attached to the Response, as Exhibit R).[6]

---

[5] Upon information and belief, GC RENTALS did not serve on Plaintiffs a second amended notice of deposition scheduling ELDON's deposition for November 9, 2023.

[6] GC RENTALS' Motion, at page 2, twice admits that the undersigned's reasoning for not producing said Exhibit was an "oversight." (See Exhibit 07 attached hereto, Transcript Page 197, Lines 10-19). As now confirmed by the November 9, 2023, deposition transcript of ELDON, the failure to produce subject email was thus not intentional or

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 9 of 28

AARB-1:180

28.     On November 9, 2023, ELDON's deposition resumed for a third day.  During said deposition, as had occurred during ELDON's previous depositions of June 19 and 20, 2023, Defendants' counsel examined ELDON as to the existence of written evidence of the repair damages and moving expenses alleged by Plaintiffs.  ELDON was persistent during examination that he had incurred the alleged repairs and moving expenses. (See Exhibit 07 attached hereto, Transcript page 5, lines 12-22; Transcript page 9, lines 23-25; Transcript page 11, lines 20-25; Transcript page 12, lines 1-14; Transcript page 14, lines 23-25; Transcript page 15, lines 1-11; Transcript page 24, lines 13-25; Transcript page 25, lines 1-20; Transcript page 26, lines 17-25; Transcript page 33, lines 21-25; Transcript page 53, lines 10-25; Transcript page 94, lines 19-25; Transcript page 95, lines 1-25; Transcript page 96, lines 1-25; and Transcript page 143, lines 13-25).[7]

29.     On same date of November 9, 2023, after the conclusion of Defendants' counsel examination of ELDON, the undersigned counsel commenced his examination of ELDON, and entered "Plaintiffs' Exhibit 1", Bates-Stamped pages "001-0014" into evidence, because said Exhibit No. 1 contained errors and omissions, and the undersigned sought to first tediously clarify those deficiencies during Defendants' counsel's presence at the deposition.  (See Exhibit 07 attached hereto, Transcript Pages 196-218) (See also Exhibit No. 1 attached as Response, Exhibit R).

30.     During the undersigned counsel's examination of ELDON, on November 9, 2023,

---

for purposes of concealment or disregard of the Court's Order, but rather was accidental, due to the unintended forwarding of said unrecognizable email address for ELDON, to the undersigned's Outlook SPAM folder.

[7] ELDON is approximately 84 years old and has memory problems due to a stroke, and could not accurately recall producing documentation concerning the alleged repairs subject of GC RENTALS' RFP Nos. 33 and 36, as the undersigned had not disclosed to ELDON that subject email had finally been located by the undersigned in the undersigned's Outlook SPAM folder.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 10 of 28

AARB-1:181

ELDON testified at length regarding the alleged repairs and moving expenses. (See Exhibit 07 attached hereto, Transcript page 197, lines 10-25; Transcript page 198, lines 1-25; Transcript page 199, lines 1-18; and Transcript page 204, lines 3-19).

31. On same date, November 9, 2023, undersigned counsel received an email from counsel for GARDEA and SYNERGY, requesting RODRIGUEZ produce all emails between undersigned counsel and RODRIGUEZ, which had been sent by RODRIGUEZ' children. (See Response, Exhibit S).

32. Perhaps more importantly, the next day, November 10, 2023, after completion of the undersigned counsel's line of questioning the previous day, November 9, 2023, Counsel for Defendants GC RENTALS, HARMSTON, GARDEA, and SYNERGY, each had ample opportunity to thoroughly examine ELDON under oath as to the contents of Exhibit No. 1. (See Exhibit 08 attached hereto, Transcript page 5, lines 22-25; Transcript page 6, lines 1-10; Transcript page 17, lines 2-25; Transcript page 18, lines 1-25; Transcript page 19, lines 1-25; Transcript page 25, lines 21-25; Transcript page 26, lines 1-25; Transcript page 27, lines 1-25; Transcript page 28, lines 1-25; Transcript page 29, lines 1-25; Transcript page 30, lines 1-25; Transcript page 31, lines 1-25; Transcript page 32, lines 1-25; Transcript page 33, lines 1-2; Transcript page 34, lines 19-25; Transcript page 35, line 25; Transcript page 36, lines 4-7; Transcript page 38, lines 24-25; Transcript page 39, lines 1-9; and Transcript page 44, lines 11-19).

33. Hence, on November 10, 2023, Counsel for Defendants GC RENTALS, HARMSTON, GARDEA, and SYNERGY thoroughly examined ELDON to their full satisfaction, and thereby waived any grounds for objection and sanctions herein, as to the following:

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 11 of 28

AARB-1:182

a. The requested records by RFP Nos. 33 and 36 at issue herein, and depicted on subject Exhibit No. 1, therein reflecting all repairs performed, repaired or corrected by RODRIGUEZ, in the amounts of **$8,926.00** and **$1,800.00**, for a total amount of **$10,726** for repair expenses; and

b. Moving expenses in the amounts of **$11,391.38**, **$5,151.50** and **$1,000.00**, as depicted on subject Exhibit No. 1, for a total amount of **$17,542.88** for moving expenses, which were NOT AT ALL subject of GC RENTALS' RFP Nos. 33 and 36, or any other discovery request.

(See Exhibit 08 attached hereto).

34. On same date, November 10, 2023, Maria Rodriguez' ("MARIA") deposition was taken, with MARIA also deposed as to Plaintiffs' moving expenses. (See Exhibit 09 attached hereto, Transcript page 29, lines 8-24).

35. On November 13, 2023, Defendants GC RENTALS, HARMSTON, GARDEA, and SYNERGY filed their "Defendants, GC Rentals and Management LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's, Joint Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing" ("GC RENTALS' Motion For Sanctions").

36. On November 13, 2023, ABDEL-JABER sent an email to Court Coordinator Loretta Mata ("MATA") requesting a hearing be scheduled for the Joint Motion For Sanctions, and thereby completely failing and disregarding her obligation to meet and confer with the undersigned counsel. (See Response, Exhibit T).[8]

37. On November 14, 2023, Ms. Terry Silva sent an email to MATA and all counsel confirming that the Joint Motion For Sanctions, Show Cause and Motion for Emergency Hearing

---

[8] ABDEL-JABER was then once again in blatant violation of (a) Rule 191.2 of the Texas Rules of Civil Procedure, entitled "Conference", and (b) Rule 3.11(I) of the Local Rules of the El Paso County, entitled "Hearings On Pre-Trial Motions, Exceptions, And Pleas— Pretrial Procedures (Civil Cases)."

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 12 of 28

AARB-1:183

has been set for November 28, 2023, at 2:00 PM. (See Response, Exhibit U).

38. On same date, November 14, 2023, this Court filed an "Order of Court Setting" scheduling the Joint Motion For Sanctions, Show Cause and Motion for Emergency Hearing for hearing on November 28, 2023, at 1:00 PM. (See Response, Exhibit V).

39. On November 15, 2023, undersigned counsel's paralegal Denise D. Macias ("MACIAS") sent an email to Mr. Justiss Rasberry ordering the transcripts of the deposition of Eldon Rodriguez and Maria Rodriguez that were taken on November 9th and November 10th, requesting confirmation that preparation of the transcripts would take approximately two to three weeks. No confirmation or response was ever received from Mr. Rasberry, the court reporter for GC RENTALS. (See Response, Exhibit W).

40. On November 16, 2023, MACIAS sent an email to Defendants' counsel as a meet and confer to ascertain their opposition to Plaintiffs' filing of a Motion for Continuance of the hearing on GC RENTALS' Motion For Sanctions. (See Exhibit 10 attached hereto).

41. On November 22, 2023, Defendant GC RENTALS served on Plaintiffs "Defendant GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk's Second Supplemental Initial Disclosures."

42. On November 28, 2023, RODRIGUEZ filed their "Motion For Continuance of Hearing on Defendants GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk, Heather Harmston, Jaime Gardea, Synergy Construct LLC's, Joint Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing" ("Motion For Continuance"). (See Exhibits 11 and 11a-11e attached hereto).

43. On same date, November 28, 2023, RODRIGUEZ filed "Plaintiffs' Response To Defendants GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk, Heather

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 13 of 28

AARB-1:184

Harmston, Jaime Gardea, Synergy Construct LLC's, Joint Motion For Sanctions Against Plaintiffs, Motion To Show Cause and Motion For Emergency Hearing" ("Response").

44.    On same date, November 28, 2023, at 10:44 AM, MACIAS provided the Court with a copy via email of said Motion For Continuance.  (See Exhibit 12 attached hereto).

45.    On same date, November 28, 2023, at 2:17 PM, Blake Downey, counsel for Defendants JAIME GARDEA and SYNERGY CONSTRUCT LLC, informed the undersigned via email that this Court had conducted a hearing on the Motion for Continuance of Motion For Sanctions, and had denied same, and was starting the hearing on GC RENTALS' Motion For Sanctions.[9]  (See Exhibit 13 attached hereto).

46.    On same date, November 28, 2023, after concluding a hearing on another case, the undersigned joined the hearing on GC RENTALS' Motion For Sanctions that was already in progress.

47.    On December 4, 2023, this Court signed and filed an "Order on Defendants' Joint Motion For Sanctions, Motion To Show Cause and Motion For Emergency Hearing" ("Order") against Plaintiffs ELDON RODRIUEZ and MARIA RODRIGUEZ, therein:

   a.    Granting "Defendants' Joint Motion for Sanctions, Motion to Show Cause and Motion for Emergency Hearing",

   b.    Ordering Plaintiffs to pay expenses related to Defendants expenses of discovery, expenses for depositions, and taxable court costs pursuant to Texas Rule of Civil Procedure 2l5.2(2); and

   c.    Ordering that all Plaintiffs' claims against Defendants are dismissed with prejudice to refiling pursuant to Texas Rule of Civil Procedure 215.2(5).

(See Exhibit 14 attached hereto).

---

[9]  The undersigned also received a telephone call from ABDEL-JABER confirming that the Court had conducted the hearing on the Motion for Continuance of Motion For Sanctions, had denied same, and had starting the hearing on GC RENTALS' Motion For Sanctions.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 14 of 28

AARB-1:185

48.     As of this filing, no findings of fact and conclusions of law have been filed in these proceedings.

## III.     ARGUMENT AND AUTHORITIES.

## A.     The Court Should Have Denied GC RENTALS' Motion For Sanctions.

49.     As stated in the Response, GC RENTALS' Motion For Sanctions should have been denied by the Court, and Plaintiffs awarded their reasonable attorneys' fees and expenses for responding to same, since:

a.     GC RENTALS' Motion failed to prove that RODRIGUEZ did in fact not comply with the Court's Order to "fully respond" to GC RENTALS' Discovery Requests, considering subject Exhibit No. 1 was not discovered by the undersigned, in his SPAM folder, due to "oversight", until the day before ELDON's deposition, and therefore there was no actual or intended violation by Plaintiffs of the Court's Order to "fully respond" to GC RENTALS' Discovery Requests;[10]

b.     In accordance with *TransAmerican*, the only possible sanction herein that has a "nexus" or "direct relationship" between the alleged "misconduct and sanction imposed" is the **$12,726.00** claimed by Plaintiffs, for the cost of the structural repairs and improvements incurred by RODRIGUEZ, in response to GC RENTALS' RFP Nos. 33 and 36;

c.     Defendants thoroughly examined ELDON to their full satisfaction, regarding subject deposition Exhibit No. 1, and thereby waived any grounds for objection and sanctions herein;

d.     Counsel for Defendants GC RENTALS, HARMSTON, GARDEA, and SYNERGY, did so each examine ELDON to their satisfaction, at said deposition of November 10, 2023, and thereby waived any grounds for objection and sanctions herein; and

e.     Defendants do not allege any bad faith, fraud or misrepresentation(s) by the Plaintiffs, or any callous disregard for the responsibilities of discovery under the rules by Plaintiffs' counsel, and therefore there can be no prejudice or discovery violation herein.

---

[10]  According to the online Cambridge Dictionary, the meaning of "oversight" is "a mistake made because of a failure to notice something."

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 15 of 28

AARB-1:186

(Response, Pages 14 and 18, Paragraphs 45-46 and 60, respectively).

50. The Order's imposition of "Death Penalty" sanctions herein thus can only be deemed inappropriate, excessive and contrary to appropriate guidelines, particularly since:

     a.    GC RENTALS' Second Discovery Responses had nothing to do with subject (a) moving expenses, or (b) RFP Nos. 33 and 36, regarding repair expenses;

     b.    GC RENTALS' Motion to Compel thus had nothing to do with subject (a) moving expenses, or (b) RFP Nos. 33 and 36, regarding repair expenses;

     c.    The Order On GC RENTALS' Motion To Compel therefore did not pertain to or address subject (a) moving expenses, or (b) RFP Nos. 33 and 36, regarding repair expenses; and

     d.    GC RENTALS' Motion For Sanctions thus was baseless and without support, as concerns subject (a) moving expenses, or (b) RFP Nos. 33 and 36, regarding repair expenses.

51. Critically, Plaintiffs' claims against HARMSTON, GARDEA and SYNERGY were also dismissed with prejudice by the Order, even though HARMSTON, GARDEA and SYNERGY had no standing or asserted rights in (a) GC RENTALS' Second Discovery Responses, (b) GC RENTALS' Motion to Compel, and/or (c) the Order On GC RENTALS' Motion To Compel.

52. As such, in dismissing Plaintiffs' claims against HARMSTON, GARDEA and SYNERGY, with prejudice, the Order is arbitrary and capricious, tantamount to an abuse of discretion.

53. For the foregoing reasons, the Court should vacate, modify, correct, and/or reform its Order and set a new trial, because (a) GC RENTALS' Motion should have been denied by the Court as baseless, regarding subject moving and repair expenses and (b) Plaintiffs' claims against HARMSTON, GARDEA and SYNERGY should never have been dismissed.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346        Page 16 of 28

AARB-1:187

**B.** **The Court Failed To Comply With Applicable TRCP Rule 215 Legal Standards.**

54.    As stated in the Response, concerning the imposition of sanctions pursuant to

TRCP Rule 215.2(b), in *Werley v. Cannon*, 344 S.W.3d 527, at 532-533 (Tex. App. 2011), the

Eighth Court of Appeals applied the Texas Supreme Court's two-part test established in

*Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991). (See Response, Pages

12-14, Paragraphs 40-44).

55.    In *Transamerican*, at 917, the Texas Supreme Court considered whether TRCP

215 sanctions were "just", and "set the bounds of permissible sanctions under Rule 215 within

which the trial court is to exercise sound discretion", therein holding that "whether an imposition

of sanctions is just is measured by two standards", stating as follows:

> First, a direct relationship must exist between the offensive conduct and the
> sanction imposed. This means that a just sanction must be directed against the
> abuse and toward remedying the prejudice caused the innocent party. It also
> means that the sanction should be visited upon the offender. The trial court must
> at least attempt to determine whether the offensive conduct is attributable to
> counsel only, or to the party only, or to both.
> . . .
>
> Second, just sanctions must not be excessive. The punishment should fit the
> crime. A sanction imposed for discovery abuse should be no more
> severe than necessary to satisfy its legitimate purposes. It follows that courts must
> consider the availability of less stringent sanctions and whether
> such lesser sanctions would fully promote compliance.

56.    Here, the Court completely failed to abide by the *Transamerican* standards, in that

the Court (a) did not "attempt to determine whether the offensive conduct is attributable to

counsel only, or to the party only, or to both", and (b) did not "consider the availability of less

stringent sanctions and whether such lesser sanctions would fully promote compliance."

57.    Moreover, here, as in *Transamerican:*

> The district court made no findings to support the sanctions imposed. Rule 215
> does not require a trial court to make findings before imposing discovery

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 17 of 28

AARB-1:188

sanctions, and we do not add such a requirement here. We note only that we do not have the benefit of any explanation by the district court for the severity of its ruling. It would obviously be helpful for appellate review of sanctions, especially when severe, to have the benefit of the trial court's findings concerning the conduct which it considered to merit sanctions, and we commend this practice to our trial courts. *See Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 882-883 (5th Cir. 1988).

*Id.* at 919, footnote 9.

58.     In the present case, as in *Transamerican*, it is not clear whether Plaintiffs or the undersigned counsel, or both, or neither, should be faulted for the failure to produce subject SPAM email prior to the final deposition of ELDON.  Here, to paraphrase *Transamerican*, at 918-919:

> Moreover, there is nothing in the record to indicate that the district court considered imposition of lesser sanctions or that such sanctions would not have been effective. If anything, the record strongly suggests that lesser sanctions should have been utilized and perhaps would have been effective. . . . The range of sanctions available to the district court under Rule 215 is quite broad. The district court dismissed TranAamerican's (Plaintiffs's) claims against Toma (Defendants) and rendered default judgment for Toma (Defendants) on its counterclaim solely because, as the record before us establishes, Plaintiffs's president failed to present himself for his deposition. Nothing in the record before us even approaches justification for so severe a sanction.[11]

59.     Accordingly, the Court should vacate, modify, correct, and/or reform its Order and set a new trial, because the Order herein (a) is not "just" within the meaning of TRCP Rule 215.2(b), (b) does not "determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both", (c) did not "consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.", and (d) made no findings to support the sanctions imposed.

---

[11] The situation herein is thus even more egregious than that in *Transamerican*, because in the case at hand Plaintiff ELDON presented himself for repeated depositions by three (3) attorneys for Defendants that lasted several days.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 18 of 28

AARB-1:189

## C. The Court's Order Is Manifestly Unjust And Unconstitutional.

60. In *Transamerican*, the Texas Supreme Court was confronted with a case where, as here, the sanction of dismissal was imposed against a party.

61. In *TransAmerican*, the Texas Supreme Court held that the severe discovery sanction of dismissal imposed by the district court was not only "manifestly unjust", in violation of Rule 215, but also unconstitutional, stating at 917-918 as follows:

> The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process. The sanctions the district court imposed against TransAmerican are the most devastating a trial court can assess against a party. When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale v. Rogers,* 357 U.S. 197, 209-10, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958), *citing Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350-51, 29 S.Ct. 370, 379-80, 53 L.Ed. 530 (1909), *and Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); *accord Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705-06, 102 S.Ct. 2099, 2105-06, 72 L.Ed.2d 492 (1982). Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Insurance Corp. of Ireland,* 456 U.S. 694, 705-06, 102 S.Ct. 2099, 2105-06; *Rogers,* 357 U.S. at 209-10, 78 S.Ct. at 1094; *Hammond Packing,* 212 U.S. at 350-51, 29 S.Ct. at 379-80.
> . . .
>
> Although punishment and deterrence are legitimate purposes for sanctions, *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Bodnow Corp. v. City of Hondo,* 721 S.W.2d at 840 they do not justify trial by sanctions, *Hammond Packing,* 212 U.S. at 350-51, 29 S.Ct. at 379-80; *Hovey,* 167 U.S. at 413-14, 17 S.Ct. at 843. Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *See National Hockey League,* 427 U.S. at 642-643, 96 S.Ct. at 2780-81. *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918-17 (Tex. 1991).

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 19 of 28

AARB-1:190

62. As the Texas Supreme Court noted in *Low v. Henry*, 221 S.W.3d 609, at 621, footnote 4 (Tex. 2007):

> The severity of sanctions is also limited by constitutional standards. TEX. CONST. art. I, § 13; *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980) (noting that the article I, section 13 of the Texas Constitution makes the excessiveness of a fine "'a question for the court to decide under the facts of each particular case'" (quoting *State v. Galveston, H. S.A. Ry. Co.*, 100 Tex. 153, 97 S.W. 71, 78 (1906), *rev'd on other grounds*, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908)); *see also Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 436 (Tex. 2005) (Wainwright, J., concurring).

63. The Eighth Court of Appeals has repeatedly concurred, stating in *Marquez v. Providence Memorial Hospital*, 57 S.W.3d 585, at 595-596 (Tex. App. 2001):

> As a constitutional matter, discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *TransAmerican*, 811 S.W.2d at 918, citing *Insurance Corp. of Ireland, Ltd. v. Compagnie desBauxites de Guinee*, 456 U.S. 694, 705-06, 102 S.Ct. 2099, 2105-06, 72 L.Ed.2d 492 (1982). Further, sanctions which preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *TransAmerican*, 811 S.W.2d at 918, citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642-43, 96 S.Ct. 2778, 2780-81, 49 L.Ed.2d 747 (1976).

(See also *Morgan v. Michael*, No. 08-00-00556-CV (Tex. App. Oct. 16, 2003); *Cass v. Stephens*, 156 S.W.3d 38, at 77 (Tex. App. 2004); *Werley v. Cannon*, 344 S.W.3d 527, at 532-533 (Tex. App. 2011); *Jones-Hospod v. Hospod*, No. 08-22-00066-CV (Tex. App. Jul. 17, 2023).

64. Accordingly, the Court should vacate, modify, correct, and/or reform its Order and set a new trial, because the Order herein (a) is "manifestly unjust" within the meaning of TRCP Rule 215.2(b), (b) unconstitutional, and (c) is completely devoid of any finding of Plaintiff's flagrant bad faith, or counsel's callous disregard for the responsibilities of discovery under the rules.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 20 of 28

AARB-1:191

**D.      The Court Also Abused Its Discretion By Not Imposing Lesser Sanctions First.**

65.      Although involving sanctions imposed under Texas Civil Practice and Remedies

Code, Chapter 10, the Texas Supreme Court generally noted in *Low v. Henry*, at 620:

> The amount of the sanction is limited by the trial court's duty to exercise sound
> discretion. *Powell*, 811 S.W.2d at 917. A trial court abuses its discretion when it
> acts without reference to any guiding rules or principles, not when it simply
> exercises that discretion in a different manner than reviewing appellate courts
> might. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex.
> 1985). In *Powell* we held that a sanction under rule 215 of the Texas Rules of
> Civil Procedure, now rule 215.2, must relate directly to the abuse found and "be
> no more severe than necessary to satisfy its legitimate purpose." *Powell*, 811
> S.W.2d at 917. Texas Rule of Civil Procedure 215.2 allows a trial court to
> disallow any further discovery; charge certain expenses, costs, or attorney's fees
> of one party against the offending party; order certain facts to be established as
> true; limit a party's ability to defend against or bring certain claims; strike
> pleadings or parts of pleadings; or find a party in contempt of court. In contrast,
> Chapter 10 authorizes a sanction ordering the offending party to, among other
> things, pay a penalty into the court, as ordered in this case. TEX. CIV. PRAC.
> REM. CODE § 10.004. The only restriction on the amount of the penalty in the
> language of the statute is that the "sanction must be limited to what is sufficient to
> deter repetition of the conduct or comparable conduct by others similarly
> situated." *Id.* § 10.004(b); *see, e.g., Skepnek v. Mynatt*, 8 S.W.3d 377, 380
> (Tex.App.-El Paso 1999, pet. denied) (upholding $25,000 sanction to be paid into
> registry of court under Chapter 10). The legislative history does not shed light on
> the question.
>
> Generally, a sanction cannot be excessive nor should it be assessed without
> appropriate guidelines. *See Powell*, 811 S.W.2d at 917. Although this Court has
> not specifically identified factors for a trial court to consider when assessing
> penalties under Chapter 10, *see Altus Commc'ns., Inc. v. Meltzer Martin, Inc.*, 829
> S.W.2d 878, 883 (Tex.App.-Dallas 1992, no writ), the absence of an explanation
> of how a trial court determined that amount of sanctions when those sanctions are
> especially severe is inadequate. For example, in *Cire v. Cummings*, we held the
> trial court was required to explain that it considered lesser sanctions before
> imposing severe, "death penalty" sanctions. 134 S.W.3d at 842. In *Powell*, we
> held that the dismissal of plaintiff's case with prejudice for failing to appear for a
> deposition was an excessive sanction under Texas Rule of Civil Procedure 215.
> 811 S.W.2d at 918-19.

66.      Under *Transamerican*, and the case precedents of the Eighth Court of Appeals, the

only possible sanction herein that has a "nexus" or "direct relationship" between the alleged

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 21 of 28

AARB-1:192

"misconduct and sanction imposed", relating to subject GC RENTALS' RFP Nos. 33 and 36, is the **$12,726.00** claimed by Plaintiffs, for the cost of the structural repairs and improvements incurred by RODRIGUEZ.[12]

67.     Therefore, as concerns subject GC RENTALS' RFP Nos. 33 and 36, regarding the **$12,726.00** claimed by Plaintiffs, for the cost of the structural repairs and improvements incurred by RODRIGUEZ, the only possible sanction herein that the Court could have properly considered or ordered was:

   a.     That any written documents and exhibits not produced by Plaintiffs regarding subject structural repairs and improvements be excluded from any trial or hearing in this matter;

   b.     But that any prior or subsequent sworn testimony adduced by Plaintiffs regarding subject structural repairs and improvements would not be excluded or denied.

68.     At worst, the most severe sanctions that could have been imposed herein, that bear a "nexus" or "direct relationship" between the alleged "misconduct and sanction imposed", and subject "Exhibit No. 1", are the **$29,268.00** claimed herein by Plaintiffs, as follows:

   c.     **$11,391.00**, as reimbursement for the cost of RODRIGUEZ' move to Texas;

   d.     **$12,726.00**, as reimbursement for the cost of the structural repairs and improvements incurred by RODRIGUEZ, and

   e.     **$5,151.00**, as reimbursement for the cost RODRIGUEZ moving back to California.

(See Plaintiffs' "Original Petition And Request For Disclosure" ("Petition"), and Plaintiffs' May 7, 2020 Demand Letter, attached to the Petition as Exhibit C).

69.     Instead, the Order herein (a) improperly adjudicated the merits of all of Plaintiffs'

---

[12] As noted above, it is significant for purposes of subject Motion that GC RENTALS' Discovery Requests nowhere request copies of documents reflecting the moving expenses claimed by RODRIGUEZ.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 22 of 28

AARB-1:193

claims, with prejudice, and without trial, in complete disregard of the constitutional rights of the

Plaintiffs, and (b) is therefore "manifestly unjust", in:

    a.    Ordering Plaintiffs to pay an undetermined amount of expenses related to Defendants (sic) expenses of discovery, expenses for depositions, and taxable court costs pursuant to Texas Rule of Civil Procedure 2l5.2(2); and

    b.    Ordering that all of Plaintiffs' claims against Defendants in the total amount of **$1,459,184.64**, not including interest, attorney's fees and costs, or other damages, be dismissed with prejudice to refiling pursuant to Texas Rule of Civil Procedure 215.2(5).

70.    Simply stated, the Order herein is (a) clearly erroneous in law and fact, (b) constitutes legal error, (c) is arbitrary and capricious, tantamount to an abuse of discretion, (d) contrary to the principles of equity and good conscience and equal protection, and (e) violates the substantive and procedural due process rights afforded Plaintiffs under the Constitution of the State of Texas, and that of the United States of America.

**E.**    **Bases For Motion.**

71.    TRCP Rule 320, entitled "Motion And Action Of Court Thereon", provides in pertinent part as follows:

> New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct. New trials may be granted when the damages are manifestly too small or too large. When it appears to the court that a new trial should be granted on a point or points that affect only a part of the matters in controversy and that such part is clearly separable without unfairness to the parties, the court may grant a new trial as to that part only, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested. Each motion for new trial shall be in writing and signed by the party or his attorney.

72.    Here, in accordance with TRCP Rule 320, the Court should set aside its Order and set a new trial, because (a) "good cause" exists, (b) the Order's prejudicial dismissal of Plaintiffs' case is not "just" within the meaning of TRCP Rule 215.2(b), and (c) the damages resulting from said Order are manifestly too large.

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346    Page 23 of 28

AARB-1:194

73. TRCP Rule 329b, entitled "Time For Filing Motions", provides in pertinent part as follows:

> The following rules shall be applicable to motions for new trial and motions to modify, correct, or reform judgments (other than motions to correct the record under Rule 316) in all district and county courts:
>
> (a)   A motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed.
>
> . . .
>
> (d)   The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.
>
> (e)   If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.
>
> (f)   On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law; provided that the court may at any time correct a clerical error in the record of a judgment and render judgment *nunc pro tunc* under Rule 316, and may also sign an order declaring a previous judgment or order to be void because signed after the court's plenary power had expired.
>
> (g)   A motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rule 316), if filed, shall be filed and determined within the time prescribed by this rule for a motion for new trial and shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial. Each such motion shall be in writing and signed by the party or his attorney and shall specify the respects in which the judgment should be modified, corrected, or reformed. The overruling of such a motion shall not preclude the filing of a motion for new trial, nor shall the overruling of.

74. In the instant case, in accordance with TRCP Rule 329b, the Court should vacate, modify, correct, and/or reform its Order, and set a new trial, because the Order herein (a) is not "just" within the meaning of TRCP Rule 215.2(b), (b) fails to abide by applicable case

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 24 of 28

AARB-1:195

precedents of the Eighth Court of Appeals and the Texas Supreme Court, and (c) inappropriately imposed excessive discovery sanctions vastly more severe than necessary to satisfy the legitimate purposes of TRCP Rule 215.

## F.    Conclusion.

75.    For the reasons stated above, the Court's Order is completely at odds with the Texas Supreme Court's decision in *Transamerican*, because the Order (a) failed to first establish a direct "nexus" and "relationship" between the allegedly "offensive conduct and the sanction imposed", and then secondly (b) failed to make certain that any sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which includes securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators.

76.    The Court's Order is also completely at odds with the cases of the Eighth Court of Appeals' adopting the *Transamerican*'s two-part test.  *See Cap Rock Electric Cooperative, Inc. v. Texas Utilities Elec. Co.*, 874 S.W.2d 92, 99-100 (Tex.App.-El Paso 1994, no writ); *Marquez v. Providence Memorial Hospital*, 57 S.W.3d 585 (Tex. App. 2001); *Morgan v. Michael*, No. 08-00-00556-CV (Tex. App. Oct. 16, 2003); *Cass v. Stephens*, 156 S.W.3d 38, at 77 (Tex. App. 2004); *Jones-Hospod v. Hospod*, No. 08-22-00066-CV (Tex. App. Jul. 17, 2023).  (See also Plaintiffs' Response, pages 12-17, paragraphs 39-56).

77.    Because the Order herein (a) is not "just" within the meaning of TRCP Rule 215.2(b), (b) fails to abide by applicable case precedents of the Eighth Court of Appeals and the Texas Supreme Court, (c) inappropriately imposed excessive discovery sanctions vastly more severe than necessary to satisfy the legitimate purposes of TRCP Rule 215, and (d) is unconstitutional, the Order herein is therefore:

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 25 of 28

AARB-1:196

c.    Clearly erroneous in law and fact;

d.    Constitutes legal error;

e.    Arbitrary and capricious, tantamount to an abuse of discretion, ;

f.    Contrary to the principles of equity and good conscience and equal protection; and

g.    Violates the substantive and procedural due process rights afforded Plaintiffs under the Constitution of the State of Texas, and the United States of America.

(See also Response, Pages 14-17, Paragraphs 45-54).

78.    For the foregoing reasons, the Court should (a) grant this Motion, (b) reconsider, modify, correct, reform, vacate, and set aside the Order in the above-styled and -numbered cause of action, and (c) set a new trial.

## IV.    PRAYER.

**WHEREFORE, PREMISES CONSIDERED, AND FOR THE FOREGOING REASONS**, Plaintiffs ELDON RODRIGUEZ and MARIA RODRIGUEZ pray the Court to (a) reconsider, modify, correct, reform, vacate, and set aside the Order in the above-styled and -numbered cause of action, (b) set a new trial, and (c) award all other relief to which the Plaintiffs are entitled.

January 3, 2024

Respectfully submitted,
**THE NEVAREZ LAW FIRM, PC**
7362 Remcon Circle
El Paso, Texas 79912
Telephone: (915) 225-2255
Facsimiles: (915) 845-3405
Email: MNevarez@LawOfficesMRN.com

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**
State of Texas Bar No. 14933400
Attorney for Plaintiffs
Eldon Rodriguez and Maria Rodriguez

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 26 of 28

AARB-1:197

I, MICHAEL R. NEVAREZ, have read the foregoing "Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct, Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial", prepared and filed by me, on behalf of Plaintiffs ELDON RODRIGUEZ and MARIA RODRIGUEZ, and do hereby verify under penalty of perjury that all matters stated therein are within my personal knowledge, and are true and correct to the best of my knowledge and belief. (See also Exhibit No. 15 attached hereto).

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346          Page 27 of 28

AARB-1:198

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO RECONSIDER, MOTION TO MODIFY, MOTION TO CORRECT, MOTION TO REFORM, MOTION TO VACATE, AND MOTION TO SET ASIDE**, with all supporting attachments, exhibits, and affidavits referenced therein, if any, was served by regular first-class mail, postage prepaid, and/or by e-Filing via an Electronic Filing Service Provider, and/or via facsimile, to the following parties in interest, on this January 3, 2024:

**ATTORNEY FOR DEFENDANT HEATHER HARMSTON:**
MARIO A. GONZALEZ
1522 Montana Avenue, Suite 100
El Paso, Texas 79902
Telephone: (915) 543-9802
Email: mario@gonzalezlawfirm.com

**ATTORNEY FOR DEFENDANTS JAIME GARDEA, SYNERGY CONSTRUCT LLC:**
M. BLAKE DOWNEY
SCOTTHULSE PC
One San Jacinto Plaza
201 E. Main Drive, Suite 1100
El Paso, Texas 79901
Telephone: (915) 533-2493
Emails: bdow@scotthulse.com;

**ATTORNEYS FOR DEFENDANTS GC RENTALS:**
JAMES A. MARTINEZ
HALA A. ABDEL-JABER
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
P.O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1597
Emails: martinezja@jmeplaw.com; Abdel-jaber@mgmsg.com

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**

Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct,
Motion To Reform, Motion To Vacate, Motion To Set Aside And Motion For New Trial
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                Page 28 of 28

AARB-1:199

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Nevarez
Bar No. 14933400
MRN@MRN4Law.com
Envelope ID: 83042492
Filing Code Description: Motion for New Trial
Filing Description: Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct, Motion To Reform, Motion To Vacate, Motion To Set Aside and Motion For New Trial / MR
Status as of 1/3/2024 3:26 PM MST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Virginia Munoz | | vmunoz@mgmsg.com | 1/3/2024 1:23:17 PM | SENT |
| M. BlakeDowney | | bdow@scotthulse.com | 1/3/2024 1:23:17 PM | SENT |
| Terry Silva | | tsilva@mgmsg.com | 1/3/2024 1:23:17 PM | SENT |
| michael nevarez | | mnevarez@lawofficesmrn.com | 1/3/2024 1:23:17 PM | SENT |
| Denise Macias | | paralegal-2@lawofficesmrn.com | 1/3/2024 1:23:17 PM | SENT |
| Georgina Gallegos | | ggal@scotthulse.com | 1/3/2024 1:23:17 PM | SENT |
| Guy McGunegle | | gmcg@scotthulse.com | 1/3/2024 1:23:17 PM | SENT |
| Mario Gonzalez | | mario@gonzalezlawfirm.com | 1/3/2024 1:23:17 PM | SENT |
| Loretta Mata | | lor.mata@epcounty.com | 1/3/2024 1:23:17 PM | SENT |
| Roberta Medina | | rmedina@rasberry.com | 1/3/2024 1:23:17 PM | SENT |

Associated Case Party: GC RENTALS AND MANAGEMENT LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James A.Martinez | | martinezja@jmeplaw.com | 1/3/2024 1:23:17 PM | SENT |
| James Martinez | | eservice@jmeplaw.com | 1/3/2024 1:23:17 PM | SENT |
| Hala Abdel-Jabar | | abdel-jaber@mgmsg.com | 1/3/2024 1:23:17 PM | SENT |



FINANCIAL    FITNESS & HEALTH    MATH    OTHER

home / other / date calculator

# Date Calculator

## Days Between Two Dates

Find the number of years, months, weeks, and days between dates. Click "Settings" to define holidays.

Start Date   Dec ∨   4 ∨   2023   📅

End Date   Dec ∨   26 ∨   2023   📅

☐ include end day (add 1 day)

**Calculate**        **Settings**

[                    ]  Search

## Add to or Subtract from a Date

Result

**Feb 17, 2024, Saturday**
is the date 75 days after Dec 4, 2023



**Other Calculators**

| | |
|---|---|
| Age | Date |
| Time | Hours |
| GPA | Grade |
| Height | Concrete |
| IP Subnet | Bra Size |
| Password Generator | Dice Roller |
| Conversion | More Other Calculators |

Financial | Fitness and Health | Math | Other

AARB-1:201

31



**Related**

Time Calculator | Age Calculator

## History of the Gregorian Calendar

The Gregorian calendar is the most prevalently used calendar today. Within this calendar, a standard year consists of 365 days with a leap day being introduced to the month of February during a leap year. The months of April, June, September, and November have 30 days, while the rest have 31 days except for February, which has 28 days in a standard year, and 29 in a leap year.

The Gregorian calendar is a reformed version of the Julian calendar, which was itself a modification of the ancient Roman calendar. The ancient Roman calendar was believed to be an observational lunar calendar, based on the cycles of the moon's phases. The Romans were then believed to have adopted a 10-month calendar with 304 days, leaving the remaining 50 or so days as an unorganized winter. This calendar allowed the summer and winter months to become completely misplaced, leading to the adoption of more accurate calendars.

AARB-1:202

The Republican calendar later used by Rome followed Greek calendars in its assumptions of 29.5 days in a lunar cycle and 12.5 synodic months in a solar year, which align every fourth year upon the addition of the intercalary months of January and February. From this point, many attempts were made to align the Republican calendar with the solar year including the addition of an extra month to certain years to supplant the lack of days in a particular year. In 46 BC, the calendar was further reformed by Julius Caesar, introducing an algorithm that removed the dependence of calendars from the observation of the new moon. In order to accomplish this, Caesar inserted an additional 10 days into the Republican calendar, making the total number of days in a year 365. He also added the intercalation of a leap day every fourth year, all in an attempt to further synchronize the Roman calendar with the solar year.

Despite all efforts, the Julian calendar still required further reform, since the calendar drifted with respect to the equinoxes and solstices by approximately 11 minutes per year. By 1582, this resulted in a difference of 10 days from what was expected. Pope Gregory XIII addressed this by essentially skipping 10 days in the date, making the day after October 4, 1582, October 15. An adjustment was also made to the algorithm of the Julian calendar that changed which century years would be considered leap years. Under the Gregorian calendar, century years not divisible by 400 would not be leap years. These changes reduced the error from 1 day in 128 years, to 1 day in 3,030 years with respect to the current value of the mean solar year.

The adoption of the Gregorian calendar occurred slowly over a period of centuries, and despite many proposals to further reform the calendar, the Gregorian Calendar still prevails as the most commonly used dating system worldwide.

## Holidays

A holiday is a day that, either by custom or by law, is set aside such that regular activities like going to work or school are suspended, or at least reduced. The term "holiday" can be interpreted differently, depending on the region. In the U.S., paid leave is typically referred to as "vacation," while national, religious, or cultural days off are referred to exclusively as "holiday." In some regions, however, such as the United Kingdom or former British colonies, the term holiday can also refer to paid leave.

Generally, holidays are meant to commemorate some event, person, or group of cultural or religious significance. Although certain holidays, such as Christmas and New Year's Day, are widely celebrated worldwide, most countries have their own set of holidays that are specific to the country, and even the same holidays may be observed differently within countries: some may receive a full suspension of typical daily activities, while others may only get partial days off. Certain countries have holidays that essentially shut down almost

all businesses. As an example, in Brazil, Carnaval do Brasil results in almost a full week in which only industrial production, retail establishments, or carnival-related businesses, function.

This calculator is mainly geared towards U.S. holidays, but holidays specific to a given country can be entered manually. Certain holidays can also be excluded. For a further level of specificity, federal holidays in the U.S. refer to holidays that have been recognized by the U.S. government; on these days, non-essential federal government offices are closed, and all federal employees receive paid leave. This is not necessarily true in the private sector, however, and which federal holidays a private sector employee receives is largely dependent on the discretion of the company. In some cases, an employee who is required to work on a federal holiday may receive compensation in the form of holiday pay in addition to their regular wages.

Certain holidays such as New Year's Day are referred to as "fixed holidays," since they fall on the same date every year. Others, such as the birthday of Martin Luther King, Jr., don't have a fixed date, because they occur on a "floating Monday"; in this particular case, the holiday occurs on the third Monday of January. Another widely observed holiday in the U.S., Thanksgiving, occurs on a "floating Thursday," the fourth Thursday In November, hence the dates of these holidays vary by year. Below are two tables showing the dates of federal holidays in the U.S. for 2023 and 2024.

**2023 U.S. Federal Holidays**

| | |
|---|---|
| New Year's Day | Jan. 1, 2023 |
| Martin Luther King Jr. Day | Jan. 16, 2023 |
| President's Day | Feb. 20, 2023 |
| Memorial Day | May. 29, 2023 |
| Juneteenth Day | Jun. 19, 2023 |
| Independence Day | Jul. 4, 2023 |
| Labor Day | Sep. 4, 2023 |
| Columbus Day | Oct. 9, 2023 |
| Veteran's Day | Nov. 11, 2023 |
| Thanksgiving | Nov. 23, 2023 |
| Christmas | Dec. 25, 2023 |

**2024 U.S. Federal Holidays**

| New Year's Day | Jan. 1, 2024 |
|---|---|
| Martin Luther King Jr. Day | Jan. 15, 2024 |
| President's Day | Feb. 19, 2024 |
| Memorial Day | May. 27, 2024 |
| Juneteenth Day | Jun. 19, 2024 |
| Independence Day | Jul. 4, 2024 |
| Labor Day | Sep. 2, 2024 |
| Columbus Day | Oct. 14, 2024 |
| Veteran's Day | Nov. 11, 2024 |
| Thanksgiving | Nov. 28, 2024 |
| Christmas | Dec. 25, 2024 |

about us | sitemap | terms of use | privacy policy    © 2008 - 2023 calculator.net

AARB-1:205

Filed 2/16/2024 11:59 AM
Norma Favela Barceleau
District Clerk
El Paso County
2021DCV2346

# IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS

## 171ST JUDICIAL DISTRICT

| | | |
|---|---|---|
| **ELDON RODRIGUEZ, and** | § | |
| **MARIA RODRIGUEZ** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NUMBER: 2021-DCV-2346** |
| | § | |
| **HEATHER HARMSTON,** | § | |
| **JAIME GARDEA,** | § | |
| **SYNERGY CONSTRUCT LLC,** | § | |
| **GC RENTALS AND MANAGEMENT LLC** | § | |
| **d/b/a REALTY ONE GROUP MENDEZ BURK,** | § | |
| **GABRIEL MENDEZ, and** | § | |
| **MIGUEL CHACON,** | § | |
| | § | |
| **Defendants.** | § | |

## NOTICE OF APPEAL

**TAKE NOTICE** that Plaintiffs/Appellants ELDON RODRIGUEZ and MARIA

RODRIGUEZ (hereinafter jointly referred to as "Plaintiffs"), by and through the undersigned

counsel of record, hereby timely file this Notice Of Appeal ("Notice"), pursuant to Rules 25.1

and 26.1 of the Texas Rules of Appellate Procedure, and in support thereof would respectfully

show onto the Court as follows:

1.      The trial court number and style is: *Eldon Rodriguez and Maria Rodriguez vs.*

*Heather Harmston, Jaime Gardea, Synergy Construct LLC, GC Rentals and*

*Management LLC d/b/a Realty One Group Mendez Burk, Gabriel Mendez, and*

*Miguel Chacon*, in the 171st District Court, El Paso County, Texas, Cause No.

2021-DCV-2346.

2.      The date the judgment and/or order appealed from herein, entitled "Order on

Defendants' Joint Motion For Sanctions, Motion To Show Cause and Motion For Emergency Hearing" ("Order"), was signed on December 4, 2023.

a. Pursuant to Rule 25.1(a) of the Texas Rules of Appellate Procedure, this Appeal is timely, as this Notice is hereby filed prior to February 17, 2024, which is:

1) Within the seventy-five (75) days after the Order was signed;

2) After the timely filing by Plaintiffs, on January 3, 2024, of "Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct, Motion To Reform, Motion To Vacate, Motion To Set Aside, and Motion For New Trial", which was also timely filed within the initial thirty (30) day period after the signing of the Order on December 4, 2023, and

3) After the "Plaintiffs' Motion To Reconsider, Motion To Modify, Motion To Correct, Motion To Reform, Motion To Vacate, Motion To Set Aside, and Motion For New Trial" has been deemed denied as per Rule 329b(c) of the Texas Rules of Civil Procedure.

3. Plaintiffs desire to appeal the Order, as it constitutes a final and appealable judgment by its terms.

4. The Court to which this appeal is to is The Eighth Court of Appeals of Texas.

5. The name of the parties filing this Notice are ELDON RODRIGUEZ and MARIA RODRIGUEZ.

6. This is not an accelerated or restricted appeal.

Notice Of Appeal
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 2 of 4

AARB-1:207

February 16, 2024

**THE NEVAREZ LAW FIRM, PC**
7362 Remcon Circle
El Paso, Texas 79912
Telephone: (915) 225-2255
Facsimiles: (915) 845-3405
Email: MNevarez@LawOfficesMRN.com

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**
State of Texas Bar No. 14933400

Attorney for Plaintiffs/Appellants

Notice Of Appeal
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                    Page 3 of 4

AARB-1:208

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **NOTICE OF APPEAL**, with all supporting attachments, exhibits, and affidavits referenced therein, if any, was served either by regular first-class mail, postage prepaid, and/or e-Filing via an Electronic Filing Service Provider, and/or via facsimile, to the following parties in interest, on or before February 16, 2024:

**ATTORNEY FOR DEFENDANT HEATHER HARMSTON:**
MARIO A. GONZALEZ
1522 Montana Avenue, Suite 100
El Paso, Texas 79902
Telephone: (915) 543-9802
Email: mario@gonzalezlawfirm.com

**ATTORNEY FOR DEFENDANTS JAIME GARDEA, SYNERGY CONSTRUCT LLC:**
M. BLAKE DOWNEY
SCOTTHULSE PC
One San Jacinto Plaza
201 E. Main Drive, Suite 1100
El Paso, Texas 79901
Telephone: (915) 533-2493
Emails: bdow@scotthulse.com;

**ATTORNEYS FOR DEFENDANTS GC RENTALS:**
JAMES A. MARTINEZ
HALA A. ABDEL-JABER
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
P.O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1597
Emails: martinezja@jmeplaw.com; Abdel-jaber@mgmsg.com

/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**

Notice Of Appeal
*Eldon and Maria Rodriguez v. Heather Harmston, et al.*
El Paso County, 171st District Court, Cause Number 2021-DCV-2346                Page 4 of 4

AARB-1:209

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Nevarez
Bar No. 14933400
MRN@MRN4Law.com
Envelope ID: 84603136
Filing Code Description: Notice of Appeal
Filing Description: NOTICE OF APPEAL / JM
Status as of 2/16/2024 12:25 PM MST

Associated Case Party: GC RENTALS AND MANAGEMENT LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James A.Martinez | | martinezja@jmeplaw.com | 2/16/2024 11:59:59 AM | SENT |
| James Martinez | | eservice@jmeplaw.com | 2/16/2024 11:59:59 AM | SENT |
| Hala Abdel-Jabar | | abdel-jaber@mgmsg.com | 2/16/2024 11:59:59 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Virginia Munoz | | vmunoz@mgmsg.com | 2/16/2024 11:59:59 AM | SENT |
| M. BlakeDowney | | bdow@scotthulse.com | 2/16/2024 11:59:59 AM | SENT |
| Terry Silva | | tsilva@mgmsg.com | 2/16/2024 11:59:59 AM | SENT |
| michael nevarez | | mnevarez@lawofficesmrn.com | 2/16/2024 11:59:59 AM | SENT |
| Denise Macias | | paralegal-2@lawofficesmrn.com | 2/16/2024 11:59:59 AM | SENT |
| Loretta Mata | | lor.mata@epcounty.com | 2/16/2024 11:59:59 AM | SENT |
| Georgina Gallegos | | ggal@scotthulse.com | 2/16/2024 11:59:59 AM | SENT |
| Guy McGunegle | | gmcg@scotthulse.com | 2/16/2024 11:59:59 AM | SENT |
| Mario Gonzalez | | mario@gonzalezlawfirm.com | 2/16/2024 11:59:59 AM | SENT |
| Roberta Medina | | rmedina@rasberry.com | 2/16/2024 11:59:59 AM | SENT |



# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS

**CHIEF JUSTICE**
Jeff Alley

**JUSTICES**
Gina M. Palafox
Lisa Soto

**CLERK**
Elizabeth G. Flores

EL PASO COUNTY COURTHOUSE
500 E. SAN ANTONIO AVE., SUITE 1203
EL PASO, TEXAS 79901-2408
(915) 546-2240    FAX (915) 546-2252
WWW.TXCOURTS.GOV/8THCOA.ASPX

April 2, 2024

Hon. Mario A. Gonzalez
1707 Wyoming Ave.
El Paso, TX 79902
* DELIVERED VIA E-MAIL *

Hon. James A. Martinez
Mounce, Green, Myers, Safi, Paxson, &
Galatzan
P.O. Box 1977
El Paso, TX 79999
* DELIVERED VIA E-MAIL *

Hon.Michael Blake Downey
ScottHulse
201 E Main Dr
El Paso, TX 79901-1340
* DELIVERED VIA E-MAIL *

Hon. Michael Nevarez
The Nevarez Law Firm, PC
7362 Remcon Circle
El Paso, TX 79912
* DELIVERED VIA E-MAIL *

RE:  Court of Appeals Number:   08-24-00024-CV
     Trial Court Case Number:   2021DCV2346

Style: Eldon Rodriguez and Maria Rodriguez
       v.
       Heather Harmston, Jaime Gardea, Synergy Constuct LLC, and GC Rentals and
       Management LLC d/b/a Realty One Group Mendez Burk

       I have this day filed the Clerk's Record (3 volumes) for the above styled and numbered
cause.

Respectfully yours,

ELIZABETH G. FLORES, CLERK

*Elizabeth G. Flores*

By Ariana Endlich, Deputy Clerk

cc:    Norma L. Favela Barceleau

AARB-1:211

# A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

## B. Type of Loan

| | |
|---|---|
| 1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv Unins | 6. File Number **180548-EV** |
| 4. ☐ VA  5. ☐ Conv Ins.  6. ☐ Seller Finance | 7. Loan Number |
| | 8. Mortgage Ins Case Number |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Eldon Rodriguez and Maria Rodriguez<br>7750 Lilac Apt 122<br>El Paso, TX 79915 | Heather Harmston<br>2500 Hawley Circle<br>El Paso, TX 79903<br>See Addendum | , |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| CIELO VISTA PARK, Lot 16, Block 143, El Paso County, TX<br>9328 Me Fall Drive<br>El Paso, TX 79925 | WestStar Title, LLC<br>641 N. Stanton<br>El Paso, TX 79901  Tax ID: 26-4531251<br>Underwritten By: Westcor |

| Place of Settlement | I. Settlement Date |
|---|---|
| Weststar Title, LLC<br>641 N. Stanton Ste. 200<br>El Paso, TX 79901 | 3/28/2018<br>Fund: |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $275,000.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $344.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City property taxes | | 406. City property taxes | |
| 107. Other | | 407. Other | |
| 108. County property taxes | | 408. County property taxes | |
| 109. School property taxes | | 409. School property taxes | |
| 110. HOA | | 410. HOA | |
| 111. Flood Insurance | | 411. Flood Insurance | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $275,344.00 | **420. Gross Amount Due to Seller** | |
| **200. Amounts Paid By Or in Behalf Of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | $1,000.00 | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | | 502. Settlement Charges to Seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Seller Contribution | | 506. Seller Contribution | |
| 207. Option Fee | $100.00 | 507. Option Fee | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for Items unpaid by seller | |
| 210. City property taxes  01/01/18 03/28/18 | $877.90 | 510. City property taxes  01/01/18 03/28/18 | |
| 211. Other | | 511. Other | |
| 212. County property taxes | | 512. County property taxes | |
| 213. School property taxes | | 513. School property taxes | |
| 214. HOA | | 514. HOA | |
| 215. Flood Insurance | | 515. Flood Insurance | |
| 216. | | 516. | |
| 217. | | 517. Proceeds 50% of 68,382.42 to Heather | |
| 218. | | 518. Proceeds 25% of 68,382.42 to Jaime Garde | |
| 219. | | 519. Payoff to Miguel Chac | |
| **220. Total Paid By/For Borrower** | $1,977.90 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $275,344.00 | 601. Gross Amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $1,977.90 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash From Borrower | $273,366.10 | 603. Cash  Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following:  • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services;
• Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate;  • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.
The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The information requested does not lend itself to confidentiality.

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Nevarez
Bar No. 14933400
MRN@MRN4Law.com
Envelope ID: 93761785
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellants' Reply Brief To Brief Of Appellee GC Rentals and Management, LLC d/b/a Realty One Group Mendez Burk
Status as of 11/1/2024 11:42 AM MST

Associated Case Party: JaimeGardea

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Noemi Lopez | | nlopez@raylaw.com | 10/30/2024 3:34:35 PM | SENT |
| Aldo Lopez | | alopez@raylaw.com | 10/30/2024 3:34:35 PM | SENT |
| Monica Lara | | mlara@raylaw.com | 10/30/2024 3:34:35 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James A.Martinez | | martinezja@jmeplaw.com | 10/30/2024 3:34:35 PM | SENT |
| Virginia Munoz | | vmunoz@mgmsg.com | 10/30/2024 3:34:35 PM | SENT |
| Michael Downey | 24082933 | bdow@scotthulse.com | 10/30/2024 3:34:35 PM | SENT |
| James Martinez | 791192 | eservice@jmeplaw.com | 10/30/2024 3:34:35 PM | SENT |
| Elena AliciaEsparza | | eesparza@mgmsg.com | 10/30/2024 3:34:35 PM | SENT |
| Denise DominguezMacias | | Paralegal-2@LawOfficesMRN.com | 10/30/2024 3:34:35 PM | SENT |
| Terry Silva | | tsilva@mgmsg.com | 10/30/2024 3:34:35 PM | SENT |
| Michael R.Nevarez | | MNevarez@LawOfficesMRN.com | 10/30/2024 3:34:35 PM | SENT |
| Hala Abdel-Jaber | 24133142 | abdel-jaber@mgmsg.com | 10/30/2024 3:34:35 PM | SENT |
| Mario A.Gonzalez | | mario@gonzalezlawfirm.com | 10/30/2024 3:34:35 PM | SENT |